Lee S. Harris, SBN 76699
    lharris@g3mh.com
Adrian Hern, SBN 202958
    ahern@g3mh.com
GOLDSTEIN, GELLMAN, MELBOSTAD,
HARRIS & McSPARRAN LLP
1388 Sutter Street, Suite 1000
San Francisco, CA  94109-5494
Tel.: (415) 673-5600
Fax: (415) 673-5606

Attorneys for Plaintiff EVA MARIE SANTOS as Administrator
of the ESTATE OF SAMUEL V. CHONG, aka
SAMUEL CHONG, aka SAM CHONG

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA MARIE SANTOS as Administrator of the ESTATE OF SAMUEL V. CHONG, aka SAMUEL CHONG, aka SAM CHONG,<br><br>Plaintiff,<br><br>v.<br><br>MINNESOTA LIFE INSURANCE COMPANY aka SECURIAN FINANCIAL; APPLE INC. HEALTH AND WELFARE BENEFIT PLAN (The Plan); APPLE, INC. (PLAN ADMINISTRATOR DEFINED UNDER ERISA§ 3(16)),<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**RECOVERY OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN BENEFITS [29 U.S.C. § 1132(a)(1)(B)]** |

Plaintiff Eva Marie Santos ("Plaintiff Santos") is Administrator of the Samuel V. Chong, aka Samuel Chong, aka Sam Chong Estate ("Estate"). Samuel V. Chong, aka Samuel Chong, aka Sam Chong is the subject decedent ("Decedent"). Plaintiff Eva Marie Santos is standing as Administrator for the Plaintiff Estate / Decedent in this action. Plaintiff Santos / Estate brings this Complaint for accidental death and dismemberment insurance plan benefits ("AD&D"). Apple, Inc. sponsored a group life insurance benefit plan for its employees providing, inter alia, AD&D benefits and is self-described as the Apple, Inc. Health and Welfare Benefit Plan (the "AD&D

1

Plan"). Apple, Inc. funded the Plan through the purchase of an insurance policy issued by Defendant Minnesota Life Insurance Company aka Securian Financial ("Minnesota / Securian"). A true and correct copy of the Plan is attached hereto as **Exhibit 1**. At all relevant times, Decedent was covered under the Plan. Plaintiff Santos / Estate and alleges as follows.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this action, under 28 U.S.C. §1331 (federal question) and 29 U.S.C. §1132(e)(1) (ERISA), irrespective of the amount in controversy or the citizenship of the parties.

2. Venue is proper because the Northern District of California is the federal district in which the Plan was administered and where the breach occurred. 29 U.S.C. §1132(e)(2).

## PARTIES

3. Plaintiff Eva Marie Santos as Administrator of the Estate of Samuel V. Chong, aka Samuel Chong, aka Sam Chong has the Estate's probate matter pending in the Superior Court in and for the City and County of San Francisco, and is, and at all relevant times herein was, residing in Redding, California.

4. At the time of his death, Decedent resided in San Francisco, California.

5. Apple, Inc. is and at all relevant times herein was Decedent's employer, and the Plan Administrator of the Apple Inc. Health and Welfare Benefit Plan (AD&D Plan), with principal offices located at One Apple Parkway, Cupertino, California. The Plan was initially adopted 7/1/87 and is set forth in the Amended and Restated Apple Inc. Health And Welfare Benefit Plan Wraparound Plan Document (PLAN 510) effective for benefits provided on or after 1/1/10, which is Apple's Accidental Death and Dismemberment (AD&D) Plan under which Plaintiff Santos / Decedent was eligible to receive AD&D benefits. See Exhibit 1. The Plan was funded through the purchase of an insurance policy issued on 1/1/18 by Defendant Minnesota Life Insurance Company aka Securian Financial (Minnesota / Securian) and bearing Group Policy Number: 33957-G (the "Policy"). A true and correct copy of the Accidental Death and Dismemberment Certificate of Insurance of the AD&D Policy is attached hereto as **Exhibit 2**.

COMPLAINT FOR:  RECOVERY OF AD&D INS. PLAN BENEFITS [29 U.S.C. § 1132(a)(1)(B)]

Defendant Minnesota / Securian claim they are the recipient of delegated authority under the Plan for decisions relating to the Plan.

6.     At all relevant times, Apple, Inc. was duly registered and authorized to do business in the State of California, and regularly conducted substantial business in this state. Whenever references are made to Apple, Inc. engaging in any act or having knowledge of any fact, such allegation shall be deemed to include any action taken or fact known individually by any officer, employee, agent, or representative of Apple, Inc. or its subsidiaries, acting with actual or apparent authority.

7.     Plaintiff Santos / Estate is and was at all relevant times eligible to receive AD&D benefits under the AD&D Policy.

8.     Defendant Minnesota / Securian issued the subject Accidental Death and Dismemberment Policy to Apple, Inc. for the Plan.  Defendant Minnesota / Securian is, and at all relevant times herein was, an insurance company with principal offices (upon information and belief) registered and located in St. Paul, Minnesota.  At all relevant times, Defendant Minnesota / Securian was duly registered and authorized to do insurance business in the State of California and regularly conducted substantial insurance business in this state.  Indeed, Defendant Minnesota / Securian has a listed agent for service of process in California which is "Corporation Service Company Which Will Do Business In California As CSC - Lawyers Incorporating Service" with the address of 2710 Gateway Oaks Drive, Suite 150N in Sacramento, California 95833-3505. Whenever references are made to Defendant Minnesota / Securian engaging in any act or having knowledge of any fact, such allegation shall be deemed to include any action taken or fact known individually by any officer, employee, agent, or representative of Defendant Minnesota / Securian or its subsidiaries, acting with actual or apparent authority.

9.     Plaintiff is informed and believes, and thereon alleges, each defendant named herein acted in concert and participated in the acts and omissions alleged herein, and that each defendant was acting with the consent of the other defendants within the scope of their authority as an agent, employee, servant, partner, joint-venturer, or other representative, and was jointly responsible with each other defendant for such acts and omissions.

3

**FACTS**

10.     Decedent was an employee of Apple, Inc.  As a full-time employee, he fell under The Plan and enrolled in the company's AD&D insurance program and thereby became covered under Defendant Minnesota / Securian's Group Insurance Policy Number 33957-G (aka The AD&D Policy).  The AD&D Policy provided insurance benefits in the event of the insured's (Decedent's) accidental death.

11.     On 2/2/18, Decedent was found deceased in his home during a well-being check. He was found on the floor of the kitchen, prone but with the right side of his face on the floor. Blood was noted near his head and had flowed a short distance from where he lay.

12.     On 2/5/18, The San Francisco County Medical Examiner performed an autopsy and prepared a report.  The Medical Examiner noted several items evidencing immediately recent blunt trauma to the head.  Such included (among others) exterior facial / scalp lacerations abrasions, right subdural hematoma, punctate pontine hemorrhages and bilateral frontal and temporal lobe contusions with associated regional subarachnoid hemorrhage (right greater than the left).  Based on this, and other more lengthy evidence in the report, the Medical Examiner determined, "CAUSE OF DEATH:  BLUNT FORCE HEAD TRAUMA WITH SUBDURAL HEMATOMA / DUE TO:  PROBABLE FALL TO THE BACK OF THE HEAD / CONTRIBUTING: METHAMPHETAMINE PRESENT / MANNER: ACCIDENT / Comment: The autopsy findings are most consistent with a mechanism of injury from a fall to the back of the head in an individual under the influence of methamphetamine [sic]…" (capitalization in the original).

**Harmful Course of Conduct**

13.     At all relevant times, Defendant Minnesota / Securian represented that it would pay Policy benefits "from an accidental injury which is unintended, unexpected and unforeseen" that led to a loss of life or the accidental death of the insured (Decedent).  The AD&D Policy included definitions, presumably to assist their insureds in understanding its terms.  The at issue Policy provisions state the following (in pertinent part) (bold in the original):

///

**COMPLAINT FOR:  RECOVERY OF AD&D INS. PLAN BENEFITS [29 U.S.C. § 1132(a)(1)(B)]**

**What does Accidental Death or Dismemberment by Accidental Injury Mean?**
Accidental death or dismemberment by accidental injury means that an insured's death or dismemberment results, directly and independently of all other causes, from an accidental injury which is unintended, unexpected, and unforeseen. (Accidental Death and Dismemberment Certificate of Insurance, Exhibit 2, Page 3.)

**What are the exclusions under this certificate?**
In no event will we pay the accidental death or dismemberment benefit where the insured's death or dismemberment results from or is caused directly or indirectly by any of the following:

…(7) being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance of the prescribed dosage. (Accidental Death and Dismemberment Certificate of Insurance, Exhibit 2, Page 5.)

14.     Decedent's cousin, Maria Santos, is the Administrator and a beneficiary under Decedent's Estate.  Plaintiff Santos / Estate timely submitted an application for AD&D benefits to Defendants initiating a claim on the AD&D Policy.

15.     On 1/14/19, Defendants via Minnesota / Securian denied the application for AD&D benefits.  In denying the claim, Defendants claimed:

According to the death certificate, the cause of death was blunt force head trauma with subdural hematoma; probable fall to the back of the head; methamphetamine present. Per the autopsy/toxicology report, his methamphetamine level was 2258·ng/mL, which is in the fatal range. Overdose adverse effects include confusion, anxiety, hallucinations, cardiac arrhythmias, hypertension, circulatory collapse, convulsions and coma. Per the information provided to us, Mr. Chong's death had contribution from the methamphetamine and the fall was not the sole cause of his death. Based on the information available to us, Mr. Chong's death is not covered under the terms of the accidental death policies. Although the manner is listed as accidental, there is a specific exclusion for this type of event, and therefore there are no accidental death benefit~ payable.

In support of this position, Defendants cited the **"What are the exclusions under this certificate?"** section quoted above.  A true and correct copy of this 1/14/19 Denial is attached hereto as **Exhibit 3**.

16.     In denying the claim as per the above paragraph, Defendants via Defendants' claims administrator who identified herself only as "Karen" (with no known or provided credentials) failed to honor the terms of the AD&D Policy and reviewed only the death certificate, made improper assumptions and made unfounded assertions:

a.     Defendants via "Karen" unilaterally claimed that the methamphetamine amount was in the "fatal range".  Nothing in the death certificate expressly states anything about

**COMPLAINT FOR:  RECOVERY OF AD&D INS. PLAN BENEFITS [29 U.S.C. § 1132(a)(1)(B)]**

the amount in Decedent's system being in the "fatal range".  Defendants via "Karen" cite no authority for this nor does "Karen" appear to have any professional knowledge to make such a statement.  This appears to be Defendants' attempt to improperly rewrite the death certificate.  Such is also evidence of Defendants' bias in Defendants' favor at Plaintiff's expense.

b.    Defendants via "Karen" unilaterally claimed that "Overdose adverse effects include confusion, anxiety, hallucinations, cardiac arrhythmias, hypertension, circulatory collapse, convulsions and coma."  Nothing in the death certificate states Decedent specifically suffered from / was diagnosed with an overdose.  Defendants via "Karen" cite no authority for this nor does "Karen" appear to have any professional knowledge to make such a statement.  This appears to be Defendants' attempt to improperly rewrite the death certificate.  Such is also evidence of Defendants' bias in Defendants' favor at Plaintiff's expense.

c.    Moreover, Defendants via "Karen" unilaterally claimed that an overdose causes their stated list of purported physical effects.  Nothing in the death certificate states Decedent suffered from / was diagnosed with any such purported physical effects at the time of his death.  Further, nothing in the death certificate states Decedent had any such purported physical effects specifically due to any overdose diagnosis (again there is no overdose diagnosis). Defendants via "Karen" cite no authority for this nor does "Karen" appear to have any professional knowledge to make such a statement.  This appears to be Defendants' attempt to improperly rewrite the death certificate.  Such is also evidence of Defendants' bias in Defendants' favor at Plaintiff's expense.

d.    Defendants via "Karen" then improperly asserts the AD&D Policy's exclusion at Exhibit 2, Page 5, Paragraph (7) (quoted above) applies.  Defendants via "Karen" do so by improperly assuming that Decedent was "under the influence of a[] prescription drug, narcotic or hallucinogen" because methamphetamines were found in Decedent's system.  Nothing in the death certificate states anything about Decedent being under the influence of a prescription drug, narcotic or hallucinogen.  Defendants via "Karen" cite no authority for this nor does "Karen" appear to have any professional knowledge to make such a statement.  Point of fact, Defendants and "Karen" are absolutely wrong.  Although, Decedent was determined to have had

methamphetamines in his system, it is not an excluded drug or an excluded drug related event under the AD&D Policy. Indeed, the methamphetamine was <u>not prescribed</u>. Moreover, according to (among others) the National Institute on Drug Abuse (www.drugabuse.gov), methamphetamine is registered as a Schedule II stimulant – and is neither considered a narcotic nor a hallucinogen. The AD&D Policy has NO exclusions for stimulants. Wrongfully Defendants appear to be trying to rewrite the AD&D Policy and drug classifications to avoid covering this loss to its benefit at Plaintiff Santos / Estate's expense. Such is also evidence of Defendants' bias in Defendants' favor at Plaintiff's expense.

       e.    Of note, at the time Defendants via "Karen" wrote the benefits turn down letter, the death certificate as well as The Medical Examiners Report and Investigation were available. Defendants via "Karen" did not rely on the more detailed and persuasive (in Plaintiff's favor) Medical Examiner's Report. Such is also evidence of Defendants' bias in Defendants' favor at Plaintiff's expense.

       f.    Defendants via "Karen" also cherry-pick and ignore the true and causative diagnosis in the Medical Examiner's death certificate: blunt force head trauma due to a fall, accident.

It appears that Defendants' "Karen" lacks the training, education, experience and first-hand knowledge to make any of these conclusions and assertions. Nothing shows she is competent to opine on cause of death – especially not to rewrite the Medical Examiner's conclusions and findings. Defendants and "Karen" are prohibited by law from making precisely the kinds of medical diagnosis Defendants via "Karen" made and upon which Defendants relied in denying the claim. Defendants and "Karen" are also prohibited by law from misinterpreting and misapplying the AD&D Policy. Defendants knew or should have known of these legal infirmities, but nevertheless persisted in their reliance on their "Karen's" unqualified opinion(s).

17.    On 5/16/19, Plaintiff Santos / Estate timely appealed Defendants' denial of the claim ("5/16/19 Appeal"). As part of the 5/16/19 Appeal, Plaintiff Santos / Estate provided 3 separate updated death certificates and the Medical Examiner's Report which each said the cause of death was blunt force head trauma due to a fall, accident. Plaintiff Santos / Estate also

**COMPLAINT FOR:  RECOVERY OF AD&D INS. PLAN BENEFITS [29 U.S.C. § 1132(a)(1)(B)]**

provided a letter from Decedent's physician that the methamphetamines were not prescribed. This 5/16/19 Appeal also contained an outline of the above points of wrong-doing and impropriety by Defendants' "Karen" (which Defendants promulgated and ratified).  The 5/16/19 Appeal also included a detailed legal and factual briefing on proper interpretations of the AD&D Policy provisions based on current ERISA law – such put Defendants on notice that Defendants' findings and interpretations were wrong and that they should pay out the AD&D benefits.  In short, the 5/16/19 Appeal showed that the death was the result of an accident and therefore covered under the AD&D Policy.  The 5/16/19 Appeal also outlined Defendants' improper motives and financial incentives to deny Decedent's AD&D benefits.  A true and correct copy of this 5/16/19 Appeal is attached hereto as **Exhibit 4**.

18.     On 7/10/19, Defendants denied the 5/16/19 Appeal for AD&D benefits ("7/10/19 Denial").  A true and correct copy of this 7/10/19 Denial is attached hereto as **Exhibit 5**.  In denying the claim, Defendants via a person only identified as "Terri" asserted and still asserts (but elaborates on) the same flawed Policy and factual assumptions of "Karen" described above. However, this time noting that unnamed "Associate Medical Directors" reviewed the file and corroborate "Karen's" purported medical assertions.  Defendants' adjustment or "adjudication" of the 5/16/19 Appeal was even more biased and outcome oriented than the original claims denial:

a.      This was in part reflected by Defendants' repeated denial of the claim even after being presented with evidence that the methamphetamines in Decedent's system in and of itself was not an immediate cause of death.

b.      This was in part reflected by Defendants' past and continuing failure to fairly / correctly interpret the AD&D Policy and the terms of Policy.  Such failure is evidenced by (inter alia) continuing to assert, contrary to the plain reading of the AD&D Policy, the flawed argument that methamphetamines are part of the exclusions in Paragraph (7); ie prescribed, a narcotic and/or a hallucinogen.

c.      This was in part reflected by Defendants' failure to adhere to a plain reading of the AD&D Policy language and the findings of the Medical Examiner -- that his death was an accident – unintended, unforeseen and unexpected.  Defendants' interpretation and

8

application of (inter alia) the phrase "unexpected and unforeseen" was so global, broad and expansive such that it would nullify coverage in the majority of instances in which the ordinary insured would reasonably expect coverage.  As such, the decision to deny Plaintiff's claim on this basis is arbitrary, capricious, in direct contradiction of the AD&D Policy language and done at Plaintiff's expense to benefit Defendants.

d.      This was in part reflected by Defendants' repeated assertions and purported "findings" of its own "non-treating" file reviewers over those of the first-hand personal knowledge findings of the Medical Examiner—this is despite the law requiring giving greater weight to the findings of examining physicians than the reviewing physicians.

e.      It is also reflected in that, given all of the above, a "full and fair review" was not entered into by Defendants with the requisite obligation to protect the Plan participant from arbitrary or unprincipled decision-making.

f.      It is also reflected in Defendants ignoring all evidence in favor of finding in favor of paying out benefits.

19.      Having exhausted all the administrative remedies, Plaintiff Santos / Estate brings this action to recover the AD&D benefits promised in the AD&D Policy and the Plan.

## CAUSE OF ACTION

### (Recovery of ERISA AD&D Plan Benefits)

20.      Plaintiff realleges and incorporates by reference here as though fully set forth all of the allegations made above and herein.

21.      The AD&D Policy as part of the Apple, Inc. Plan is an accidental death and dismemberment benefit plan covered by ERISA 29 U.S.C. §§ 1001-1461 and et seq.  Decedent was a covered Plan participant, and Plaintiff Santos / Estate was a beneficiary of the Plan at the time of Decedent's death.

22.      At all relevant times, Defendant Minnesota / Securian was acting on behalf of the Plan and in its own capacity as the insurer, as asserted Claims Administrator and fiduciary under the Plan.

9

23.     As a Plan fiduciary, Defendants are obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver benefits promised in the Plan.  It is also obligated as a fiduciary to conduct its investigation of a claim in a fair, objective and evenhanded manner.

24.     Plaintiff Santos / Estate performed all Plaintiff's obligations under the Plan.

25.     Defendants' past and continuing refusal and failure to pay accidental death and dismemberment benefits is improper and violates the terms of the AD&D Policy and the Plan.

26.     Defendants' interpretation of the Plan and Policy language was contrary to that of the average Plan participant and Policy holder.  It was contrary to the common and ordinary usage of the AD&D Policy terms.  Alternatively, the AD&D Policy language upon which Defendant based/bases its denial decisions is/was ambiguous.  The ambiguous nature of those terms requires those terms to be construed against Defendants and in favor of coverage for the beneficiary.

27.     Moreover, Defendants' adjustment or "adjudication" of the claim was instead biased and outcome oriented (as well as arbitrary and capricious) as described under the "Harmful Course of Conduct" heading above.   The denial was made without substantial supporting evidence.  The decision to deny the claim was instead based on speculation, guesswork, one-sided assumptions and cherry-picking the evidence and Policy provisions in favor of a claim denial. The claim denial decision was de novo wrong.  Alternatively, it was arbitrary and capricious.

28.     Defendants' failure to perform under the AD&D Policy and the Plan was not justified or excused.

29.     Upon information and belief, Defendants' determination was influenced by an improper conflict of interest.  The denial of the claim was not the result of an honest, fair, or objective factual investigation.  It was instead motivated by Defendants' desire for financial gain evidenced by (upon information and belief) policies, procedures and practices to profit from the delay in payment or denial of claims.

30.     Defendants' denial of Plaintiff's claim breaches the terms of the AD&D Policy and the Plan.  As a proximate result of Defendants' improper denial of AD&D benefits, Defendants are liable to Plaintiff Santos / Estate for the maximum AD&D benefit (pursuant to 29 U.S.C.

**COMPLAINT FOR:  RECOVERY OF AD&D INS. PLAN BENEFITS [29 U.S.C. § 1132(a)(1)(B)]**

1   §1132(a)(1)) plus prejudgment and post judgment interest, attorney fees, and costs in accordance

2   with 29 U.S.C. § 1132(g)(l).

3   <center>**CAUSE OF ACTION**</center>

4   <center>**(Penalties for Failure to Properly Provide the Claims File)**</center>

5       31.    Plaintiff Santos / Estate made proper requests to Defendants for documents to

6   which Plaintiff was entitled under 29 U.S.C. §1024(b)(4), 29 C.F.R. 2560.503-1(g)(1), (h)(2)(iii)

7   and other relevant sections of ERISA, including but not limited to his complete claim file.

8   Defendants failed to provide a complete copy of all required documents within thirty (30) days of

9   Plaintiff's original request such that when Defendants produced records, it was only a partial

10  record with key documents and relevant entries improperly redacted and or missing.  Such entitles

11  Plaintiff to the civil penalties of $110 per day per document, as described in 29 U.S.C.

12  §1132(c)(1) and as set forth in 29 C.F.R. §2575.502 c-1.  Plaintiff Santos / Estate's document

13  request is attached hereto as **Exhibit 6**.

14  <center>**STANDARD OF REVIEW**</center>

15      32.    The AD&D Policy was delivered in California.  Accordingly, California law

16  applies under the ERISA savings clause.  California has banned the use of discretionary clauses in

17  insurance policies issued in this state. California Ins. Code §10110.6. Here, the 1/14/19 claim

18  denial occurred after the statute's effective date and after the AD&D Policy's annual renewal.

19  Thus, any asserted discretionary clause is void and unenforceable.  Accordingly, review of the

20  claim and Defendants' claims handling conduct both in its interpretation of terms of the AD&D

21  Policy and the Plan, and in its determination of the facts, should be de novo.  See Cerone v.

22  Reliance Standard Life Ins. Co., 2014 U.S.Dist.LEXIS 46529 (S.D.Cal. 2014); Polnicky v.

23  Liberty Life Assurance Company of Boston, 2013 WL 6071997 (N.D.Cal. 2013); Gonda v. The

24  Permanente Medical Group, Inc., 2014 WL 186354 (N.D.Cal. 2014).

25      33.    Moreover, Defendants have a conflict of interest here that is both structural and

26  actual.  Its structural conflict results from its dual role as the adjudicator of the Plaintiff's benefit

27  claim and as the potential payor of that claim.  Defendants, in light of their financial conflict,

28  should be accorded little or no discretion in its claims decision, thus, leading to a de novo review

<center>11</center>

here.  Lang v. Long-Term Disability Plan (9th Cir. 1997) 125 F.3d 794, 798, quoting Brown v. Blue Cross & Blue Shield of Alabama, Inc. (11th Cir. 1990) 898 F.2d 1556, quoting Atwood v. Newmont Gold Co. (9th Cir. 1995) 45 F.3d 1317, 1323.  Also, Defendants' actions and omissions described herein amount to breaches of the fiduciary duties they owe Plaintiff.  These demonstrate actual conflicts of interest triggering de novo review as well as a reversal of Defendants' stance depriving Plaintiff of the AD&D Policy benefits.  See Abatie v. Alta Health and Life Ins. Co. (9th Cir. 2006) (en banc) 458 F.3d 955, 971-972 (where abuses of discretion occur, a significant conflict of interest can be found thus triggering a de novo review); Metro Life Ins. Co. v. Glenn 554 U.S. 105, 105-106 (2008).

### PRAYER

WHEREFORE, Plaintiff prays for judgment in Plaintiff's favor as follows:

1.      Damages in the amount of all benefits due and owing under the Plan and the AD&D Policy;

2.      Pre-judgment interest, attorney fees, and costs, under 29 U.S.C. § 1132(g); and

3.      Such other and further relief, whether at law or in equity, as the Court may deem just and proper.

Dated:  September 24, 2020        **GOLDSTEIN, GELLMAN, MELBOSTAD, HARRIS & MCSPARRAN. LLP**

By: _____
       Lee S. Harris, Esq.
       Adrian Hern, Esq.
       Attorneys for Plaintiff EVA MARIE SANTOS as
       Administrator of the ESTATE OF SAMUEL V.
       CHONG, aka SAMUEL CHONG, aka SAM CHONG

**COMPLAINT FOR:  RECOVERY OF AD&D INS. PLAN BENEFITS [29 U.S.C. § 1132(a)(1)(B)]**

**PLAINTIFF SANTOS / ESTATES' COMPLAINT FOR DAMAGES UNDER ERISA**

# EXHIBIT 1

# AMENDED AND RESTATED

# APPLE INC. HEALTH AND WELFARE BENEFIT PLAN

## WRAPAROUND PLAN DOCUMENT

### (PLAN 510)

**Effective for benefits provided on or after January 1, 2010**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 5

ARTICLE I: GENERAL PROVISIONS ...................................................................................... 6

1.01   DEFINITIONS ............................................................................................................... 6

   (a)   Beneficiary ................................................................................................................ 6

   (b)   Cafeteria Plan ........................................................................................................... 6

   (c)   Claims Administrator .................................................................................................. 6

   (d)   Code ......................................................................................................................... 6

   (e)   Company ................................................................................................................... 6

   (f)   Dependent ................................................................................................................. 6

   (g)   Employee .................................................................................................................. 6

   (h)   ERISA ....................................................................................................................... 6

   (i)   Health and Welfare Program ....................................................................................... 7

   (j)   HMO ......................................................................................................................... 7

   (k)   Participant ................................................................................................................. 7

   (l)   Plan .......................................................................................................................... 7

   (m)   Plan Administrator ..................................................................................................... 7

   (n)   Plan Year .................................................................................................................. 7

   (o)   Summary Plan Description or SPD ............................................................................... 7

1.02   COVERAGE UNDER ERISA ........................................................................................... 7

1.03   BENEFITS AND FUNDING ............................................................................................. 7

   (a)   Benefits .................................................................................................................... 7

   (b)   Contributions ............................................................................................................. 8

     (i)   Generally ............................................................................................................. 8

     (ii)   Benefits Deductions (Contributions) during a Leave of Absence ................................ 8

   (c)   Funding .................................................................................................................... 8

1.04   ELIGIBILITY, ENROLLMENT, AND PARTICIPATION .......................................................... 8

   (a)   Eligibility .................................................................................................................. 8

   (b)   Enrollment ................................................................................................................ 8

   (c)   Rehired Employees .................................................................................................... 9

   (d)   When Coverage Begins and Ends ................................................................................ 9

   (e)   Other Termination of Coverage ................................................................................... 9

   (f)   Rights of Conversion and Portability ............................................................................ 9

1.05   ADMINISTRATION AND FIDUCIARY PROVISIONS ........................................................... 9

   (a)   Plan Settlor Functions ................................................................................................ 9

1017764.1

| | | |
|---|---|---|
| (b) | *Fiduciary Responsibilities* | *9* |
| (c) | *Duties of the Administrator* | *10* |
| (d) | *Plan Administrator's Discretionary Authority* | *11* |
| (e) | *Indemnification* | *11* |
| 1.06 | CLAIMS, RIGHT OF RECOVERY, COORDINATION AND ASSIGNMENT OF BENEFITS | 12 |
| (a) | *Claims Procedures* | *12* |
| (b) | *Mitigation of Potential Conflicts of Interest* | *12* |
| (c) | *Exhaustion of Remedies* | *12* |
| (d) | *Right of Recovery* | *12* |
| (e) | *Coordination of Benefits* | *12* |
| (f) | *Assignment of Benefits* | *13* |
| 1.07 | PARTICIPANT RESPONSIBILITIES | 13 |
| 1.08 | EXAMINATION OF RECORDS | 14 |
| 1.09 | AMENDMENT AND TERMINATION | 14 |
| 1.10 | MISCELLANEOUS PROVISIONS | 14 |
| (a) | *Exclusive Benefit* | *14* |
| (b) | *Limitation of Rights* | *14* |
| (c) | *Governing Laws* | *15* |
| (d) | *Provisions of Plan Binding on Participants* | *15* |
| (e) | *No Guarantee of Tax Consequences* | *15* |
| (f) | *Severability* | *15* |
| (g) | *Captions* | *15* |
| (h) | *Expenses* | *15* |
| | **ARTICLE II: MEDICAL** | 16 |
| 2.01 | INTRODUCTION | 16 |
| 2.02 | DEFINITIONS | 16 |
| (a) | *CHIP* | *16* |
| (b) | *COBRA* | *16* |
| (c) | *EPHI* | *16* |
| (d) | *HIPAA* | *16* |
| (e) | *Medical Benefits* | *16* |
| (f) | *Medical Necessity* | *16* |
| (g) | *Privacy Rule* | *16* |
| (h) | *PHI* | *16* |
| (i) | *Security Rule* | *16* |

| 2.03 | BENEFITS | 16 |
| (a) | Medical Benefits | 16 |
| (b) | Company Provided Medical Benefits | 17 |
| 2.04 | SELF-INSURED BENEFITS | 17 |
| (a) | Alternative Treatment | 17 |
| (b) | Medical Necessity | 18 |
| (i) | Medical Necessity Requirement | 18 |
| (ii) | Determination of Medical Necessity | 18 |
| (iii) | Definition of Medical Necessity | 18 |
| (c) | Prior Authorization | 19 |
| (d) | Usual, Customary, and Reasonable | 19 |
| (e) | Exclusions and Limitations | 19 |
| 2.05 | PARTICIPANT RIGHTS | 19 |
| (a) | HIPAA Privacy | 19 |
| (i) | Scope | 19 |
| (ii) | Policies and Procedures | 20 |
| (iii) | Company Certification | 20 |
| (b) | HIPAA Security | 21 |
| (i) | Scope | 21 |
| (ii) | Security Safeguards | 21 |
| (c) | Notification in Case if Breach | 22 |
| (d) | Qualified Medical Child Support Orders | 22 |
| (e) | Children's Health Insurance Program Reauthorization Act of 2009 | 22 |
| (i) | Plan Enrollment | 22 |
| (ii) | Plan Disenrollment | 22 |
| (f) | Continuation of Coverage | 22 |
| (i) | COBRA | 22 |
| (ii) | COBRA-Like Coverage | 23 |
| (iii) | Michelle's Law | 23 |
| (iv) | Continuation of Coverage for Dependents of Deceased Employees | 23 |
| (v) | Continuation of Coverage during a Leave of Absence or Military Leave | 23 |
| ARTICLE III: SHORT-TERM DISABILITY | | 24 |
| 3.01 | INTRODUCTION | 24 |
| 3.02 | DEFINITIONS | 24 |
| (a) | Disability or Disabled | 24 |
| (b) | Disability Benefits | 24 |
| (c) | Elimination Period | 24 |

1017764.1

| | | | |
|---|---|---|---|
| (d) | | *Objective Medical Evidence* | *24* |
| (e) | | *Physician* | *24* |
| 3.03 | | DISABILITY BENEFITS | 24 |
| (a) | | *Definition of Disability or Disabled* | *24* |
| | (i) | Qualifying Circumstances | 24 |
| | (ii) | Continuous Disability | 25 |
| | (iii) | Disqualifying Circumstances | 25 |
| | (iv) | Determination of Disability | 25 |
| (b) | | *Application for Disability Benefits* | *25* |
| | (i) | General Requirements | 25 |
| | (ii) | Time Limit | 26 |
| | (iii) | Medical Examinations | 27 |
| (c) | | *Elimination Period* | *27* |
| (d) | | *Amount of Benefit* | *27* |
| (e) | | *Commencement, Frequency, and Termination of Payments for Benefits* | *27* |
| (f) | | *Exclusions and Limitations* | *27* |
| (g) | | *Recurring Disability* | *28* |
| 3.04 | | COORDINATION WITH OTHER BENEFITS | 28 |
| (a) | | *Reduction of Disability Benefits* | *28* |
| (b) | | *Coordination with Sick, Vacation, Holiday Pay* | *30* |
| 3.05 | | PAYMENT TO A REPRESENTATIVE | 30 |
| | | | |
| ARTICLE IV: OTHER BENEFITS | | | 31 |
| 4.01 | | GENERALLY | 31 |
| 4.02 | | CAFETERIA PLAN | 31 |
| | | | |
| ARTICLE V: ADOPTION OF THE PLAN | | | 32 |
| | | | |
| APPENDIX A: PARTICIPATING EMPLOYERS | | | 33 |

1017764.1

## INTRODUCTION

This document, together with other documents identified below and incorporated by reference herein, constitute the amended and restated Apple Inc. Health and Welfare Benefit Plan (the "Plan") (formerly known as the Apple Computer, Inc. Health and Welfare Benefit Plan). This Plan is intended to replace all prior wraparound documents, the Apple Computer, Inc. Medical Plan document, the Apple Computer, Inc. Short Term Disability Benefit Plan document, and other related documents. This document, together with the Plan's Summary Plan Description, the Cafeteria Plan, any insurance contracts providing benefits under the Health and Welfare Programs, and any agreements with HMOs to the extent incorporated by reference herein will constitute the written plan document for the Plan.

The purpose of the Plan is to provide Participants and their Beneficiaries certain health and welfare benefits described herein. The Plan is intended to meet all applicable requirements of the Internal Revenue Code and ERISA and to provide coverage and benefits to Participants which, to the maximum extent permissible under Code Sections 79, 101, 104, 105, 106, 125, and 129 as applicable, shall be excludable from their gross income. The Plan shall be construed and administered in accordance with such intent.

The Health and Welfare Programs that are being provided under this Plan are those listed as ERISA-covered benefits in the "Plan Information" section of Summary Plan Description. The ERISA-covered Health and Welfare Programs listed in the Summary Plan Description and the documents that govern or describe them may be amended or terminated at any time without the need for formal amendment of this Plan document. Notwithstanding any implication or statement to the contrary in any of the documents incorporated herein by reference, the Plan is a single plan for purposes of reporting and disclosure under ERISA. For the Health and Welfare Programs described as ERISA-covered benefits in the Summary Plan Description, the plan documents, contracts, and policies that govern them are incorporated by reference into this document as if set forth fully herein.

The provisions in this Plan document are intended to apply generally to all of the Health and Welfare Programs. However, in case of any omission or conflict between the language of the Summary Plan Description and the plan documents, contracts, and policies, the terminology and provisions found in the plan document, contract, or policy for that Health and Welfare Program will control with regard to the benefits provided to employees and beneficiaries who are eligible for benefits under the Health and Welfare Program.

1017764.1

## ARTICLE I: GENERAL PROVISIONS

1.01   **Definitions**

In addition to the following (and the terms defined elsewhere in this Plan), all terms defined in the Summary Plan Description are incorporated herein by reference.

(a)   **Beneficiary** means a person designated as such by a Participant under a Health and Welfare Program or who is or may become entitled to a benefit thereunder.

(b)   **Cafeteria Plan** means the Apple Inc. Flexible Benefits Plan or any successor thereof that is intended to qualify as a "cafeteria plan" under Code section 125 (and 129 as applicable). The term Cafeteria Plan, for purposes of this Plan, will include any of the following benefits that the Company may choose to provide: premium conversion, flexible benefit (spending) accounts, health care spending accounts, and/or dependent day care spending accounts.

(c)   **Claims Administrator** means any third party administrator, insurance company, or other organization or individual to which the Company or the Plan Administrator has delegated the duty to process and/or review claims for benefits under a Health and Welfare Program, or the Plan Administrator may itself act as the Claims Administrator. The Plan Administrator will act as the Claims Administrator in the case of second appeals for self-insured Health and Welfare Programs and may also be involved in other claim determinations.

(d)   **Code** means the Internal Revenue Code of 1986, as amended from time to time. Any reference to any section of the Code will be deemed to include any applicable regulations and rulings pertaining to such section and will also be deemed a reference to comparable provisions of future laws.

(e)   **Company** means Apple Inc. and its designated United States affiliates, or any successor or successors thereof, as listed in Appendix A.

(f)   **Dependent** means any individual, other than the Employee, who is eligible to receive benefits under a Health and Welfare Program as described in the Summary Plan Description.

(g)   **Employee** means any individual who is eligible to receive benefits under the terms of a Health and Welfare Program.

(h)   **ERISA** means the Employee Retirement Income Security Act of 1974 as amended from time to time. Any reference to any section of ERISA will be deemed to include any applicable regulations and rulings pertaining to such section and will also be deemed a reference to comparable provisions of future laws.

(i)     **Health and Welfare Program** means a written arrangement incorporated into this Plan that is offered by the Company which provides any employee benefit that would be treated as an "employee welfare benefit plan" under section 3(1) of ERISA if offered separately. The Health and Welfare Programs provided under the Plan are those listed in the "Plan Information" section of the SPD. The Company may add a Health and Welfare Program or delete a Health and Welfare Program from the Plan by amending the Summary Plan Description, without any need to otherwise amend this Plan document.

(j)     **HMO** means a Health Maintenance Organization.

(k)     **Participant** means any Employee who becomes a Participant pursuant to Section 1.04.

(l)     **Plan** means this Apple Inc. Health and Welfare Benefit Plan as set forth herein, as amended from time to time.

(m)     **Plan Administrator** means Apple Inc. unless another entity or person is appointed by Apple Inc.

(n)     **Plan Year** means the 12 month period commencing January 1 and ending December 31.

(o)     **Summary Plan Description or SPD** means the Apple Benefits Book for Corporate and Full-Time Retail Employees and the Apple Benefits Book for Part-Time Retail Employees, as amended from time to time.

## 1.02   Coverage under ERISA

ERISA is a federal law that applies to most, but not all, employer-sponsored employee benefit plans. The SPD describes all of the benefits the Company provides; however, not all of those benefits are covered by ERISA. The Health and Welfare Programs that are considered ERISA-covered welfare benefit plans are those described in the "Plan Information" section of the SPD.

This Plan describes all of the possible Health and Welfare Programs that the Company may decide to offer under the Plan. To the extent the Company determines that a benefit qualifies as a welfare benefit plan, as defined by section (3)(1) of ERISA, the provisions of this Plan will apply. In no event will the provisions of this Plan apply to the extent a benefit is not a welfare benefit plan under ERISA. Further, nothing in the Plan will be construed as requiring compliance with ERISA provisions that do not otherwise apply.

## 1.03   Benefits and Funding

(a)     **Benefits**

    The Health and Welfare Programs that are provided under the Plan for Employees and their Dependents are those listed as ERISA-covered benefits in the "Plan

Information" section of the SPD, and described in the SPD and applicable plan documents, insurance contracts or policies, and HMO contracts.

(b) **Contributions**

    (i) **Generally**

        In order to obtain coverage and to receive benefits under the Plan, eligible Employees must contribute to the Plan the amounts specified by the Company. Contributions will be made via payroll deductions or otherwise as authorized by the Company and any applicable law and described in the Plan or SPD.

    (ii) **Benefits Contributions during a Leave of Absence**

        Benefits deductions will be required during a leave of absence as described in the SPD.

(c) **Funding**

The Plan's benefits for Employees and Dependents are either insured (funded through the purchase of group insurance or contracts) or self-insured (funded from the general assets of the Company). Where the benefits are insured, the insurance company is responsible for making all benefit payments. Premiums are paid by eligible Employees and by the Company. For a list of which Health and Welfare Programs are insured (including the insurer for each) and which are self-insured, see the "Plan Information" section of the SPD.

## 1.04 Eligibility, Enrollment, and Participation

(a) **Eligibility**

Eligibility for each Health and Welfare Program is described in the applicable section of the SPD. The Company is authorized to classify which individuals are eligible or ineligible. In the event the classification of an individual who is excluded from eligibility is determined to be erroneous or retroactively revised, the individual will nonetheless be excluded from eligibility for all periods prior to the date the classification is determined to be erroneous or is revised and shall continue to be excluded from eligibility for future periods, unless otherwise determined by the Company.

(b) **Enrollment**

The enrollment rules for each Health and Welfare Program are described in the applicable section of the SPD. Enrollment elections and changes will be permitted only to the extent they are allowed by the Cafeteria Plan and Code.

8

Notwithstanding the foregoing, the Plan Administrator has discretionary authority to allow an Employee who is enrolled in a Health and Welfare Program to add coverage mid-year (i.e., at a time other than during an open enrollment period) for a Dependent who is otherwise eligible but, for good cause, the Employee had not previously enrolled. Such discretion will only be authorized to the extent such a change in election does not qualify as a Permitted Election Change Event as defined in the Cafeteria Plan. The Plan Administrator may nevertheless allow the change with respect to the Dependent, who may participate on an after-tax basis for the remainder of the Plan Year outside of the Cafeteria Plan.

(c)     **Rehired Employees**

The rules regarding eligibility, elections, and participation for rehired Employees are described in the SPD.

(d)     **When Coverage Begins and Ends**

The rules regarding when coverage and benefits begin and end for each Health and Welfare Program are described in the SPD.

(e)     **Other Termination of Coverage**

Notwithstanding the other provisions of this Section 1.04, the Plan Administrator may, in its sole and absolute discretion, cause the participation of an Employee or Dependent in the Plan to terminate for any of the reasons described in the SPD. Other possible consequences are also described in the SPD.

(f)     **Rights of Conversion and Portability**

Some Health and Welfare Programs offer conversion or portability options, as described in the SPD and applicable insurance policies.

1.05   **Administration and Fiduciary Provisions**

(a)     **Plan Settlor Functions**

The Company has full discretionary authority with respect to decisions regarding the legal and tax status of the Plan, the Plan's funding, and amending or terminating the Plan. In making such decisions, the Company will be acting in a settlor capacity and not as an ERISA fiduciary. Such decisions are business decisions that may be made solely in the Company's interest.

(b)     **Fiduciary Responsibilities**

The Plan Administrator will act as the "plan administrator" under ERISA Section 3(16) and will be the "named fiduciary" for purposes of ERISA Section 402(a)(1) with authority to control and manage the operation and administration of the Plan.

9

The Plan Administrator will have the duty and obligation of compliance with all reporting and disclosure requirements established under ERISA.

All actions by "fiduciaries" (as that term is defined in ERISA Section 3(21)(A)) will be in accordance with the terms of this Plan insofar as such documents are consistent with the provisions of Title I of ERISA. Each fiduciary will act solely in the interest of Plan Participants and Beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable administrative expenses. Each fiduciary will discharge such fiduciary's duties hereunder with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man or woman acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

(c)     **Duties of the Plan Administrator**

The Plan Administrator will have the duties and obligations to carry out the terms and conditions of the Plan, including the powers necessary and appropriate to administer the Plan and any Health and Welfare Program. With the discretionary authority authorized by Subsection 1.05(d), the duties and powers of the Plan Administrator will include, but will not be limited to the following:

(i)     Make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan, including the establishment of any claims procedures that may be required by applicable law;

(ii)    Construe and interpret the Plan, SPD, Health and Welfare Programs, and all other Plan documents;

(iii)   Decide all questions concerning the Plan, SPD, Health and Welfare Programs, and all other Plan documents, and the eligibility of any eligible Employee or any other person claiming entitlement to participate in the Plan;

(iv)    Make factual findings and resolve ambiguities in connection with the interpretation of the Plan, SPD, Health and Welfare Programs, and all other Plan documents;

(v)     Delegate its responsibilities under the Plan as it deems necessary or appropriate to assist in the administration of the Plan or Health and Welfare Programs;

(vi)    Engage attorneys, actuaries, accountants, consultants, third-party administrators, independent medical examiners, or other persons to render advice or to perform services with regard to its responsibilities under the Plan;

10

(vii)   Compromise, settle, or release claims or demands in favor of or against the Plan or the Plan Administrator on such terms and conditions as the Plan Administrator may deem desirable;

(viii)  Take any such action the Plan Administrator deems appropriate, under rules uniformly applicable to similarly situated Participants, to assure compliance with an applicable law or to satisfy a nondiscrimination requirement.  Such actions may include, without limitation, a modification of benefits, contributions, coverage, or elections, all without the consent of or notification to affected Participants; and

(ix)    Adopt rules and regulations and make administrative decisions regarding the administration of the Plan and Health and Welfare Programs, which rules, regulations, and administrative decisions may be amended, modified, or rescinded by action of the Plan Administrator.

(d)   **Plan Administrator's Discretionary Authority**

The Plan Administrator (or its delegate) for this Plan has the sole and absolute discretionary authority to perform its duties and exercise its powers described in Subsection 1.05(c).  The Plan Administrator's decisions made in good faith will be conclusive and binding on all persons, including but not limited to any Employee, Dependent, Beneficiary, or the Company.  Decisions will be made in accordance with the governing Plan documents and, where appropriate, Plan provisions will be applied consistently with respect to similarly situated claimants in similar circumstances. The Plan Administrator will have the discretion to determine which claimants are similarly situated in similar circumstances. Benefits will be paid only if the Plan Administrator or its delegate determines, in its discretion, that the applicant is entitled to them.

(e)   **Indemnification**

The Company agrees to defend and hold harmless, to the fullest extent permitted by law, any employee serving as the Plan Administrator or designated to act in the capacity of the Plan Administrator even though the person was not named as the Administrator and any employee or former employee who formerly served as the Administrator or was designated to act in the capacity of the Plan Administrator against all liabilities, damages, costs and expenses, including attorney's fees and amounts paid in settlement of any claims approved by the Company, occasioned by any act or omission to act in connection with the Plan, to the extent that such act or omission was made in good faith.

1.06   **Claims, Right of Recovery, Coordination and Assignment of Benefits**

(a)   **Claims Procedures**

The rules regarding claims for benefits and appeals of adverse benefit determinations for each Health and Welfare Program are described in the SPD and applicable insurance contracts and policies.

(b)   **Mitigation of Potential Conflicts of Interest**

Decisions regarding appeals of adverse benefit determinations will not afford deference to the initial adverse determination and will not be conducted by the individual who made the initial determination or his or her subordinate. The review will take into account all comments, documents, records, and other information submitted, regardless of whether the information was previously considered on initial review. In making a claims determination, the Claims Administrator is required to interpret Plan provisions in good faith in the best interest of Plan Participants and Beneficiaries without regard to either the amount of benefits that may be paid to a claimant or the financial impact on the Company. The Plan Administrator will maintain policies regarding the processing of second appeals, which are incorporated herein by reference.

(c)   **Exhaustion of Issues and Remedies**

All issues must be raised on appeal or will forever be waived. No lawsuit may be brought with respect to Plan benefits until all administrative procedures have been exhausted for each issue raised and under no circumstances may any lawsuit be brought more than 180 days following the final adverse determination under the Plan.

(d)   **Right of Recovery**

The Plan has a right of recovery, which is described in the SPD, of certain payments made, or owed, to a Participant or Dependent by a third party.  In addition, if the Plan has made an erroneous or excess payment to any Participant or Dependent, the Plan Administrator will be entitled to recover such excess from the Participant or Dependent to whom such payment was made.  The recovery of such overpayment may also be made by offsetting the amount of any other benefit or amount payable by the amount of the overpayment under the Plan.

(e)   **Coordination of Benefits**

Coordination of benefits applies whenever a Participant or Dependent has coverage under more than one plan. The Plan's coordination of benefits provisions are described in the SPD.

(f)   **Assignment of Benefits**

Except to the extent required by law and/or specifically authorized by the SPD, no benefit payable at any time under the Plan will be assignable or transferable, or subject to any lien, in whole or in part, either directly or otherwise, including, but not by way of limitation, execution, levy, garnishment, attachment, pledge, bankruptcy, or in any other manner, and no benefit payable under the Plan will be liable for, or be subject to, any obligation or liability of any Participant. If any Participant entitled to a benefit under the Plan attempts to, or does alienate, sell, transfer, assign, pledge, or otherwise encumber such benefit, or any part thereof, or if by reason of his or her bankruptcy, or other event happening at any time, such benefit would devolve upon anyone else or would not be enjoyed by him or her, then the Plan Administrator, in its discretion, which will be exercised uniformly by treating individuals in similar circumstances alike, may terminate the Participant's interest in any such benefit, and hold or apply it to or for his or her benefit, or the benefit of his or her spouse, children, or other Dependents, or any of them, in such manner as the Plan Administrator may deem proper and in accordance with law.

### 1.07   **Participant Responsibilities**

Each Participant will be responsible for providing the Plan Administrator and/or the Company with the Participant's and each Dependent's or Beneficiary's current address. In addition, a Participant or Dependent who is eligible for Medicare must provide the Company with his or her Social Security number. Any payments made under the Plan, or notices required or permitted to be given under the Plan, will be deemed provided if directed to such address and mailed by regular United States mail or delivered via another method allowed by ERISA. Neither the Plan Administrator nor the Company will have any obligation or duty to locate a Participant, Dependent, or Beneficiary, or to confirm that the payments or notices were received. In the event that a Participant, Dependent, or Beneficiary becomes entitled to a payment under this Plan and such payment is delayed or cannot be made because:

(i)     the current address according to Company records is incorrect;

(ii)    the Participant, Dependent, or Beneficiary fails to respond to the notice sent to the current address according to Company records;

(iii)   of conflicting claims to such payments; or

(iv)    of any other reason,

the amount of such payment, if and when made, will be that determined under the provisions of the Plan without addition of any interest or earnings.

1.08   **Examination of Records**

The Plan Administrator will make available to each Participant or Beneficiary certain Plan documents and information as and to the extent required by ERISA in accordance with the procedures and conditions described in the SPD.

1.09   **Amendment and Termination**

Although the Company has established the Plan with the intention of maintaining the Plan indefinitely, the Company reserves the absolute right (through its Board of Directors or a delegate of its Board of Directors) to amend or terminate the Plan at any time, in whole or in part, for any reason or for no reason. The Company (through its Board of Directors or a delegate of its Board of Directors) may amend or terminate any group insurance or HMO contract through which benefits are provided under the Plan. Such amendment or termination will not require the formal amendment of this Plan document. Any amendment to or termination of the Plan, an insurance contract, an HMO contract, or other plan may apply to any rights, benefits, and claims of any sort that have not accrued or been incurred as of the date of the amendment or termination. Therefore, an amendment to the Plan or resolution terminating the Plan may provide that benefits to any and all Participants and Dependents will not continue beyond the date specified in such amendment or resolution, and if so provided, Participants and Dependents will have no right to further benefits under the Plan. The Company expressly reserves the right to amend or terminate the Plan in order to modify or eliminate any or all benefits provided to Employees and their Dependents.

The Company's decision to amend or terminate the Plan, in whole or in part, or any or several of the group insurance contracts or HMO contracts under the Plan, is not a fiduciary decision that must be made solely in the interest of eligible Employees and their Dependents, but is a business decision that can be made solely in the Company's interest.

1.10   **Miscellaneous Provisions**

(a)   **Exclusive Benefit**

This Plan has been established for the exclusive benefit of Participants, Dependents, and Beneficiaries, and except as otherwise provided herein, all contributions under the Plan may be used only for such purpose.

(b)   **Limitation of Rights**

Neither the establishment nor the existence of the Plan, nor any modification thereof, will operate or be construed so as to do either of the following:

(i)   Give any person any legal or equitable right against the Company, except as expressly provided herein or required by law; or

14

(ii) Create a contract of employment with any Employee, obligate the Company to continue the service of any Employee, or affect or modify the terms of an Employee's employment in any way.

(c) **Governing Laws**

The Plan is governed, construed, enforced, and administered in accordance with the applicable requirements of the Code, ERISA, and, to the extent not preempted by federal law, the laws of the State of California.

(d) **Provisions of Plan Binding on Participants**

Upon becoming a Participant, each Participant will be bound then and thereafter by the terms of this Plan, including all amendments thereto.

(e) **No Guarantee of Tax Consequences**

Neither the Plan Administrator nor the Company makes any commitment or guarantee that any amounts paid to or for the benefit of the Participant or a Dependent under this Plan will be excludable from the Participant's or Dependent's gross income for federal or state income or FICA tax purposes, or that any other federal or state tax treatment will apply to or be available to any Participant or Dependent.

(f) **Severability**

If any provision of the Plan is held invalid or unenforceable, its invalidity or unenforceability will not affect any other provision of the Plan, and the Plan will be construed and enforced as if such invalid or unenforceable provision had not been included herein.

(g) **Captions**

The captions contained herein are inserted only as a matter of convenience and for reference, and in no way define, limit, enlarge, or describe the scope or intent of the Plan nor in any way will affect the Plan or the construction of any provision thereof.

(h) **Expenses**

The expenses of administering the Plan, including without limitation the expenses of the Plan Administrator properly incurred in the performance of its duties under the Plan, will be paid by the Plan, and all such expenses incurred by the Company will be reimbursed by the Plan, unless the Company in its discretion elects either to pay such expenses from assets other than assets of the Plan or not to submit such expenses for reimbursement. In addition, such amounts that may be used to reimburse Plan expenses expressly include any forfeitures from the Health Care Spending Accounts and/or Dependent Day Care Spending Accounts.

15

## ARTICLE II: MEDICAL

2.01   **Introduction**

The provisions in this Article, except Section 2.04, apply to any insured or self-insured Health and Welfare Programs that provide Medical Benefits. An insured Health and Welfare Program that provides Medical Benefits remains subject to the terms of the insurance policies and/or contracts, which are incorporated into this document as if set forth fully herein. The Medical Benefits provided by the Company, and whether each is self-insured or insured (including the insurer), are listed in the "Plan Information" section of the SPD.

2.02   **Definitions**

    (a)   **CHIP** means the Children's Health Insurance Program established by a state.

    (b)   **COBRA** means the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.

    (c)   **EPHI** means electronic protected health information as defined by the Security Rule.

    (d)   **HIPAA** means the Health Insurance Portability and Accountability Act of 1996.

    (e)   **Medical Benefits** means benefits that qualify under Section 2.03(a).

    (f)   **Medical Necessity** is defined in Section 2.04(b)(iii).

    (g)   **Privacy Rule** means the "Privacy Rule" regulations issued by the Department of Health and Human Services under HIPAA.

    (h)   **PHI** means protected health information as defined by the Privacy Rule.

    (i)   **Security Rule** means the "Health Insurance Reform: Security Standards" regulations issued by the Department of Health and Human Services under HIPAA.

2.03   **Benefits**

    (a)   **Medical Benefits**

        The provisions of this Article will apply to the extent the Company determines that a benefit is a "Medical Benefit," which means it qualifies as both of the following:

        (i)   a welfare benefit plan, as defined by section (3)(1) ERISA; and

        (ii)   medical care, as defined by Code section 213(d).

16

(b)   **Company Provided Medical Benefits**

The Company may decide to provide any of the following Medical Benefits under one or more Health and Welfare Program(s) subject to the terms of this Article:

(i)     major medical;

(ii)    prescription drugs;

(iii)   vision;

(iv)   mental health and/or substance use disorder;

(v)    employee assistance program;

(vi)   dental; or

(vii)  wellness.

The benefits that are actually provided by the Company are those that are described in the SPD.

2.04   **Self-Insured Benefits**

All references in other documents to the Apple Computer, Inc. Medical Plan will refer to the provisions of this Section 2.04. This Section applies to all self-insured Health and Welfare Programs that provide Medical Benefits, which are generally described in the SPD. Such descriptions are incorporated into this Section as if set forth fully herein.

(a)   **Alternative Treatment**

The Claims Administrator may authorize the Plan to pay for expenses that are not otherwise payable under the Plan if the following conditions are satisfied:

(i)     the expenses are determined by the Claims Administrator in its sole discretion to be a medically reasonable alternative having a cost equal to or lower than the cost of services or supplies reasonably expected to be incurred under the patient's current or projected course of medical treatment;

(ii)    the expenses represent the least costly medically reasonable alternative to the patient's current or projected course of medical treatment;

(iii)   the expenses do not involve a permanent improvement to a covered individual's residence that would significantly affect the value of such residence; and

(iv)   the expenses are prescribed for the treatment of the patient's disease or condition as an aid to recovery and are not primarily related to

17

nonrehabilitative education or to custodial care

(b) **Medical Necessity**

(i) **Medical Necessity Requirement**

Medical Benefits will be provided only for expenses incurred for the Medically Necessary diagnosis and direct care and treatment of an illness, disease, or injury for which benefits are payable under this Plan. To the extent medically warranted, the following shall also be considered Medically Necessary: preventive care, infertility treatment, services to address congenital abnormalities, and, to the extent related to developmental delays, physical, speech, or occupational therapy. In the event that an illness, disease, or injury necessitates confinement in a hospital or skilled nursing facility, Medical Benefits will be payable only for the number of days required for the direct care and treatment of the condition for which the covered individual was confined. In order to be payable, Medical Benefits must relate to services which are:

(A) ordered by the attending physician;

(B) in accordance with standard medical practice in the community in which such services were rendered; and

(C) recognized as a legal course of treatment in the United States.

(ii) **Determination of Medical Necessity**

The determination of Medical Necessity will be made by the Claims Administrator, in its sole discretion, and such determination will be conclusive and binding. The fact that a physician or other provider prescribes or orders the service does not, of itself, make such services Medically Necessary.

(iii) **Definition of Medical Necessity**

"Medically Necessary" or "Medical Necessity" means those services or supplies provided by a hospital, physician, or other provider, which are:

(A) appropriate for the treatment of the diagnosed symptoms, condition, disease, illness, or injury;

(B) provided for the diagnosis or the direct care and treatment of the condition, disease, illness, or injury;

(C) in accordance with the standards of good medical practice;

(D) for treatment within the scope of the hospital's, physician's, or

other provider's service license;

(E)    not primarily for the convenience of a covered individual's physician or other provider;

(F)    not court-ordered treatment;

(G)    not treatment for professional growth;

(H)    effective or efficient treatment; and

(I)    the most appropriate supply or level of service which can safely be provided to the covered individual.

When applied to hospitalization, this further means that the individual requires acute care as a bed patient due to the nature of the services rendered or the covered individual's condition, and that the covered individual cannot receive safe and adequate care as an out-patient.

(c)    **Prior Authorization**

The requirements for prior authorization are described in the SPD.

(d)    **Usual, Customary, and Reasonable**

Payment for benefits under the Plan will not exceed the amount that is usual, customary, and reasonable. The determination of whether the cost of a particular treatment, procedure, or device is usual, customary, or reasonable will be made by the Claims Administrator, in its sole discretion, and such determination will be conclusive and binding. The fact that a physician or other provider prescribes or orders the service does not, of itself, make such services usual, customary, and reasonable.

(e)    **Exclusions and Limitations**

There are a number of circumstances that could cause an otherwise eligible Participant not to be entitled to Medical Benefits. Such exclusions and limitations are described in the SPD.

2.05    **Participant Rights**

(a)    **HIPAA Privacy**

(i)    **Scope**

The provisions of this Section 2.05(a) will apply only to those portions of the Plan that are considered a group health plan under the Privacy Rule. In addition, this Section only applies to the extent the Company must

19

protect the privacy of PHI. Terms used in this Section and not otherwise defined will have the meaning provided in the Privacy Rule.

(ii)   **Policies and Procedures**

The Company has policies and procedures in place describing how the Plan may receive, use, and disclose PHI.  Such policies are procedures are incorporated by reference into this document as if set forth fully herein.  Specifically the policies and procedures:

(A)   establish the permitted and required uses and disclosures of PHI by the Company consistent with the Privacy Rule;

(B)   provide for adequate separation (*e.g.*, erect firewalls) between the Plan and the Company.

(C)   identify employees who will have access to PHI and under what circumstances this access will be permitted;

(D)   restrict the access or use of PHI to the plan administration functions that the Plan Administrator performs for the Plan; and

(E)   establish a mechanism for resolving issues of non-compliance.

(iii)   **Company Certification**

By adopting this Plan, the Company also certifies that, to the extent required by the Privacy Rule, the Company:

(A)   will not use or disclose PHI other than as permitted or required by the Plan or as required by law;

(B)   will ensure that any agent, including a subcontractor, to whom the Plan provides PHI agrees to the same conditions that apply to the Company with respect to such information;

(C)   will not use or disclose PHI for employment-related actions or decisions or in connection with any other benefit plan sponsored by the Company;

(D)   will report to the Plan any improper use or disclosure of PHI of which it becomes aware;

(E)   will make an individual's PHI available to him or her;

(F)   will make an individual's PHI available to him or her for amendment and will incorporate any amendments into the PHI;

20

(G)    will make uses and disclosures of PHI available to individuals or to the Department of Health and Human Services;

(H)    will, if feasible, return or destroy all PHI received from the Plan that the Company still maintains in any form and retain no copies of such information when no longer needed for the purpose for which disclosure was made, except that, if such return or destruction is not feasible, limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible;

(I)    will ensure the separation (*e.g.*, firewall) between the Company and the Plan is maintained; and

(J)    has implemented the policies and procedures described in Section 2.05(a)(ii).

The Plan will only disclose PHI to the Company if the Company has certified the prior statements.

(b)    **HIPAA Security**

    (i)    **Scope**

    The provisions of this Section 2.05(b) will apply only to those portions of the Plan that are considered a group health plan under the Security Rule. Additionally, this Section only applies to the extent the Company must protect the security of EPHI. Terms used in this Section and not otherwise defined will have the meaning provided in the Security Rule.

    (ii)    **Security Safeguards**

    To the extent required by the Security Rule, the Company will:

(A)    implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of EPHI transmitted on behalf of the Plan;

(B)    ensure adequate separation described in Section 2.05(a)(ii)(B) between the Company and the Plan is supported by reasonable and appropriate security measures;

(C)    ensure that any agent, including a subcontractor, to whom it provides EPHI agrees to implement reasonable and appropriate security measures to protect the information; and

(D)    report to the Plan any security incident of which it becomes aware.

21

(c) **Notification in Case of HIPAA Breach**

The Plan Administrator has policies and procedures in place describing how the Plan will comply with the requirement to notify affected individuals and the Department of Health and Human Services of any breach of unsecured PHI, to the extent required by the Health Information Technology for Economic and Clinical Health Act and any applicable rules and regulations issued thereunder. Such policies and procedures are incorporated by reference into this document as if set forth fully herein.

(d) **Qualified Medical Child Support Orders**

The Company has policies and procedures in place describing how the Plan will review and implement Qualified Medical Child Support Orders. Such policies and procedures are incorporated by reference into this document as if set forth fully herein.

(e) **Children's Health Insurance Program Reauthorization Act of 2009**

(i) **Plan Enrollment**

If an Employee or eligible Dependent is enrolled in Medicaid or CHIP and later either loses that coverage or becomes eligible for a state premium assistance subsidy, the individual, if otherwise eligible for benefits, may enroll in certain Health and Welfare Programs as described in the SPD.

(ii) **Plan Disenrollment**

A Participant may be able to disenroll a Dependent child from major medical benefits under this Plan if a state provides a process to enroll the child in, and receive child health assistance under, CHIP in accordance with The Children's Health Insurance Program Reauthorization Act of 2009. In order to disenroll, the Participant will need to comply with any procedures and deadlines established by the state or described in the SPD.

(f) **Continuation of Coverage**

(i) **COBRA**

The COBRA rules for the Plan are described in the SPD. COBRA will only apply to those portions of the Plan that are considered a group health plan under COBRA and to the extent the Company is required by COBRA to provide continuation coverage. Terms used in the Plan or SPD related to COBRA, and not otherwise defined, will have the meaning provided under COBRA provisions of the Code and ERISA.

(ii)    **COBRA-Like Coverage**

The Company provides some benefits that are similar to COBRA for
individuals who are not considered qualified beneficiaries as defined by
COBRA.  Such benefits, to the extent they are provided, are described in
the SPD.

(iii)   **Michelle's Law**

The rules regarding continuation of coverage under Michelle's Law are
described in the SPD.  Michelle's Law will only apply to those portions of
the Plan that are considered a group health plan under Michelle's Law and
to the extent the Company is required by Michelle's Law to provide
continuation coverage. Terms used in the Plan or SPD related to
Michelle's Law, and not otherwise defined, will have the meaning
provided under Michelle's Law provisions of the Code section 9813 and
ERISA section 714.

(iv)    **Continuation of Coverage for Dependents of Deceased Employees**

The Company allows enrolled Dependents of deceased Employees to
continue coverage in certain situations.  Such benefits, to the extent they
are provided, are described in the SPD.

(v)     **Continuation of Coverage during a Leave of Absence or Military
Leave**

The Company provides Employees with a variety of leave of absence
and/or military leave options.  Depending on the type of leave of absence
or military leave, the Company may allow Participants to continue
coverage under the Plan. Such benefits, and any applicable requirements,
are described in the SPD.

1017764.1

## ARTICLE III: SHORT-TERM DISABILITY

3.01 **Introduction**

All references in other documents to the Apple Computer, Inc. Short Term Disability Benefit Plan will refer to this Article. The provisions in this Article apply to any self-insured Health and Welfare Program that provides short-term disability benefits and qualifies as a welfare benefit plan, as defined by ERISA Section (3)(1). Note that not all short-term disability benefits are welfare benefit plans for purposes of ERISA. The short-term disability benefits that are considered ERISA-covered welfare benefit plans are those described in the "Plan Information" section of the SPD. The Health and Welfare Programs governed by this Article are generally described in the SPD and such descriptions are incorporated into this document as if set forth fully herein.

3.02 **Definitions**

(a) **Disability or Disabled** is defined in Section 3.03(a). The terms "disability" and "disabled" will have the same meaning for purposes of this Article.

(b) **Disability Benefits** means the benefits provided under Sections 3.02 through 3.05 and described in the SPD as the Apple Short Term Disability Plan.

(c) **Elimination Period** means the number of days a person must be Disabled before Disability Benefits become payable.

(d) **Objective Medical Evidence**, as used in this Article, means a measurable abnormality which is evidenced by one or more standard medical diagnostic procedures, including laboratory tests, physical examination findings, X-rays, MRIs, EEGs, ECGs, CAT scans, or similar tests that support the presence of anatomical, physiological, or psychological abnormalities, apart from the Participant's perception of his or her mental or physical impairments. Objective Medical Evidence does not include physician's opinions based solely on the acceptance of subjective complaints (*e.g.* headache, fatigue, pain, nausea), age, transportation, local labor market, and other non-medical factors. To be considered an abnormality, the test result must be clearly recognizable as out of the range of normal for a healthy population; the significance of the abnormality must be understood and accepted in the medical community.

(e) **Physician** is defined in the SPD.

3.03 **Disability Benefits**

(a) **Definition of Disability or Disabled**

(i) **Qualifying Circumstances**

In order to qualify as Disabled, a Participant must satisfy one of the following requirements:

24

(A)     the Participant is continuously unable to perform his or her regular and customary job because of injury, illness, or pregnancy, based on Objective Medical Evidence as certified by the Participant's Physician and the Participant must be under the regular care of a licensed Physician or other qualified health care provider;

(B)     the Participant has been ordered not to work by written order from a state or local health officer because he or she is infected with, or suspected of being infected with, a communicable disease; or

(C)     the Participant has been referred or recommended by a Physician to participate in a program for the treatment of drug or alcohol abuse which requires attendance for a minimum of five days per week for a minimum of six hours per day, and is actively participating in such program.

(ii)    **Continuous Disability**

Notwithstanding any other provision of this Article, Disability Benefits will only be paid to the extent the Participant continues to be considered Disabled.

(iii)   **Disqualifying Circumstances**

Notwithstanding the other provisions of this Article, a Participant will not be considered Disabled if:

(A)     he or she is performing work of any kind for remuneration or profit unless with the prior approval of the Claims Administrator; or

(B)     he or she declines alternative employment by the Company which is within the Participant's capabilities and, as determined solely by the Claims Administrator, has status and compensation comparable to the Participant's previous occupation.

(iv)    **Determination of Disability**

The determination of whether a Participant is Disabled will be made on the basis of Objective Medical Evidence by the Claims Administrator, or its delegate, in its sole discretion, and such determination will be conclusive and binding.

(b)     **Application for Disability Benefits**

(i)     **General Requirements**

To be entitled to any Disability Benefits for which a Participant is otherwise eligible, a Participant must comply with all procedures and

25

requirements prescribed by the Claims Administrator with respect to the completion and filing of an application for Disability Benefits and submission of evidence that such Participant is entitled to such benefits. Generally, the procedures and requirements to apply for Disability Benefits are described in the SPD. The Claims Administrator may change the procedures and requirements from time to time without notice.

The Claims Administrator will have the right to:

(A)     require proof of Disability, at the Participant's expense during the pendency of a claim, except as provided in Section 3.03(b)(iii);

(B)     require information with respect to the Participant's age, address, marital status, dependents, employment record, and/or medical history;

(C)     require evidence that such Participant has applied for Social Security benefits, or other benefits as outlined in Section 3.04(a);

(D)     personally contact and interview the Participant, the Participant's Physician, employer, or any other persons who can provide relevant information regarding the Participant's Disability. Failure to cooperate with the Claims Administrator in a reasonable investigation or processing of a claim may result in Disability Benefits being denied or terminated.

(E)     require written authorization to:

(1)     obtain information from all the Physicians of a Participant applying for Disability Benefits, with respect to such Participant's physical condition, diagnosis, prognosis, date of expected return to work, and related matters;

(2)     request and receive relevant medical records on file in any hospital, Physician's, or government office; and

(3)     obtain such other records from any company having information reasonably relevant to a determination of Disability; and

(F)     require any other information reasonably relevant to a determination of whether such Participant is eligible to receive Disability Benefits.

(ii)     **Time Limit**

Application for Disability Benefits, in accordance with the procedures and requirements prescribed by the Plan Administrator or Claims Administrator,

26

must be made within 15 days following the commencement of Disability. Failure to make application within this time limit will not result in denial of Disability Benefits, in whole or in part, if it was not reasonably possible to do so, provided such application was made as soon as was reasonably possible. Absent extraordinary circumstances, no claim will be accepted more than six months following the date upon which Disability Benefits may have become payable.

(iii)    **Medical Examinations**

The Claims Administrator may require that a Participant applying for Disability Benefits, or appealing an adverse benefit determination, submit to an examination by one or more Physicians or vocational experts designated by the Claims Administrator, for a medical or vocational opinion as to whether such Participant is Disabled so as to meet the eligibility requirements under the Plan for Disability Benefits and whether the Disability has existed for the prerequisite Elimination Period. Reexaminations of a Participant receiving Disability Benefits may be directed by the Claims Administrator from time to time for the purpose of assisting the Claims Administrator in determining whether continued eligibility for such benefits exists. The fees of such Physicians or vocational experts and the expenses of such examinations will be paid by the Plan.

(c)    **Elimination Period**

The Elimination Period is described in the SPD.

(d)    **Amount of Benefit**

The amount of weekly Disability Benefits is described in the SPD.  For each day of any period of Disability for which benefits are payable, and which is less than a full week, one-seventh of the amount of weekly benefit will be paid.

(e)    **Commencement, Frequency, and Termination of Payments for Benefits**

The commencement, frequency, and termination of payments of Disability Benefits are described in the SPD.

(f)    **Exclusions and Limitations**

There are a number of circumstances that could cause an otherwise eligible Participant not to be entitled to Disability Benefits.  Such exclusions and limitations are described in the SPD.

(g)   **Recurring Disability**

Successive periods of Disability separated by a period of not more than 14 days of continuous active work with the Company at the Participant's normal work schedule will be considered one period of Disability, unless the subsequent Disability is due to an illness or injury found by the Claims Administrator to be entirely unrelated to the cause of the previous Disability and the Disability commences after return to active work with the Company at the Participant's normal work schedule.

3.04   **Coordination with Other Benefits**

(a)   **Reduction of Disability Benefits**

Disability Benefits will be reduced by the amount of any overpayment (expressed in comparable weekly or daily terms) under any other short-term disability plan maintained by the Company.

Disability Benefits will also be reduced by the amount of any income or benefits (expressed in comparable weekly or daily terms) which the Claims Administrator determines are available to the Participant or, because of the Participant's Disability, to his or her spouse or domestic partner, child, parent, or legal representative for the same period of Disability, as is payable hereunder, whether or not such benefits are applied for, from the following sources:

(i)    Any Federal Social Security or Supplemental Security Income for which the Participant and his or her dependents are eligible because of the Participant's Disability or retirement under Social Security (Old Age, Survivors, Disability and Health Insurance ("OASDHI")) of the United States. Dependent benefits are not included if the Participant is divorced and benefits are being paid to the divorced spouse or child(ren) instead of to the Participant;

(ii)   Benefits paid pursuant to any state or federal workers' compensation or disability law or other law of similar purpose; such benefits will include, but will not be limited to, temporary disability and permanent disability payments (whether total or partial), maintenance allowance, vocational rehabilitation disability benefits, attorney's fees and any amounts awarded or allocated for future medical expenses. Any amount awarded or paid in a lump sum, in accordance with a workers' compensation plan, whether voluntarily or by operation of law, will be deducted from the Disability Benefits payable commencing from the date of the award or settlement and continuing for as many future weeks as is necessary to equal the amount of such lump sum;

(iii)  Any earnings from the Company except that Disability Benefits will be paid for any seven-day week or partial week, in an amount not to exceed his or her maximum weekly Disability Benefit amount, which together with the

28

earnings does not exceed his or her weekly pay, immediately prior to the commencement of Disability;

(iv)     Disability benefits under a state disability insurance plan or a Company plan established in lieu thereof;

(v)      Any Company-sponsored or Company-funded pension plan or any disability benefit plan or policy for which the Company or any other employer permits payroll deductions or makes contributions on behalf of covered Employees;

(vi)     Remuneration, income, salary, vacation time, or sick pay received from any employer or from the Participant's self employment; or

(vii)    Any award or settlement that the Company determines is attributable to loss of wages which the Participant receives, directly or indirectly from a third party, if the Participant's Disability resulted from the acts or omissions of such third party. (The Plan's right of recovery of certain payments made, or owed, to a Participant or Dependent by a third party are described in the SPD.)

In the event that a Participant either fails to apply for, elects to defer, or fails to request any of the benefits set forth in subparagraphs (i) through (vii) above, the Claims Administrator will consider, for purposes of determining the reduction in benefits under this Plan, the benefit (or estimate thereof) that would have been paid had the Participant made application for, and received such benefits, on the earliest date he or she was eligible.

In the event that an overpayment occurs because the Participant's Disability Benefits were not sufficiently reduced by any of the above mentioned reductions at the time they were paid, the Claims Administrator will recalculate the claim and inform the Participant of its findings. Any overpayment will become payable by the Participant, immediately upon request, and until repaid, may be offset against future payments, if any.

For the purpose of applying the Social Security offset described in (i) above, such reduction will commence on the day Social Security benefits become payable during a period of Disability; provided, however, that after the initial reduction for such benefits, future benefits payable under this Plan will not be further reduced by the amount of any increase in benefits, as may thereafter become effective, which is due to a cost-of-living adjustment pursuant to Section 230, Title II of the Federal Social Security Act. However, if the initial award is subsequently adjusted for any other reason, other than a statutory cost of living increase, the new award will offset Disability Benefits under this Plan.

When computing and paying a Participant's Disability Benefit, the actual primary and family benefits paid to the Participant under the Social Security Act will be used, provided, however, that in the event the Social Security Administration has not made a determination of the Participant's entitlement to Social Security benefits at

29

the time the reduction is to be applied, the greatest primary and family benefits to which the Participant is entitled under the Social Security Act will be assumed and such reduction will continue to apply in such manner, unless and until the Participant furnishes the Company with either a denial letter showing that the Participant is not entitled to such benefits, or an approval letter showing that the amount of such benefits to which the Participant is entitled is less than that which was assumed. After the Social Security Administration has made a determination as to the Participant's eligibility for benefits, the benefits payable under this Plan will be recomputed. If the recomputation results in an underpayment to the Participant, the Participant will be reimbursed in the amount of such underpayment. If an overpayment to the Participant has occurred, the Company will take all such steps which may be necessary and desirable to recover the amount of such overpayment.

(b)     **Coordination with Sick, Vacation, Holiday Pay**

The rules governing the coordination of Disability Benefits, sick pay, vacation time, and holiday pay are described in the SPD.

3.05   **Payment to a Representative**

In the event that the final payment of Disability Benefits is payable as the result of the death of a Participant, such payment will be made in the following order of preference:

(a)     to the person or persons, if any, designated by such Participant in his or her latest, as of any time of reference, designation of beneficiary under the Company's group life insurance program; or

(b)     if such Participant left no designated beneficiary under such group life insurance program who survived him or her, to the default beneficiary as determined under the terms of the life insurance program.

## ARTICLE IV: OTHER BENEFITS

4.01 **Generally**

The Company may offer a variety of other Health and Welfare Programs. An insured Health and Welfare Program that provides benefits described in this Article remains subject to the terms of the insurance policies and/or contracts, which are incorporated into this document as if set forth fully herein. The benefits provided by the Company, and whether each is self-insured or insured (including the insurer), are listed in the "Plan Information" section of the SPD.

In addition to the benefits described elsewhere in this Plan, the Company may decide to provide any of the following benefits under one or more Health and Welfare Program(s):

(a)     short or long-term disability insurance;

(b)     life insurance;

(c)     accidental death and dismemberment insurance;

(d)     business travel accident insurance;

(e)     long-term care insurance; or

(f)     others.

The benefits that are actually provided by the Company are those that are described in the SPD.

4.02 **Cafeteria Plan**

The Company also maintains a Cafeteria Plan that is intended to qualify under Code Section 125 (and 129 as applicable). The specific benefits provided under the Cafeteria Plan are set forth in a separate plan document. Nothing in this Plan or the SPD will be construed as offering a Health and Welfare Program or other benefit through the Cafeteria Plan that is not:

(a)     otherwise a qualified or permissible benefit under Code section 125; and

(b)     specifically included under the terms of the Cafeteria Plan document.

1017764.1

## ARTICLE V: ADOPTION OF THE PLAN

IN WITNESS WHEREOF, Apple Inc. has caused this instrument to be

executed effective as of _____.


By: _____

Gary Wipfler

Vice President and Corporate Treasurer


For:    Apple Inc.


By: _____

Mark Bentley

Senior Director, Human Resources


For:    Apple Inc.


32

## APPENDIX A: PARTICIPATING EMPLOYERS

The following is the list of designated United States affiliates as referenced in Section 1.01(e)

1. FileMaker Inc.

2. Braeburn Capital, Inc.

## FIRST AMENDMENT

### APPLE INC. HEALTH AND WELFARE BENEFITS PLAN
### As Amended and Restated Effective January 1, 2010

**The Apple Inc. Health and Welfare Benefit Plan is amended as follows, effective January 1, 2011:**

1.      **Section 2.05(f) is amended by deleting paragraph (iii) in its entirety, and by re-designating paragraphs (iv) and (v) as paragraphs (iii) and (iv).**

Dated: _12/21/10_

Gary Wipfler
Vice President and Corporate Treasurer
Apple Inc.

Joel Podolny
Vice President, Human Resources and
Dean of Apple University

1127723.2

## SECOND AMENDMENT

### APPLE INC. HEALTH AND WELFARE BENEFIT PLAN
### As Amended and Restated Effective January 1, 2010

**The Apple Inc. Health and Welfare Benefit Plan is hereby amended by making the following clarifications:**

1. **Section 1.01 is amended by re-designating subsections (a) through (o) as subsections (b) through (p), and inserting the following new subsection (a):**

   (a) **Affiliated Group** means the Company and any group of one or more chains of corporations connected through stock ownership with the Company if:

      (i) Stock possessing at least 80% of the total combined voting power of all classes of stock entitled to vote or at least 80% of the total value of shares of all classes of stock of each of the corporations, except the Company, is owned by one or more of the other corporations; and

      (ii) The Company owns stock possessing at least 80% of the total combined voting power of all classes of stock entitled to vote or at least 80% of the total value of shares of all classes of stock of at least one of the other corporations excluding, in computing such voting power or value, stock owned directly by such other corporations.

   Whether an entity is a member of the "Affiliated Group" shall be determined by applying the principles of Code sections 414(b) and 1563 (as applicable), including the constructive ownership rules of Code section 1563(e). In addition, the "Affiliated Group" includes any other entity which the Company has designated in writing as a member of the Affiliated Group.

2. **Section 1.01 is further amended by re-designating subsections (c) through (p), as re-designated pursuant to item #1, as subsections (d) through (q), and inserting the following new subsection (c):**

   (c) **Board of Directors** means the Board of Directors of the Company, or to the extent it so authorizes, a committee designated by the Board of Directors as having the authority to act on its behalf.

3. **Section 1.01(g), as re-designated pursuant to items #1 and #2, is amended to read as follows:**

   (g) **Company** means, for any and all purposes relating to plan administration and the right to amend and terminate the Plan, including but not limited to the provisions of Sections 1.05 and 1.09, Apple Inc., a California corporation. For all other purposes,

where the context so requires, Company means Participating Company, as defined herein.

4.     **Section 1.01 is further amended by re-designating subsections (n) through (q) as subsections (o) through (r), and inserting the following new subsection (n):**

(n)     **Participating Company** means Apple Inc. and each other member of the Affiliated Group that has been designated as a Participating Company by Apple Inc., and that has accepted the designation by adopting the Plan.  A list of such Participating Companies is set forth in Appendix A hereto.

5.     **Section 1.01(r), as re-designated pursuant to items #1, #2, and #4, is amended to read as follows:**

(q)     **Summary Plan Description or SPD** means, with respect to a particular classification of Employees, that version of the Apple Benefits Book, as amended from time to time, that describes the terms and conditions of participating in the Plan for such classification of Employees.

6.     **Appendix A is amended to read as follows:**

## APPENDIX A: PARTICIPATING COMPANIES

Each of the following entities has been designated by the Company as a Participating Company, and each entity has accepted such designation, all as evidenced by the signatures below:

1.     FileMaker, Inc. (Participating Company)

2.     Braeburn Capital, Inc. (Participating Company)

APPLE INC.

By: _____
Joel Podolny
Vice President of Human Resources and Dean of Apple University

FILEMAKER, INC.

By: _____
John Pinheiro
Vice President of Legal, General Counsel and Secretary

BRAEBURN CAPITAL, INC.

By: _____
Peter Tomei
~~President~~ Director

1149104.5

The foregoing amendment is hereby executed this $2^{st}$ day of December, 2011.

Joel Podolny
Vice President of Human Resources
and Dean of Apple University

3

**THIRD AMENDMENT**

**APPLE INC. HEALTH AND WELFARE BENEFIT PLAN**
**As Amended and Restated Effective January 1, 2010**

**The Apple Inc. Health and Welfare Benefit Plan is hereby amended as follows, effective January 1, 2013:**

1.     **Section 1.01(g) is amended to read as follows:**

   (g)    **Company** means, for any and all purposes relating to plan administration, rebates and the right to amend and terminate the Plan, including but not limited to the provisions of Sections 1.03(d), 1.05 and 1.09, Apple Inc., a California corporation. For all other purposes, where the context so requires, Company means Participating Company, as defined herein.

2.     **Section 1.03 is amended by adding the following new subsection (d):**

   (d)    **Rebates**

   Any and all rebates, dividends, refunds or similar forms of distribution, of any type whatsoever, paid, provided or in any way attributable to the maintenance of a benefit program under this Plan, including but not limited to medical loss ratio rebates received pursuant to section 2718 of the Public Health Service Act, shall be the sole property of the Company, and no portion thereof shall constitute assets of the Plan, unless and to the extent required by applicable law.

The foregoing amendment is hereby executed this 20th day of December, 2012.

Joel Podolny
Vice President, Human Resources
and Dean of Apple University

FOURTH AMENDMENT

APPLE INC. HEALTH AND WELFARE BENEFIT PLAN
As Amended and Restated Effective January 1, 2010

The Apple Inc. Health and Welfare Benefit Plan is hereby amended and clarified as follows, effective January 1, 2015:

1.  Section 1.07 is amended by deleting the first two sentences and replacing them with the following:

    Each Participant will be responsible for providing the Plan Administrator and/or the Company with the Participant's and each Dependent's or Beneficiary's current address, date of birth, and Social Security Number.

The foregoing amendment is hereby executed as of December 10, 2014.

By: Denise Young-Smith
Vice President of Human Resources

**FIFTH AMENDMENT**
**APPLE INC. HEALTH AND WELFARE BENEFIT PLAN**

(As Amended and Restated Effective January 1, 2010)

The Apple Inc. Health and Welfare Benefit Plan is hereby amended as follows, effective January 1, 2016, unless otherwise stated herein:

1. **Section 3.03(g) is amended, effective July 1, 2016, in its entirety to read as follows:**

   **Recurring Disability**

   Successive periods of Disability separated by a period of not more than sixty (60) days of continuous active work with the Company at the Participant's normal work schedule will be considered one period of Disability, unless the subsequent Disability is due to an illness or injury found by the Claims Administrator to be entirely unrelated to the cause of the previous Disability and the Disability commences after return to active work with the Company at the Participant's normal work schedule.

2. **Section 3.04(a)(ii) is amended in its entirety to read as follows:**

   (ii)     Benefits paid pursuant to any state or federal law on workers' compensation, veterans benefits, disability law or any other law of similar purpose; such benefits will include, but will not be limited to, temporary disability and permanent disability payments (whether total or partial), maintenance allowance, vocational rehabilitation disability benefits, attorney's fees and any amounts awarded or allocated for future medical expenses. Any amount awarded or paid in a lump sum, whether voluntarily or by operation of law, will be deducted from the Disability Benefits payable commencing from the date of the award or settlement and continuing for as many future weeks as is necessary to equal the amount of such lump sum;

The foregoing amendment is hereby executed this _14_ day of December, 2016.

By: Denise Young-Smith
Vice President of Human Resources

**SIXTH AMENDMENT TO**
**APPLE INC. HEALTH AND WELFARE BENEFIT PLAN**
(As Amended and Restated January 1, 2010)

SIXTH AMENDMENT TO THE APPLE INC. HEALTH AND WELFARE BENEFIT PLAN (the "Plan") by Apple Inc. (the "Company"), a California corporation.

**W I T N E S S E T H:**

**WHEREAS**, the Company established the Plan, and amended the Plan from time to time; and

**WHEREAS**, on May 12, 2017, the Compensation Committee of the Board of Directors of the Company took action to update the authority of the Company's management Benefits Committee and to establish a Benefits Administrative Committee to be the designated plan administrator for the Company's employee benefit plans, including the Plan;

**WHEREAS**, the Company wishes to amend the Plan to reflect these actions of the Compensation Committee and consistent modifications related to the Plan's governance provisions;

**WHEREAS**, Section 1.09 of the Plan allows the Company to amend the Plan at any time;

**NOW, THEREFORE**, the Plan is amended, effective as of the dates set forth below, as follows:

1.      Effective May 12, 2017, the following new Section 1.01(c) is added to the Plan and all subsequent definitions in Section 1.01 are renumbered accordingly:

> **(c)**      **Benefits Committee** means the Company's management Benefits Committee,  to which the Compensation Committee has delegated its settlor authority under the Plan.

2.      Effective May 12, 2017, Section 1.01(d) (as renumbered) is amended to read as follows:

(d)      **Board of Directors** means the Board of Directors of the Company.

3.      Effective May 12, 2017, the following new section 1.01(i) is added to the Plan and all subsequent definitions in Section 1.01 are renumbered accordingly:

(i)      **Compensation Committee** means the Compensation Committee of the Board of Directors.

4.      Effective September 1, 2017 Section 1.01(p) (as renumbered) is amended to read as follows:

(p)      **Participating Company** means Apple Inc. and each other member of the Affiliated Group that has been designated as a Participating Company by Apple Inc., and that has accepted the designation by adopting the Plan.

5.      Effective May 12, 2017, Section 1.01(r) (as renumbered) is amended to read as follows:

(r)      **Plan Administrator** means the Company's Benefits Administrative Committee, established by the Compensation Committee.

6.      Effective May 12, 2017, Section 1.05(a) is amended to reach as follows:

(a)      **Plan Settlor Functions**

The Compensation Committee has full discretionary authority with respect to decisions regarding the legal and tax status of the Plan, the Plan's funding, and amending or terminating the Plan.  In making such decisions, the Compensation Committee will be acting in a settlor capacity and not as an ERISA fiduciary. Such decisions are business decisions that may be made solely in the Company's interest.  The Compensation Committee may by written resolution allocate its duties and responsibilities to one or more of its members or delegate its duties and responsibilities to any other persons; provided, however, that any such allocation or delegation shall be terminable on such notice as the Compensation Committee deems reasonable and prudent under the circumstances.  The Compensation Committee has delegated its settlor authority under the Plan to the Benefits Committee.

7.    Effective May 12, 2017, Section 1.09 is amended to read as follows:

### Amendment and Termination

Although the Company has established the Plan with the intention of maintaining the Plan indefinitely, the Company reserves the absolute right to amend or terminate the Plan at any time, in whole or in part, for any reason or for no reason, on behalf of all Participating Companies, by action of the Compensation Committee or its delegee. The Company (by action of the Compensation Committee or its delegee) may amend or terminate any group insurance or HMO contract through which benefits are provided under the Plan. Such amendment or termination will not require the formal amendment of this Plan document. Any amendment to or termination of the Plan, an insurance contract, an HMO contract, or other plan may apply to any rights, benefits, and claims of any sort that have not accrued or been incurred as of the date of the amendment or termination. Therefore, an amendment to the Plan or resolution terminating the Plan may provide that benefits to any and all Participants and Dependents will not continue beyond the date specified in such amendment or resolution, and if so provided, Participants and Dependents will have no right to further benefits under the Plan. The Company (by action of the Compensation Committee or its delegee) expressly reserves the right to amend or terminate the Plan in order to modify or eliminate any or all benefits provided to Employees and their Dependents. The Company's decision to amend or terminate the Plan, in whole or in part, or any or several of the group insurance contracts or HMO contracts under the Plan, is not a fiduciary decision that must be made solely in the interest of eligible Employees and their Dependents, but is a business decision that can be made solely in the Company's interest.

8.    Effective September 1, 2017, Appendix A is deleted in its entirety.

IN WITNESS WHEREOF, the Company has caused this SIXTH AMENDMENT to the APPLE INC. HEALTH AND WELFARE BENEFIT PLAN to be executed as of December 18 , 2017.

APPLE INC.

By: _____

Deirdre O'Brien
Vice President of People

# PLAINTIFF SANTOS / ESTATES' COMPLAINT FOR DAMAGES UNDER ERISA

# EXHIBIT 2

# Accidental Death and Dismemberment Certificate of Insurance

**Minnesota Life Insurance Company** - A Securian Company
400 Robert Street North • St. Paul, Minnesota 55101-2098

Effective January 1, 2016 as revised on October 17, 2017

## Read Your Certificate Carefully

You are insured under the group policy shown on the certificate specifications page. This certificate summarizes the principal provisions of the group policy that affect you. The provisions summarized in this certificate are subject in every respect to the group policy. You may examine the group policy at the principal office of the policyholder during regular working hours.

## Legal Actions

No legal action may be brought to recover on this certificate within the first sixty days after written proof of loss has been given as required by this certificate. No such action may be brought after three years from the time written proof of loss is required to be given.

Secretary

President

## TABLE OF CONTENTS

| | |
|---|---|
| Definitions | 2 |
| General Information | 2 |
| Premiums | 3 |
| Accidental Death and Dismemberment Benefit | 3 |
| Exclusions | 5 |
| Additional Benefits | 6 |
| Portability Benefit | 8 |
| Termination | 9 |
| Family Coverage | 9 |
| Family Coverage Additional Benefits | 10 |
| Dependents Benefit Termination | 11 |
| Additional Information | 12 |

**ACCIDENTAL DEATH AND DISMEMBERMENT CERTIFICATE OF INSURANCE**

# AD&D INSURANCE CERTIFICATE SPECIFICATIONS PAGE

## GENERAL INFORMATION

| | |
|---|---|
| **POLICYHOLDER:** | Apple Inc. **POLICY NUMBER**: 33957-G |
| **ASSOCIATED COMPANIES:** | All subsidiaries and affiliates reported to Minnesota Life by the policyholder for inclusion in the policy. |
| **CERTIFICATE EFFECTIVE DATE:** | This specifications page represents the plan in effect on January 1, 2018. |

This certificate and or certificate specifications page replaces any and all certificates and or certificate specifications pages previously issued to you under the group policy.  Please replace any certificate and or certificate specifications page previously issued to you with this new certificate and or specifications page.

**GROUP:**

The group is composed of all active employees of the policyholder and its associated companies as follows:

Class 1: Corporate Employees paid from Apple or designated affiliates' W-2 payroll who do not work in a retail store and whose standard weekly hours as shown in Merlin are at least 20 hours per week and Full-time Retail Employees paid from Apple's W-2 payroll who work in a retail store and whose standard weekly hours as shown in Merlin are at least 30 hours per week.

Class 2: Part-time Corporate Employees paid from Apple or designated affiliates' W-2 payroll who do not work in a retail store and whose standard weekly hours as shown in Merlin are between 15 and 19 hours per week and Part-time Retail Employees paid from Apple's W-2 payroll, who work in a retail store and whose standard hours as shown in Merlin are between 15 and 29 hours per week.

**ENROLLMENT PERIOD:**

30 days from the date the employee receives his or her eligibility enrollment email notification.

An insured must be living at the time enrollment is completed.  Posthumous elections are not allowed for accidental death and dismemberment insurance.

**WAITING PERIOD:**

Class 1:  none.

Class 2*: the period beginning with the date of hire and ending with 90 days of continuous employment.

* There is no waiting period for part-time retail employees who work in retail stores in Hawaii and whose standard hours as shown in Merlin are between 20 and 29 hours per week.

## PLAN OF INSURANCE

### EMPLOYEE BENEFIT SCHEDULE

**EMPLOYEE ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) INSURANCE:**

| Eligible Class | Amount of Accidental Death and Dismemberment (AD&D) Insurance |
|---|---|

Class 1 and 2 — An employee may elect from the following term life insurance options:

Option 1: Two times annual earnings    Option 6: Seven times annual earnings
Option 2: Three times annual earnings    Option 7: Eight times annual earnings
Option 3: Four times annual earnings    Option 8: Nine times annual earnings
Option 4: Five times annual earnings    Option 9: Ten times annual earnings
Option 5: Six times annual earnings

The annual earnings will be multiplied and then rounded up to the next higher $1,000 if not already a multiple thereof, subject to a maximum of ten times annual earnings or $4,000,000.

If an election is not made by an employee, a default benefit amount will be assigned at two times annual earnings.

### GENERAL PROVISIONS FOR EMPLOYEE INSURANCE

**RETIREMENT REDUCTIONS:** AD&D insurance terminates upon retirement, except as provided for under the portability provision.

**CONTRIBUTORY/ NONCONTRIBUTORY:** The policyholder provides an amount of up to 2 times an employee's annual base earnings; this amount is considered noncontributory insurance. Any amount in excess of the amount provided by the policyholder will be deemed contributory insurance.

**INCREASES AND DECREASES:** Mid-year increases in earnings will not result in premium payment changes. Premiums will remain calculated based on the employee's frozen salary as of October 1 (effective the following January 1). A benefit will be paid based on the employee's current salary at the time of death.

Mid-year decreases in earnings will result in premium payment decreases. Premiums will be calculated based on the employee's current salary as of the date of the decrease in salary. A benefit will be paid based on the employee's current salary at the time of death.

For increases and decreases due to a change in eligible class, the change will become effective the date of the change. Requests for increases and decreases may be made only at annual enrollment or within 30 days of a qualified status change (as defined by the employer).

All increases are subject to the actively at work requirement.

**REINSTATEMENT:** Life insurance will be reinstated for employees who terminate employment and are rehired within 30 days of the termination. An employee who loses eligibility and later again becomes eligible beyond 30 days, shall be treated the same as an employee who is first eligible under the plan.

**MILITARY LEAVE** Employees who are on a military leave of absence will have AD&D insurance continued for up to 12 months.

**ANNUAL OPEN ENROLLMENTS:**    An employee may add, drop, increase or decrease contributory AD&D insurance at annual enrollment.  Evidence of insurability is not required for an increase in AD&D insurance.  Coverage will be effective on January 1 following the annual enrollment, subject to the actively at work requirement.

**QUALIFIED STATUS CHANGES:**    An employee who experiences a Qualified Status Change may make the following election changes to contributory coverages based on the status change:

| Life Event | Employee AD&D | Spouse/DP AD&D | Child AD&D |
|---|---|---|---|
| Marriage or creation of Domestic Partnership | Increase or Decrease | Add or Increase | Add, Drop, Increase or Decrease |
| Spouse/Domestic Partner gain coverage (gains employment or increases hours, or ends unpaid leave) | Decrease | Drop or Decrease | Drop or Decrease |
| Spouse/Domestic Partner lose coverage (ends employment, decreases hours, or begins unpaid leave) | Increase | Add or Increase | Add or Increase |
| Spouse/Domestic Partner's open enrollment | Add, Drop Increase or Decrease | Add, Drop, Increase or Decrease | Add, Drop, Increase or Decrease |
| Divorce, separation or dissolution of domestic partnership | Increase or Decrease | Drop | Add, Drop, or Increase |
| Adding a child (birth, adoption or gaining legal custody) | Increase | Add or Increase | Add or Increase |
| Loss of child custody/legal guardianship | Decrease | Drop or Decrease | Drop or Decrease |
| Death of a spouse/domestic partner | Increase or Decrease | Drop | Add, Increase or Drop |
| Death of a child | Decrease | Drop or Decrease | Drop or Decrease |
| Child gains employer coverage | Decrease | Drop or Decrease | Drop or decrease |
| Child losses employer coverage | Increase | Add or Increase | Add or Increase |
| Child loses state health insurance/Medicaid | Not applicable | Not applicable | Not applicable |
| Return from personal leave of absence after 30 days | Add | Add | Add |

The amount of employee and spouse/domestic partner insurance shall not exceed the plan maximum. Coverage will be effective on the date of the election.

All increases in insurance, including adding dependent AD&D coverage, are subject to the actively at work provision of the group policy, except for in the case of a newborn child or newly adopted child.  AD&D insurance for a newborn or newly adopted child may go into effect prior to the employee returning to active work status.

## DEPENDENTS BENEFIT SCHEDULE

**DEPENDENTS AD&D INSURANCE:** applies to Classes 1 and 2

| "Insured Dependents" | Amount of AD&D Insurance |
|---|---|
| Spouse/Domestic Partner and Eligible Children | For spouse/domestic partner: 50% of employee's amount of insurance* |
| | For each child: 25% of employee's amount of insurance* |
| Spouse/Domestic Partner Only | For spouse/domestic partner: 60% of employee's amount of insurance* |
| Eligible Children Only | For each child:25% of employee's amount of insurance* |

\* The maximum benefit for spouse/domestic partner coverage is $2,400,000; the maximum benefit for child coverage is $150,000.

The maximum benefit for Child Double Dismemberment is $150,000 except for in the loss of a Thumb and Finger, in which case the maximum benefit is $125,000.

## GENERAL PROVISIONS FOR DEPENDENTS INSURANCE

**CONTRIBUTORY/ NONCONTRIBUTORY:**     All dependents insurance is contributory.

**INCREASES AND DECREASES:**     Dependents insurance shall automatically increase or decrease as the employee's amount of insurance increases or decreases.

This certificate is not in lieu of and does not affect any requirement for coverage by workmen's compensation insurance.

All new employees or members of the policyholder in the groups or classes eligible for such insurance will be added to such groups or classes for which they are respectively eligible.

# Definitions

**age**

Attained age as of most recent birthday.

**annual earnings**

Annual earnings refers to base pay and shift differential for non commissioned employees and base pay and shift differential plus On-Target Variable for commissioned employees. It does not include other types of compensation, such as overtime or bonuses.

**associated company**

Any company which is a subsidiary or affiliate of the policyholder which is designated by the policyholder and agreed to by us to participate under the group policy.

**certificate effective date**

The date your coverage under this certificate becomes effective.

**contributory insurance**

Insurance for which the employee is required to make premium contributions.

**employee**

An individual who is employed by the policyholder or by an associated company. A sole proprietor will be considered the employee of the proprietorship. A partner in a partnership will be considered an employee so long as the partner's principal work is the conduct of the partnership's business. The term employee does not include temporary employees, seasonal employees nor corporate directors who are not otherwise employees.

**employer**

The policyholder or any designated associated company.

**insured**

A person who is eligible for and becomes insured under the terms of this certificate.

**licensed physician**

An individual who is licensed to practice medicine or treat illness in the state in which treatment is received. The physician cannot be you or your spouse, children, parents, grandparents, grandchildren, brothers or sisters, or the spouse of any such individuals.

**non-work day**

A day on which the employee is not regularly scheduled to work, including scheduled time off for vacations, personal holidays, weekends and holidays, and approved leaves of absence for non-medical reasons.

Non-work day does not include time off for medical leave of absence, temporary layoff, employer suspension of operations in total or in part, strike, and any time off due to sickness or injury including sick days, short-term disability, or long-term disability.

**noncontributory insurance**

Insurance for which the employee is not required to make premium contributions.

**policyholder**

The owner of the group policy as shown on the specifications page attached to this certificate.

**specifications page**

The outline which summarizes your coverage under the policyholder's plan of insurance.

**waiting period**

The period, if any, of continuous employment with the employer that the employee must satisfy prior to becoming eligible for coverage under this certificate. Any such waiting period is shown on the specifications page attached to this certificate.

**we, our, us**

Minnesota Life Insurance Company.

**you, your, certificate holder**

An insured employee.

# General Information

## What is your agreement with us?

This certificate summarizes the principal provisions of your accidental death and dismemberment insurance provided by the group policy. The provisions summarized in this certificate are subject in every respect to the group policy. Your signed application is deemed a part of this certificate.

Any statements made in your application will, in the absence of fraud, be considered representations and not warranties. Also, any statement made will not be used to void your insurance nor defend against a claim unless the statement is contained in your signed application, and a copy containing the statement is furnished to you, the beneficiary, or your or the beneficiary's personal representative.

This certificate is issued in consideration of your application and the payment of the required premium.

In making any benefits determination under this certificate and the group policy, we shall have the discretionary authority both to determine an individual's eligibility for benefits and to construe the terms of this certificate and the group policy.

**Can this certificate be amended?**

Yes. Your consent is not required to amend this certificate. Any amendment will be without prejudice to any claim for benefits incurred prior to the effective date of the amendment.

**Who is eligible for insurance?**

An employee is eligible if he or she:

(1) is a member of the eligible group and of an eligible class identified in the group policy; and
(2) works for the employer for at least the number of hours per week shown as the minimum hours per week requirement on the specifications page attached to this certificate; and
(3) has satisfied the waiting period, if any; and
(4) meets the actively at work requirement described in the "What is the actively at work requirement?" provision of this section.

**Are retired employees eligible for insurance?**

If the policyholder's plan of insurance, as shown on the specifications page attached to the group policy, does not specifically provide insurance for retired employees, a retired employee shall not be eligible to become insured, nor to have his or her insurance continued. If the policyholder's plan of insurance specifically provides insurance for retired employees, the minimum hours per week and actively at work requirements will not apply to such persons.

**What is the actively at work requirement?**

To be eligible to become insured or to receive an increase in the amount of insurance, you must be actively at work, fully performing your customary duties for your regularly scheduled number of hours at the employer's normal place of business, or at other places the employer's business requires you to travel.

Employees not working due to illness or injury do not meet the actively at work requirement nor do employees receiving sick pay, short-term disability benefits or long-term disability benefits.

If the employee is not actively at work on the date coverage would otherwise begin, or on the date an increase in his or her amount of insurance would otherwise be effective, he or she will not be eligible for the coverage or increase until he or she returns to active work. However, if the absence is on a non-work day, coverage will not be delayed provided the employee was actively at work on the work day immediately preceding the non-work day.

Except as otherwise provided for in this certificate, an employee is eligible to continue to be insured only while he or she remains actively at work.

**When does your insurance become effective?**

Your insurance becomes effective on the date that all of the following conditions have been met:

(1) you meet all eligibility requirements; and
(2) if required, you apply for the insurance on forms which are approved by us; and
(3) we receive the required premium.

**Can an insured's coverage be continued during the employee's sickness, injury, leave of absence or temporary layoff?**

Yes. The employer may continue your noncontributory insurance or allow you to continue your contributory insurance when you are absent from work due to sickness, injury, leave of absence, or temporary layoff.

Continuation of your insurance is subject to certain time limits and conditions as stated in the group policy. If you stop active work for any reason, you should discuss with the employer what arrangements may be made to continue your insurance.

# Premiums

**When and how often are premiums due?**

Unless the policyholder and we have agreed to some other premium payment procedure, any premium contributions you are required to make for contributory insurance are to be paid by you to the policyholder on a monthly basis. We apply premiums consecutively to keep the insurance in force.

**How is the premium determined?**

The premium will be the premium rate multiplied by the number of $1,000 units of insurance in force on the date premiums are due. The premium may also be computed by any other method on which the policyholder and we agree.

We may change the premium rate:

(1) on any premium due date following the expiration of any rate guarantee; or
(2) irrespective of any rate guarantee, anytime, if the policy terms are amended or the total amount of insurance in force changes by 25% or more.

# Accidental Death and Dismemberment Benefit

**What does accidental death or dismemberment by accidental injury mean?**

Accidental death or dismemberment by accidental injury means that an insured's death or dismemberment results, directly and independently of all other causes, from an accidental injury which is unintended, unexpected, and unforeseen.

The injury must occur while the insured's coverage is in force. The insured's death or dismemberment must occur within 365 days after the date of the injury.

**What is the amount of the accidental death and dismemberment benefit?**

The amount of the benefit shall be a percentage of the amount of insurance shown on the specifications page attached to this certificate. The percentage is determined by the type of loss as shown in the following table:

| TYPE OF LOSS | PERCENT OF AMOUNT OF INSURANCE |
|---|---|
| Life | 100% |
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| Speech and Hearing | 100% |
| One Hand and One Foot | 100% |
| One Foot and Sight of One Eye | 100% |
| One Hand and Sight of One Eye | 100% |
| Loss of use of Four Limbs | 100% |
| Loss of use of Three Limbs | 100% |
| Loss of use of Two Limbs | 100% |
| Sight of One Eye | 50% |
| Speech or Hearing | 50% |
| One Hand or One Foot | 50% |
| Loss of One Limb | 50% |
| Thumb and Index Finger of One Hand | 25% |

Loss of hands or feet means complete severance at or above the wrist or ankle joints. Loss of sight, speech, or hearing means the total and permanent loss of sight, speech, or hearing which cannot be corrected by medical or surgical treatment or by artificial means. Loss of thumb and index finger means complete severance of both the thumb and the index finger at or above the metacarpophalangeal joints.

Loss of use means total paralysis of limb that is permanent, complete and irreversible. Limb means an arm or a leg.

A benefit is not payable for both loss of thumb and index finger of one hand and the loss of one hand for injury to the same hand as a result of any one accident. Under no circumstance will more than one payment be made for the loss or paralysis of the same limb, eye, finger, thumb, hand, foot, sight, speech, or hearing if one payment has already been made for that loss.

Benefits may be paid for more than one accidental loss but the total amount of AD&D insurance payable under this certificate for any one accident, not including any amount paid according to the terms of the Additional Benefits section of this certificate, will never exceed the full amount of the insured's AD&D insurance.

**Can you request a change in the amount of your contributory insurance?**

You can request a change in your contributory insurance amount only during an annual open enrollment period, as determined by the employer, or within 30 days of a Qualified Status Change. Qualified Status Change shall be as determined by the employer.

**When will changes in coverage amounts be effective?**

Increases and decreases in amounts of contributory insurance will be effective as shown on the specifications page attached to this certificate. All increases in the amount of insurance are subject to the actively at work requirement.

**What are the notice of claim and proof of loss requirements?**

Written notice and proof of loss due to an injury on which a claim may be based must be given to us within 90 days after the accident. However, failure to give such notice and proof within the time provided will not invalidate the claim if it is shown that notice and proof were given as soon as reasonably possible.

When we receive written notice of claim, we will send the claimant our claim forms if he or she needs them. If the claimant does not receive the forms within 15 days, we will accept his or her written description as proof of loss.

**When will the accidental death or dismemberment benefit be payable?**

We will pay the accidental death or dismemberment benefit upon receipt at our home office of written proof satisfactory to us that you died or suffered a covered dismemberment as a result of a covered accidental injury. All payments by us are payable from our home office.

The benefit will be paid in a single sum. We will pay interest on the benefit from the date of your death or dismemberment until the date of payment. Interest will be at an annual rate determined by us, but never less than 0.1% per year or the minimum required by state law, whichever is greater.

**To whom will we pay the accidental death or dismemberment benefit?**

In the case of your accidental death, we will pay the accidental death benefit to the beneficiary or beneficiaries. All other benefits will be payable to you, if living, otherwise to your estate.

A beneficiary is named by you to receive the accidental death benefit to be paid at your accidental death. You may name one or more beneficiaries. You cannot name the policyholder or an associated company as a beneficiary.

You may also choose to name a beneficiary that you cannot change without the beneficiary's consent. This is called an irrevocable beneficiary.

If there is more than one beneficiary, each will receive an equal share, unless you have requested another method in writing. To receive the accidental death benefit, a beneficiary must be living at the time of your accidental death. In the event a beneficiary is not living at the time of

your accidental death, that beneficiary's portion of the accidental death benefit shall be equally distributed to the remaining surviving beneficiaries.  In the event of the simultaneous deaths of you and a beneficiary, the accidental death benefit will be paid as if you survived the beneficiary.

If there is no eligible beneficiary, or if you do not name one, we will pay the accidental death benefit to the beneficiary on file for your term life insurance.  If there is no eligible beneficiary on file for your term life insurance, we will pay the benefit as follows:

(1) your lawful spouse, if living, otherwise;
(2) your natural or legally adopted child (children) in equal shares, if living, otherwise;
(3) your parents in equal shares, if living, otherwise;
(4) your siblings in equal shares, if living, otherwise;
(5) the personal representative of your estate.

**Can you add or change beneficiaries?**

Yes.  You can add or change beneficiaries if all of the following are true:

(1) your coverage is in force; and
(2) we have written consent of all irrevocable beneficiaries; and
(3) you have not assigned the ownership of your insurance.

A request to add or change a beneficiary must be made in writing.  All requests are subject to our approval.  A change will take effect as of the date it is signed, but will not affect any payment we make or action we take before receiving your request.

# Exclusions

**What are the exclusions under this certificate?**

In no event will we pay the accidental death or dismemberment benefit where the insured's death or dismemberment results from or is caused directly or indirectly by any of the following:

(1) suicide or any attempt at suicide or intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury;
(2) war or any act of war, whether declared or undeclared;
(3) involvement in any type of active military service;
(4) illness or disease, regardless of how contracted, medical or surgical treatment of illness or disease; or complications following the surgical treatment of illness or disease; except for accidental ingestion of contaminated foods;
(5) participation in the commission or attempted commission of any felony;
(6) being intoxicated while operating a motor vehicle.
　(A) an insured will be conclusively presumed to be intoxicated if the level of alcohol in his or her blood exceeds the amount at which a

person is presumed, under the law of the locale in which the accident occurred, to be intoxicated, if operating a motor vehicle.
　(B) an autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of the insured's intoxication.
(7) being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage.

Air travel coverage is limited to a loss sustained during a trip, while the insured is a passenger, riding in or on, boarding or getting off:

(1) any civilian aircraft with a current and valid normal, transport, or commuter type standard airworthiness certificate as defined by the Federal Aviation Administration or its successor or an equivalent certificate from a foreign government.  This aircraft must be operated by a pilot with a current and valid:
　(a) medical certificate; and
　(b) pilot certificate with a proper rating to pilot such aircraft.
(2) any aircraft which is not subject to a certificate of airworthiness; whose design and customary and regular purpose is for transporting passengers; and which is operated by the Armed Forces of the United States of America or the Armed Forces of any foreign government.

Air travel coverage is not provided:

(1) if the insured is the pilot, operator, member of the crew or cabin attendant of any aircraft.
(2) Unless we have previously consented in writing to the use, coverage is not provided for any loss, caused by, contributed to, resulting from riding in or on, boarding, or getting off:
　(a) any aircraft other than those expressly stated in this coverage;
　(b) any aircraft owned or controlled by, or under lease to the policyholder except the following aircraft, including Substitute Aircraft:

　　*Aircraft on file with the policyholder provided such aircraft:*

　　(i) has a current and valid normal, transport, or commuter type standard airworthiness certificate as defined by the Federal Aviation Administration or its successor;
　　(ii) is being operated with the policyholder's consent;
　　(iii) is not carrying persons for hire; and
　　(iv) is being operated by a pilot with a current and valid medical certificate,

and pilot certificate with a proper rating to pilot such aircraft.

(c) any aircraft owned or controlled by , or under lease to an insured or member of an insured's family or household;

(d) any aircraft operated by the Policyholder except those indicated in (2)(b) above, including Substitute Aircraft or one of the policyholder's employees including members of an employee's family or household;

(e) any aircraft engaged in a Specialized Aviation Activity.

Substitute Aircraft means an aircraft, which is not owned by the policyholder, and:

(1) has a current and valid normal, commuter, or transport type standard airworthiness certificate as defined by the Federal Aviation Administration or its successor or an equivalent certification from a foreign government; and

(2) is the same class of aircraft as the specified aircraft; and

(3) is being used by the Policyholder because the specified aircraft is withdrawn form use due to breakdown, repair, servicing, loss or destruction.

Specialized Aviation Activity means an aircraft while it is being used for one or more of the following activities:

(1) test or experimental purpose; and

(2) flight which requires a special permit or waiver from the authority having jurisdiction over civil aviation, even though granted.

# Additional Benefits

Unless stated otherwise, additional benefits are payable to the same person or persons who receive the accidental death and dismemberment benefits. Additional benefits are paid in addition to any accidental death and dismemberment benefits described in the Accidental Death and Dismemberment section, unless otherwise stated. All provisions of the certificate, including but not limited to the Exclusions section, shall apply to these additional benefits.

**Adaptive Home and Vehicle Benefit**

**What is the adaptive home and vehicle benefit?**

If an insured suffers a loss other than loss of life and a benefit is payable under the AD&D benefit, we will pay for an insured's principal residence to be made accessible and/or an insured's private automobile to be made drivable or rideable.  These one-time alteration expenses must be incurred within two years from the date of the accident.  An insured's benefit will be the lesser of:

(1) 10% of his or her amount of AD&D insurance; or

(2) $25,000; or

(3) the actual alteration expense.

The Adaptive Home and Vehicle Benefit will be payable only if:

(1) such home alterations are made by a person or persons with experience in such alterations and recommended by a recognized organization associated with the injury;

(2) such vehicle modifications are carried out by a person or persons with experience in such matters and approved by the Motor Vehicle Department.

**Coma Benefit**

**What is the coma benefit?**

If an insured lapses into a coma as a result of and within 365 days of a covered accidental injury, and such coma has lasted for a minimum of 31 days, we will pay a benefit equal to the lesser of:

(1) 1% of the insured's amount of insurance; or

(2) 1% of the difference between the insured's amount of insurance and the amount of any benefits paid under the loss schedule for the same accident.

This benefit will be paid monthly until the earliest of the following:

(1) the date the insured recovers such that he or she is no longer in a coma as defined herein; or

(2) the date of the insured's death.  If an accidental death payment is due under this policy, the amount of such payment will be reduced by the amount of insurance paid under this coma provision; or

(3) 100 months following the date monthly benefits commenced.

Coma means a state of profound unconsciousness with no evidence of appropriate responses to stimulation. The insured must be confined in a medical facility and diagnosed as comatose by a licensed physician.

**Disappearance Benefit**

**What is the disappearance benefit?**

If an insured's body has not been found after 365 days from the date the conveyance in which he or she was traveling disappeared, exploded, sank, became stranded, made a forced landing or was wrecked, it shall be presumed, subject to all other terms of the policy, that the insured has died as a result of an accidental injury which was unintended, unexpected and unforeseen.  Such death shall be considered a covered loss under this certificate.

**Exposure Benefit**

**What is the exposure benefit?**

If an insured is unavoidably exposed to the elements by reason of a covered accident and suffers a loss that is

included in the list of covered losses as a result of such exposure, such loss will be covered under the terms of this certificate.

**Safety Device Benefit**

**What is the safety device benefit?**

If an insured dies as a result of a covered accident, we will pay an additional accidental death and dismemberment benefit equal to the lesser of $50,000 or 25% of the insured's amount of insurance provided the insured was:

(1) operating or riding as a passenger in or on any private passenger automobile, motorcycle, scooter, moped, bicycle, boat or seagoing vessel, sailboard, personal watercraft, all-terrain vehicle, all-terrain cycle, snowmobile or while participating in downhill skiing, snowboarding, horseback riding, water skiing or other towed activities; and

(2) wearing or protected by, as per manufacturer's instructions, any of the following:

(a) an original, equipped, factory installed or manufacturer authorized and unaltered seat belt, or lap and shoulder restraint at the time of the injury; or

(b) a manufacturer equipped airbag, provided the insured's seat belt or lap and shoulder restraint was fastened at the time of the accident; or

(c) an approved personal floatation device while the insured is swimming, engaging in water sports or legally operating or riding as a passenger in a boat, seagoing vessel, sailboard or personal watercraft; or

(d) an approved motorcycle helmet while the insured is operating or riding as a passenger on a motorcycle, scooter, moped, all terrain vehicle (ATV), or all-terrain cycle (ATC) that is being operated legally per all local and state laws, rules and regulations; or

(e) an approved snowmobile helmet while the insured is operating or riding as a passenger on a snowmobile that is being operated legally; or

(f) an approved bicycle helmet, while the insured is legally operating a bicycle; or

(g) an approved ski helmet while the insured is engaged in downhill skiing or snowboarding, after purchasing a valid life ticket and skiing/snowboarding during normal operating hours and on the marked premises of the facility selling the lift ticket; or

(h) an approved equestrian helmet while the insured is engaged in horseback riding; or

(i) an approved protective helmet while the insured is actively at work; or

(j) approved body armor while the insured is actively at work.

Verification of the insured's actual use of the safety device is required as follows:

(1) by supplying the official law enforcement report of the accident, through certification by the investigating officers; or

(2) by other reasonable proof, acceptable to us.

A safety device benefit will not be paid if the insured was the driver or operator of any private passenger automobile, motorcycle, scooter, moped, bicycle, boat or seagoing vessel, sailboard, personal watercraft, all-terrain vehicle, all-terrain cycle, snowmobile or while participating in downhill skiing, snowboarding, horseback riding, water skiing or other towed activities, if at the time the insured was:

(1) under the influence of alcohol:

(A) A driver/operator will be conclusively presumed to e under the influence of alcohol if the level of alcohol in his or her blood exceeds the amount at which a person is presumed, under the law of the locale in which the accident occurred, to be under the influence of alcohol if operating a motor vehicle.

(B) An autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of the driver's intoxication; or

(2) under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage; or

(3) engaged in contests or competitions.

Approved safety device definitions are as follows:

(1) Approved personal flotation device (PFD) means a United States Coast Guard approved Type I, II, III or V PFD of appropriate size for the intended user. For water skiing, other towed activities or operation of a personal watercraft a PFD labeled for that activity must be used.

(2) Approved motorcycle helmet means a helmet meeting United States Department of Transportation Federal Motor Vehicle Safety Standard (FMVSS) 218 or subsequent standard(s).

(3) Approved snowmobile helmet means a helmet meeting the United States Department of Transportation FMVSS 218 or subsequent standard(s).

(4) Approved bicycle helmet means a helmet meeting American Society of Testing and Materials (ASTM) standard F1447 or subsequent standard(s).

(5) Approved ski helmet means a helmet conforming to Snell Memorial Foundation standards S-98 or RS-98 or ASTM standard F2040 or subsequent standard(s).

(6) Approved equestrian helmet means a helmet conforming to Snell Memorial Foundation standard E-2001 or ASTM standard F1163 or subsequent standard(s).

(7) Approved protective helmet means a helmet complying with American National Standards Institute (ANSI) standard Z89.1-2003 or subsequent standard(s).

# Portability Benefit

### What is the portability benefit?

The portability benefit provides for continuation of your group accidental death and dismemberment insurance if you no longer meet the eligibility requirements of this certificate, except as provided for herein.

To continue coverage under the provisions of this benefit, you must make a written request and make the first premium contribution within 90 days after insurance provided by the group policy would otherwise terminate. This date is considered to be your portability date and you are then considered to have portability status.

### Who is eligible to continue insurance under this benefit?

You are eligible to continue insurance under this benefit if you, except as provided by this benefit, no longer meet the eligibility requirements of this certificate due to any of the following:

(1) the employee terminates employment, including retirement; or
(2) the employee is no longer in a class eligible for insurance or is on a leave or layoff; or
(3) a class or group of employees insured under the certificate is no longer considered eligible and there is no successor plan for that class or group. Successor plan means an insurance policy or policies provided by us or another insurer that replaces insurance proved under this certificate.

You will not be eligible to request coverage under this benefit if you:

(1) have attained the age of 80; or
(2) were not actively at work due to sickness or injury on the day immediately preceding your portability date; or
(3) lose eligibility due to termination of the group policy.

### What insurance can be continued under this benefit?

Both noncontributory and contributory insurance may be continued under this benefit.

If you elect to continue your own coverage according to the provisions of this benefit, you may also elect to continue contributory insurance for any other individual insured under this certificate.

You may also continue coverage under all additional benefits to such certificate by which you were insured immediately preceding your portability date.

The amount of insurance continued under this benefit for any individual will be subject to any applicable state law or regulation relating to allowable amounts of insurance.

### What is the minimum amount of insurance that can be continued under this benefit?

The minimum amount of insurance that can be continued under this benefit is $10,000. The minimum does not apply to any other insureds covered under this benefit.

### What is the maximum amount of insurance that can be continued under this benefit?

The maximum amount of insurance that can be continued under this benefit is the amount of insurance that was in force on the insured's portability date, but not more than $2,000,000 for you or $150,000 for your spouse/domestic partner.

### Will the amount of insurance continued under this benefit change?

Yes. When an insured attains age 65, the amount of insurance continued under this benefit will reduce to 65% of the amount of insurance in force on the day prior to his or her attainment of age 65; at age 70, the amount of insurance will be reduced to 50%; and at age 75, the amount of insurance will be reduced to 25% of that amount. Insurance terminates at age 80.

### Can you request a change in your amount of insurance continued under this benefit?

Yes. You may elect to reduce the amount of insurance provided under your certificate. The remaining amount of insurance must be at least $10,000.

The amount of insurance continued under this benefit will never increase.

### How will premium contributions be paid?

Premium contributions will be paid directly to us on a monthly, quarterly, semi-annual, or annual basis and will be subject to an administrative charge per billing period. We may adjust the amount of the charge, but not more often than once per year.

### Can the premium rate change?

Yes. The premium rate may increase on the portability date. The premium rate may also increase in the future but will not change more often than once per year.

### What happens if you again become eligible under this certificate?

If you are continuing coverage under the provisions of this benefit and again meet the eligibility requirements of this certificate, not including the terms of this benefit, you shall no longer be considered to have portability status. Your insurance may be provided only under the terms of this certificate, not including this benefit, unless and until you no longer meet the eligibility requirements of this

certificate and again return to portability status as provided for herein. An insured cannot be covered under this certificate with both portability status and non-portability status.

**What happens to insurance provided under this benefit when the group policy terminates?**

Notwithstanding anything in this certificate to the contrary, termination of the group policy will not terminate insurance then in force for any person with portability status. The group policy will be deemed to remain in force solely for the purpose of continuing such insurance, but without further obligation of the policyholder.

Any insurance continued under the terms of this benefit will remain in force until terminated by the provision entitled "When will insurance continued under this benefit terminate?"

No individual may elect coverage under this benefit on or after the date of termination of the group policy.

**When will insurance continued under this benefit terminate?**

Insurance continued under this benefit will terminate on the earliest of the following:

(1) your 80th birthday; or
(2) the date the insured again meets the eligibility requirements of this certificate, not including the terms of this benefit; or
(3) in the case of a dependent child or a spouse who is insured under your coverage, the date your coverage is no longer being continued under this benefit or the date your spouse or child ceases to be eligible as defined under the terms of this certificate; or
(4) 31 days after the due date of any premium contribution which is not made.

# Termination

**When does your insurance end?**

Your insurance ends on the earliest of the following:

(1) the date the group policy ends; or
(2) the date you no longer meet the eligibility requirements, unless the insurance can be continued under the portability provisions; or
(3) the date the group policy is amended so you are no longer eligible, unless the insurance can be continued under the portability provisions; or
(4) 31 days (the grace period) after the due date of any unpaid premium if the premium remains unpaid at that time; or
(5) the last day for which premium contributions have been paid following your written request to cease participation under this certificate.

If your insurance under this certificate terminates due to non-payment of premiums, your coverage may be reinstated if all premiums due are paid and received by us within 31 days of the date of termination and during your lifetime.

**Can your coverage be reinstated after termination?**

Yes. When your coverage terminates because you are no longer eligible, and you subsequently becomes eligible again, the employer may reinstate such coverage under this certificate, according to its own rules and time frames, without the need to satisfy any waiting period.

**When does the group policy terminate?**

The policyholder may terminate the group policy by giving us 31 days prior written notice. We reserve the right to terminate the group policy on the earliest of the following to occur:

(1) 31 days (the grace period) after the due date of any premiums which are not paid; or
(2) on any subsequent policy anniversary after the date the number of employees insured is less than any minimum established by us or as required by applicable state law; or
(3) 31 days after we provide the policyholder with notice of our intent to terminate the group policy.

# Family Coverage

If you have dependents, you may elect AD&D coverage for your eligible dependents as described below. All provisions of the certificate applicable to an "insured," including but not limited to references in the Exclusions and Additional Benefits sections, shall apply to a dependent insured hereunder.

**What members of your family are eligible for this benefit?**

The following members of your family are eligible for this benefit:

(1) your spouse or domestic partner who is not legally separated from you and who is not eligible for insurance as an employee under this certificate; and
(2) your children, legally adopted children (from the time of placement), stepchildren or qualified domestic partner's children, foster children and children for whom you are the legal guardian. Children are eligible from live birth to the end of the month the child attains age 26. Children age 26 or older are also eligible if they are physically or mentally incapable of self-support, were incapable of self-support prior to age 26 and are unmarried and financially dependent on you for more than one-half of their support and maintenance.

A same or opposite sex domestic partnership is defined as a relationship where the partners:

(1) are registered as domestic partners or members of a civil union with a government agency or office where such registration is available; or

(2) have submitted a domestic partner declaration to the policyholder.

The Domestic Partner declaration must be signed by the employee and confirm that:

(1) each member is at least 18 years of age and both are mentally competent to enter into a contract; and

(2) neither person is married; and

(3) neither person has had another domestic partner within six months prior to the enrollment date for insurance for the domestic partner under the Group Policy except that this restriction will not apply to a prior domestic partnership which ended due to the domestic partner's death; and

(4) both persons share the same residence on the enrollment date for insurance for the domestic partner under the Group Policy; and

(5) they are not related by blood in a manner that would bar their marriage in the jurisdiction in which they reside; and

(6) they have an exclusive mutual commitment to share the responsibility for each other's welfare and financial obligations which commitment existed on the enrollment date for insurance for the domestic partner under the Group Policy , and such commitment is expected to last indefinitely; and

(7) they are financially interdependent and they have agreed to be responsible for the expenses and financial obligations of each other.

If both parents of a child qualify as eligible employees under the group policy, the child shall be considered a dependent of only one parent for purposes of this rider. If any child qualifies as an eligible employee under the group policy, he or she is not eligible to be insured as a dependent child.

Any dependent child who, subsequent to the effective date of the insured employee's child life insurance, meets the requirements of this provision will become insured on the date he or she so qualifies.

**When does insurance on a dependent become effective?**

Insurance on a dependent becomes effective on the date when all of the following conditions have been met:

(1) the dependent meets all eligibility requirements; and

(2) if required, you apply for dependents coverage on forms which are approved by us; and

(3) we receive the required premium.

Any dependent who, subsequent to the effective date of your dependents accidental death and dismemberment

insurance, meets the requirements of this provision will become insured on the date he or she so qualifies unless additional premium is required.  If additional premium is required, the insurance of such later-acquired dependent shall be effective under the same conditions which apply if you were then first becoming eligible for dependents insurance under this certificate.

If a dependent is hospitalized or confined because of illness or disease on the date his or her insurance would otherwise become effective, his or her effective date shall be delayed until he or she is released from such hospitalization or confinement.  However, in no event will insurance on a dependent under this certificate be effective before your insurance under this certificate is effective.

**What is the amount of the accidental death and dismemberment benefit for each insured dependent?**

The amount of insurance for a dependent is shown on the specifications page.  The Accidental Death and Dismemberment" section found earlier in this certificate describes the amount of benefits, which are based on the amount of insurance.

**When will the accidental death or dismemberment benefit be payable?**

We will pay the accidental death or dismemberment benefit upon receipt at our home office of written proof satisfactory to us that an insured dependent died or suffered dismemberment as a result of an accidental injury.  All payments by us are payable from our home office.

The benefit will be paid in a single sum.  We will pay interest on the benefit from the date of the insured dependent's death or dismemberment until the date of payment.  Interest will be at an annual rate determined by us, but never less than 0.1% per year or the minimum required by state law, whichever is greater.

**To whom will we pay a dependents accidental death or dismemberment benefit?**

A dependents accidental death or dismemberment benefit will be paid to you, if living, otherwise to your estate.

# Family Coverage Additional Benefits

The following benefits apply to those insureds who are insured for dependents insurance. Unless stated otherwise, additional benefits are payable to the same person or persons who receive the accidental death and dismemberment benefits.

Additional benefits are paid in addition to any accidental death and dismemberment benefits described in the Accidental Death and Dismemberment section, unless otherwise stated.

All provisions of this certificate, including but not limited to the Exclusions section, shall apply to these additional benefits**.**

**Child Care Benefit**

**What is the child care benefit?**

If you or your spouse/domestic partner dies as a result of a covered accident and you or your spouse/domestic partner are survived by one or more dependent children under age 13, we will pay additional benefits to reimburse for child care expenses incurred by your dependent children provided the dependent child was under age 13 and enrolled in an accredited child care facility, or enrolls in such facility within ninety days from the date of loss.

The benefit for each child per year will be the lesser of:

(1) 5% of your amount of insurance; or
(2) $15,000; or
(3) incurred child care expenses.

Child care expenses are those expenses which are for a service or supply furnished by a licensed child care provider or facility for a dependent child's care. No payment will be made for expenses incurred more than four years after the date of your death. Proof of incurred child care expenses shall be required before any benefit payment is made.

The child care benefit will be paid to the surviving parent, to the child's guardian, the custodian under the Uniform Transfers to minors Act or to an adult caretaker when permitted under state law.

**Child Dismemberment Double Benefit**

**What is the child dismemberment double benefit?**

If a dependent child suffers a covered loss, other than loss of life, the amount payable shall be twice the amount listed in the table found in the "What is the amount of the accidental death and dismemberment benefit?" section of this certificate, subject to a maximum amount of $150,000, except for thumb and finger which is $125,000.

**Dependent Child Education Benefit**

**What is the dependent child education benefit?**

We will pay an education benefit on behalf of your dependent children if you die as a result of a covered accident and you are survived by one or more insured dependent children, provided that:

(1) he or she is enrolled as a full-time student in an accredited college, university or trade school; or
(2) he or she is at the 12th grade level and enrolls in an accredited college, university or trade school within one year from the date of the accident.

The benefit payable will be the lesser of:

(1) $25,000; or
(2) 5% of the insured employee's amount of insurance; or

(3) the actual tuition charged, exclusive of room and board.

The benefit will be payable at the beginning of each school year for a maximum of four consecutive years, but not beyond the date the child attains age 25. The benefit will be paid to the insured dependent child if he or she is of legal age.

If the insured dependent child is not of legal age the benefit will be paid to the person who provides proof they have paid or will pay the tuition bill for that school year. Proof of enrollment and tuition costs are required for each school year.

**Spouse/Domestic Partner Training Benefit**

**What is the spouse/domestic partner training benefit?**

If you die as a result of a covered accident and you are survived by your dependent spouse/domestic partner, we will pay a training benefit to the surviving spouse/domestic partner provided:

(1) the purpose of the training program is to obtain an independent source of support and maintenance; and
(2) the actual cost is incurred within thirty months from the death of the insured; and
(3) the professional or trade training program is licensed by the state.

The maximum amount payable under this benefit will be $10,000 and proof of such costs will be required before benefits are paid.

# Dependents Benefit Termination

**When does an insured dependent's coverage terminate?**

An insured dependent's coverage terminates on the earliest of the following:

(1) the date the dependent no longer meets the eligibility requirements; or
(2) 31 days (the grace period) after the due date of any unpaid premium if the premium remains unpaid at that time; or
(3) the last day for which premium contributions have been made following an insured employee's written request that insurance on his or her dependents be terminated; or
(4) the date the employee is no longer covered under the group policy.

The insured employee must notify us or the employer when a dependent is no longer eligible for coverage under this benefit so that premiums may be discontinued.

All premiums paid for dependents who are no longer eligible for coverage under this benefit will be refunded without any payment of claim.

# Additional Information

**Do we have the right to obtain independent medical verification?**

Yes.  We retain the right to have an insured medically examined at our expense whenever a claim is pending and, where not forbidden by law, we reserve the right to have an autopsy performed in the case of death.

**What if an insured's age has been misstated?**

If an insured's age has been misstated, the accidental death or dismemberment benefit payable will be that amount to which the insured is entitled based on his or her correct age.  A premium adjustment will be made to the premium you pay for the insured's noncontributory insurance and to the premium an insured pays for contributory insurance, if any, so that the actual premium required at the insured's correct age is paid.

**When does an insured's insurance become incontestable?**

Except for fraud or the non-payment of premiums, after the insured's insurance has been in force during his or her lifetime for three years from the effective date of his or her coverage, we cannot contest the insured's coverage.  However, if there has been an increase in the amount of insurance for which the insured was required to apply, then, to the extent of the increase, any loss which occurs within two years of the effective date of the increase will be contestable.

Any statements the insured makes in his or her application will, in the absence of fraud, be considered representations and not warranties.  Also, any statement an insured makes will not be used to void his or her insurance, or defend against a claim, unless the statement is contained in the application.

**Can your insurance be assigned?**

Yes.  However, we will not be bound by an assignment of the certificate or of any interest in it unless it is made as a written instrument, you file the original instrument or a certified copy with us at our home office, and we send you an acknowledged copy.

We are not responsible for the validity of any assignment. You are responsible for ensuring that the assignment is legal in your state and that it accomplishes your intended goals.  If a claim is based on an assignment, we may require proof of interest of the claimant.  A valid assignment will take precedence over any claim of a beneficiary.

**Will the provisions of this certificate conform with state law?**

Yes.  If any provision in this certificate or in the group policy is in conflict with the laws of the state governing the group policy or the certificates, the provision will be deemed to be amended to conform to such laws.

## California Contact Notice

**Minnesota Life Insurance Company -** A Securian Company
400 Robert Street North • St. Paul, Minnesota  55101-2098

IT IS IMPORTANT TO US THAT YOU ARE SATISFIED WITH THIS POLICY AND THE
SERVICE YOU RECEIVE FROM US.

IF YOU HAVE AN UNRESOLVED COMPLAINT, THE CALIFORNIA INSURANCE
DEPARTMENT SUGGESTS THAT YOU NOTIFY THEIR CONSUMER AFFAIRS OFFICE.
CONTACT SHOULD BE MADE ONLY AFTER COMMUNICATIONS BETWEEN YOU AND
US (THE AGENT OR OTHER REPRESENTATIVE) HAVE FAILED TO PRODUCE A
SATISFACTORY SOLUTION TO THE PROBLEM.

CONTACT :     YOUR AGENT
                  OR
        MINNESOTA LIFE INSURANCE COMPANY
        400 ROBERT STREET NORTH
        ST. PAUL, MN 55101-2098
        651-665-3500

QUESTIONS ABOUT THIS NOTICE OR ANY UNRESOLVED COMPLAINT MAY BE
DIRECTED TO:

        DEPARTMENT OF INSURANCE
        CONSUMER AFFAIRS DEPARTMENT
        300 SOUTH SPRING STREET
        LOS ANGELES, CA  90013
        213-897-8921

        TOLL FREE TELEPHONE FOR CALIFORNIA ONLY:
        800-927-4357

        OFFICE  HOURS:  9 A.M. TO 5 P.M.

THIS NOTICE PROVIDES CONTACT INFORMATION ONLY AND IS NOT A CONDITION OF
THE POLICY.

FMHC-43535  Rev 10-1999

**Important Notice**

**Minnesota Life Insurance Company -** A Securian Company
400 Robert Street North • St. Paul, Minnesota  55101-2098

---

## NOTICE OF PROTECTION PROVIDED BY
## CALIFORNIA LIFE AND HEALTH INSURANCE GUARANTEE ASSOCIATION

This notice provides a brief summary regarding the protections provided to policyholders by the California Life and Health Insurance Guarantee Association ("Association").  The purpose of the Association is to assure that policyholders will be protected, within certain limits, in the unlikely event that a member insurer of the Association becomes financially unable to meet its obligations.  Insurance companies licensed in California to sell life insurance, health insurance, annuities and structured settlement annuities are members of the Association.  The protection provided by the Association is not unlimited and is not a substitute for consumers' care in selecting insurers.  This protection was created under California law, which determines who and what is covered and the amounts of coverage.

Below is a brief summary of the coverage, exclusions and limits provided by the Association.  This summary does not cover all provisions of the law; nor does it in any way change anyone's right or obligations or the rights or obligations of the Association.

### COVERAGE

### Persons Covered

Generally, an individual is covered by the Association if the insurer was a member of the Association **and** the individual lives in California at the time the insurer is determines by a court to be insolvent.  Coverage is also provided to policy beneficiaries, payees or assignees, whether or not they live in California.

### Amounts of Coverage

The basic coverage protections provided by the Association are as follows:

- **Life Insurance, Annuities and Structured Settlement Annuities**

  For life insurance policies, annuities and structured settlement annuities, the Association will provide the following:

  - **Life Insurance**

    80% of death benefits but not to exceed $300,000
    80% of cash surrender or withdrawal values but not to exceed $100,000

  - **Annuities and Structured Settlement Annuities**

    80% of the present value of annuity benefits, including net cash withdrawal and net cash surrender values but not to exceed $250,000

The maximum amount of protection provided by the Association to an individual, for **all** life insurance, annuities and structured settlement annuities is $300,000, regardless of the number of policies or contracts covering the individual.

- **Health Insurance**

The maximum amount of protection provided by the Association to an individual, as of April 1, 2011, is $470,125.  This amount will increase or decrease based upon changes in the health care cost component of the consumer price index to the date on which an insurer becomes an insolvent insurer.

FMHC-43968  Rev 8-2011

## COVERAGE LIMITATIONS AND EXCLUSIONS FROM COVERAGE

The Association may not provide coverage for this policy.  Coverage by the Association generally requires residency in California.  You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance policy.

The following policies and persons are among those that are excluded from Association coverage:

- A policy or contract issued by an insurer that was not authorized to do business in California when it issued the policy or contract.
- A policy issued by a health care service plan (HMO), a hospital or medical service organization, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society.
- If a person is provided coverage by the guaranty association of another state.
- Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which do not guaranty annuity benefits to an individual.
- Employer and association plans, to the extent they are self-funded or uninsured;
- A policy or contract providing any health care benefits under Medicate Part C or  part D.
- An annuity issued by an organization that is only licensed to issue charitable gift annuities.
- Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as certain investment elements of a variable life insurance policy or a variable annuity contract.
- Any policy of reinsurance unless an assumption certificate was issued;
- Interest rate yields (including implied yields) that exceed limits that are specified in Insurance Code Section 1607.02(b)(2)(C).

## NOTICES

Insurance companies or their agents are required by law to give or send you this notice.  Policyholders with additional questions should first contact their insurer or agent.  To learn more about coverage provided by the Association, please visit the Association's website at www.califega.org, or contact either of the following:

**California Life and Health Insurance
Guarantee Association**
P.O. Box 16860
Beverly Hills, CA 90209-3319
(323) 782-0182

**California Department of Insurance
Consumer Communications Bureau**
300 South Spring Street
Los Angeles, CA 90013
(800) 927-4357

**Insurance companies and agents are not allowed by California law to use the existence of the Association or its coverage to solicit, induce or encourage you to purchase any form of insurance.  When selecting an insurance company, you should not rely on Association coverage.  If there is any inconsistency between this notice and California law, then California law will control.**

400 Robert Street North  •  St Paul, Minnesota 55101-2098

**ACCIDENTAL DEATH AND DISMEMBERMENT CERTIFICATE OF INSURANCE**

# PLAINTIFF SANTOS / ESTATES' COMPLAINT FOR DAMAGES UNDER ERISA

# EXHIBIT 3

Securian Financial Group, Inc.
Minnesota Life Insurance Company
Benefit Services
P.O. Box 64114
St. Paul, MN  55164-0114

REGARDING - Apple Inc.



0000332

January 14, 2019

**For Claim Information**



www.securian.com/benefits



(651) 665-7106 fax
1-888-658-0193

ESTATE OF SAMUEL V CHONG
EVA MARIA SANTOS AS ADMINISTRATOR
3379 SPARROW HEIGHTS AVE
NORTH LAS VEGAS  NV  89033

RE:  Claim number **1317583**   - Apple Inc.

To Estate of Samuel V Chong:

This letter is in regard to the claim filed on behalf of Samuel V Chong.  Again, please accept our Company's sincere condolences.

As you know, we have been reviewing this claim for accidental death benefits on the life of Samuel V. Chong.  We previously issued life insurance benefits to you on November 16, 2018 in the amount of $311,000.00 plus accrued interest.  Our investigation for accidental death has now been completed, and we must deny liability for these benefits.  Please allow me to explain.

The applicable policy provision states the following:

***What does accidental death or dismemberment by accidental injury mean?***

*Accidental death or dismemberment by accidental injury means that an insured's death or dismemberment results, directly and independently of all other causes, from an accidental injury which is unintended, unexpected and unforeseen.*

*The injury must occur while the insured's coverage is in force.  The insured's death or dismemberment must occur within 365 days after the date of the injury.*

***What are the exclusions under this certificate?***



*In no event will we pay the accidental death or dismemberment benefit where the insured's death or dismemberment results from or is caused directly or indirectly by any of the following:*

*(7) being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance of the prescribed dosage.*

According to the death certificate, the cause of death was blunt force head trauma with subdural hematoma; probable fall to the back of the head; methamphetamine present.  Per the autopsy/toxicology report, his methamphetamine level was 2258 ng/mL, which is in the fatal range.  Overdose adverse effects include confusion, anxiety, hallucinations, cardiac arrhythmias, hypertension, circulatory collapse, convulsions and coma.  Per the information provided to us, Mr. Chong's death had contribution from the methamphetamine and the fall was not the sole cause of his death.  Based on the information available to us, Mr. Chong's death is not covered under the terms of the accidental death policies.  Although the manner is listed as accidental, there is a specific exclusion for this type of event, and therefore there are no accidental death benefits payable.

If you have any additional information that you would like us to review, please submit this to our office.  We reserve the right to rely upon any other provisions during this review.

Please see the enclosed notice of ERISA Appeal Rights.   Note that appeals must be submitted to our office in writing, along with any supporting documentation.

We are here to assist you.   Please visit our website or call us at our toll free number.   When calling, please have the claim number listed above available.

Sincerely,

Karen

Enclosure(s)

California regulations require that our company advise you that if you believe your claim has been wrongfully denied or rejected, you may have this matter reviewed by the California Department of Insurance.   Their phone number is 1-800-927-4357 or 213-897-8921 and their address is Claims Services Bureau, 11th Floor, 300 Spring Street South, Los Angeles, California, 90013.

**PLAINTIFF SANTOS / ESTATES'
COMPLAINT FOR DAMAGES
UNDER ERISA**

# EXHIBIT 4



ATTORNEYS AT LAW

GOLDSTEIN, GELLMAN, MELBOSTAD, HARRIS & McSPARRAN  LLP

1388 SUTTER STREET
SUITE 1000
SAN FRANCISCO
CALIFORNIA 94109
(415) 673-5600 TEL
(415) 673-5606 FAX

**www.g3mh.com**

May 16, 2019

VIA FAX: (651) 665-7106 &  CERTIFIED MAIL
Securian Financial Group, Inc.
Minnesota Life Insurance Company
PO Box 64114
St. Paul, MN  55164-0114

APPEAL - Supplement

Minnesota Life Insurance Company-
A Securian Company Benefit Services
Group Policy Number: 33957-G
issued to Apple Inc

| Re: | Our Client: | Eva Marie Santos, Administrator of the Estate of Samuel V. Chong |
|---|---|---|
| | Insured: | Samuel V. Chong |
| | Claim No. | **1317583** – Apple Inc. |
| | Policy No.: | 33957 Accidental Death and Dismemberment Certificate of Insurance |
| | Our File No.: | 9584-00 |

Dear Ms. Mistelske:

### I.    Introduction

　　　　Eva Marie Santos, Administrator of the Estate of Samuel V. Chong, aka Samuel Chong, aka Sam Chong, hereby appeals, suppplements and supports with this letter the appreal arising from the death of her cousin Samuel V. Chong.  Accidental Death and Dismemberment (AD&D) Benefits were denied by letter dated January 14, 2109, signed by you, in connection with a claim for for accidental death (AD&D) benefits submitted by Eva Marie Santos, Administrator of the Estate.  The letter concluded that Samuel V. Chong's death is not covered under the terms of the accidental death *policies*:  "Although the manner is listed as accidental, there is a specific exclusion for this type of event, and therefore there are no accidental death benefits payable."

　　　　As explained in more detail in this appeal letter, that conclusion is factually and legally incorrect.  The undisputed evidence, when properly construed in accordance with the controlling law, establishes that Eva Marie Santos, Administrator of the Estate of Samuel V. Chong, is entitled to the full AD&D benefits.

　　　　Enclosed please find:

1. A copy of the January 14, 2019 denial letter. (Exhibit 1)

2. A copy of Karen Mistelske's March 15, 2019 letter granting an extension of the deadline to submit this appeal. (Exhibit 2)

Other exhibits are identified below and primarily relate to the merits of the appeal.

## II.      Relevant Policy Terms

Samuel V. Chong was insured by Minnesota Life Insurance Company – A Securian Company Group Policy Number: 33957-G issued to Apple Inc.

The governing policy provisions state the following:

**"What does Accidental Death or Dismemberment by Accidental Injury Mean?**
Accidental death or dismemberment by accidental injury means that an insured' death or dismemberment results, directly and independently of all other causes, from an accidental injury which is unintended, unexpected, and unforeseen." (Accidental Death and Dismemberment Certificate of Insurance, Page 3.)

**"What are the exclusions under this certificate?**
*In no event will we pay the accidental death or dismemberment benefit where the insured's death or dismemberment results from or is caused directly or indirectly by any of the following:*

*(7)   being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance of the prescribed dosage."* (Accidental Death and Dismemberment Certificate of Insurance, Page 5.)

Attached hereto as Exhibit 3 is a copy of the Minnesota Life's Accidental Death and Dismemberment Certificate of Insurance showing the policy terms.

## III.      Securian Financial/Minnesota Life Insurance Company's Reasoning

Securian Financial/Minnesota Life's position is that Mr. Chong's death was not "an accident" within the meaning of the policy and even if it was, "there is a specific exclusion for this type of event." The January 14, 2019 denial letter quotes the exclusion it is basing its denial on as follows:

**"What are the exclusions under this certificate?**
*In no event will we pay the accidental death or dismemberment benefit where the insured's death or dismemberment results from or is caused directly or indirectly by any of the following:*

*(7)   being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance of the prescribed dosage."*

"According to the death certificate, the cause of death was blunt force head trauma with subdural hematoma; probable fall to the back of the head; methamphetamine present. Per the autopsy/toxicology report, his methamphetamine level was 2258ng/mL, which is in the fatal range.   Overdose adverse effects include confusion anxiety, hallucinations, cardiac arrhythmias, hypertension, circulatory collapse, convulsions and coma.  Per the information provided to us, Mr. Chong's death had contribution

from the methamphetamine and the fall was not the sole cause of his death.  Based on the information available to us, Mr. Chong's death is not covered under the terms of the accidental death **policies**.  Although the manner is listed as accidental, there is a specific exclusion for this type of event, and therefore there are no accidental death benefits payable."

The denial letter, however, cites no such information provided and the documents in the claim file produced show that no documents or information received by the insurance company state that methamphetamine was either a cause of death or a contributing cause of death.  The letter mischaracterizes the statement in the autopsy/toxicology report that "his methamphetamine level was 2258ng/mL, which is in the fatal range" as a finding that Mr. Chong died because of the level of methamphetamine in his system when in fact the report does not say he died of methamphetamine in his system and in fact says he died of a fall.  The report only speculates that his level of methamphetamine might have contributed to him falling.  Nowhere in the report does it state or even suggest that Mr. Chong died from his level of methamphetamine.  Even if his level of methamphetamine had caused his death, that cause would not fall within the exclusion since, as noted in exhibit 7, the letter from his longtime treating physician, Mr. Chong was not prescribed either methamphetamine or its approved brand-name medication Desoxyn and accordingly was not under the influence of a prescribed drug.

## IV.    The Facts

There is no dispute as to the facts underlying the claim.  The dispute in this claim is solely about Securian Financial/Minnesota Life's illegal attempt to expand the exclusion "under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance of the prescribed dosage" to the drug present in Mr. Chong's body, which does not fall within any of the categories listed in the exclusion in the Accidental Death and Dismemberment Certificate of Insurance.

The autopsy concluded the cause of death of Mr. Chong was "BLUNT FORCE HEAD TRAUMA WITH SUBDURAL HEMATOMA   DUE TO: PROBABLE FALL TO THE BACK OF THE HEAD   OTHER CONDITIONS: METHAMPHETAMINE PRESENT"

Physician/Coroner's Amendment to Certificate of Death Item 119. Manner of Death states that the death was an "ACCIDENT"; Items 107.A and 107.B CAUSE OF DEATH state, "BLUNT FORCE HEAD TRAUMA WITH SUBDURAL HEMATOMA," and "PROBABLE FALL TO THE BACK OF THE HEAD," respectfully.  Item 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYIING CAUSE GIVEN IN 107 states: 'METHAMPHETAMINE PRESENT."   Item 124. DESCRIBE HOW INJURY OCCURRED states "DRUG RELATED."

None of the asserted sometimes "adverse effects" of an "overdose" of methamphetamine listed in the denial letter "confusion anxiety, hallucinations, cardiac arrhythmias, hypertension, circulatory collapse, convulsions and coma" are listed in the Certificate of Death as a Cause of Death.  The finding "METHAMPHETAMINE PRESENT" does not establish either that Mr. Chong suffered an overdose of methamphetamine or that methamphetamine was a cause of death.  To the contrary, the "Autopsy" report within the Medical Examiner Investigator's Report and Amendment to Certificate of Death all expressly state that the finding of "METHAMPHETAMINE PRESENT" was merely an "OTHER SIGNIFICANT CONDITION CONTRIBUTING" but "NOT RESULTING IN THE UNDERLYING CAUSE" of death.

## V.    The Standard of Review is De Novo

A threshold issue is how to construe the policy. As stated, the key terms in the Policy unambiguously require payment on the policy.  Even if the key terms were ambiguous, the conclusion that would have to be reached would be the same because the terms were drafted by the insurance company and any undefined terms, specifically the classes of drugs, are defined if official government publications, in particular the federal Drug Enforcement Administration Resource Guide in which methamphetamine is clearly classified as a "stimulant" not a "narcotic" or a "hallucinogen.

Upon review by a federal or a state court, by virtue of California Insurance Code § 11010.6, any question regarding policy interpretation is decided "de novo" regardless of any prior opinion of the plan.  In a "de novo" review, the court construes any ambiguity in the policy consistent with the reasonable expectations of the insured. Here, the policy clearly lists in the exception the types and categories of drugs which if a person was under the influence of and which directly or indirectly caused the death would allow denial of coverage.  No such drug was listed in the autopsy report. A "de novo" review clearly requires coverage under the present facts.

## VI.    Mr. Chong Died Due to an Accident

Federal common law of ERISA applies to determine issues of insurance policy interpretation. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (2002). Under federal common law, a court must, "interpret terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience." *Babikian v. Paul Revere Life Co.*, 63 F.3d 837, 849 (9th Cir. 1983).

The Ninth Circuit instructs that in the absence of a policy definition of "accident" the following test applies:

> "A death or injury may be 'deemed accidental' under a group accidental insurance policy established under ERISA if the death [or injury] was unexpected or unintentional." (10 Couch On Insurance section 139:16 (3d Ed. 1995 & 2000 Supp.).) In determining whether death, or the injury that caused death, was unexpected or unintentional, courts have undertaken an overlapping subjective and objective inquiry. The court first asks whether the insured subjectively lacked an expectation of death or injury. See *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077, 1088 (1st Cir. 1990). ("Requiring an analysis from the perspective of the reasonable person in the shoes of the insured fulfills the axiom that accidents should be judged from the perspective of the insured.") If so, the court asks whether the suppositions that underlay the insured's expectation were reasonable, from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences. See *Id*. If the subjective expectation of the insured cannot be ascertained, the court asks whether a reasonable person, with background and characteristics similar to the insured would have viewed the resulting

injury or death as substantially certain to result from the insured's conduct.)"

\* \* \* \*

"Federal courts deciding ERISA claims apply the subjective/objective test discussed above to determine, not only whether a death was accidental, but also whether an injury was intentionally self-inflicted. The district court correctly observed that this case hinges on whether the physical consequences that Mr. Padfield intended were injuries."

*Padfield v. AIG Life Insurance Co.*, 290 F.3d 1121, 1126, 1129 (9th Cir. 2002).

In *Padfield* the decedent died as a result of autoerotic asphyxiation. The insurer argued that the death was not accidental and invoked a suicide exclusion contained within the policy and denied the claim. The Ninth Circuit looked to the reasonable expectations of the insured and asked whether the conduct at issue was substantial certain to result in death. The undisputed evidence revealed that autoerotic asphyxiation is intended to heighten sexual arousal, generally reflects behavior engaged in over a period of years, and the intent of the individuals performing this act is not death. *Id.* at 1126-1127.

Similarly, in *Kellogg v. Metropolitan Life Insurance Co.*, 549 F.3d 818 (10th Cir. 2008), the decedent, while driving in Merced, California, purportedly stopped at a stop sign at an intersection and then continued eastbound, veering into the westbound lane and then into a tree. The driver was transported to a local hospital where he died. At the time of his death the driver had detectible levels of five prescription and/or over the counter drugs acetaminophen, bupropion, hydrocodone, propoxyphene, and norpropoxyphene. An autopsy report listed the cause of death as subarachnoid hemorrhage of the brain secondary to traumatic transverse basilar skull fracture. Post-mortem toxicology studies revealed effective levels of all the drugs except bupropion which far exceeded therapeutic levels for the patient. "Whether excessive levels of this drug contributed to the subject's accidental and [sic] death is unknown." The court considered the death to be accidental, not the result of homicide or suicide. Metlife denied the claim reasoning that based on a witness statement the decedent was having a seizure and the decedent's physical illness, the seizure, was the cause of the crash.

The court reasoned that insurance policies are interpreted according to their plain meaning, *Id.* at p. 829, **and that they are construed strictly against the insurer**. *Id.* at p. 830. "These rules of construction apply equally to ERISA cases governed by federal common law." *Id.* Likewise the doctrine of doctrine of contra proferentem, which requires us to construe all ambiguities against the drafter, applies here. Id. The court reasoned that the death was caused by a skull fracture resulting from the car accident, not by physical or mental illness and that while the seizure may have been the cause of the crash, it was not the cause of the death and therefore the policy's exclusion for losses caused by physical illness did not apply.

The *Kellogg* court also quoted a decision written by William Howard Taft when he served as a judge on the Sixth Circuit, *Manufacturers' Accident Indemnity Co. v. Dorgan*, 58 F. 945 (6th Cir. 1893). In *Dorgan*, the insured went fishing and was found dead, submerged in a brook. There was some evidence that he had previously suffered from dizziness caused by a defect in his heart. In denying coverage, the insurer argued, *inter alia*, that the insured "died in consequence of

disease, and that his death was not caused by any accident or accidental injury which was the proximate and sole cause of his death." Then-Judge Taft wrote:

> [I]f the deceased suffered death by drowning, no matter what the cause of his falling into the water, whether disease or a slipping, the drowning, in such case, would be the proximate and sole cause of the disability or death, unless it appeared that death would have been the result, even had there been no water at hand to fall into.
> The disease would be but the condition; the drowning would be the moving, sole, and proximate cause.

In *Brettelle v. Life Insurance Company of North America*, 691 F. Supp. 2d 1249 (S.D. Cal. 2010) the accidental death policy did not define the term "accident." On the night of decedent's death he helped some neighbors move; later in the evening the movers had pizza and then later yet one of the men took a motorcycle to the store to purchase beer. When he returned each of the men took turns riding the motorcycle around the neighborhood. At some point the decedent took his turn riding the motorcycle and did not return. The decedent died as a result of blunt force trauma from a motorcycle crash; he approached a curve in the road traveling at an estimated speed of 90 miles per hour (the posted speed limit was 50 miles per hour with a curve advisory speed of 35 miles per hour). Shortly before he died the decedent told a witness that he "should not have drunk so much." The decedent's blood alcohol was .06% about two and a half hours after the collision. The insurer denied the claim arguing that the injuries that led to death were not caused by an accident because they were a foreseeable consequence of driving at high speed while intoxicated. The insurer presented a toxicology report which opined that the decedent's blood alcohol level at the time of the accident was about .1% and that the decedent was likely impaired by alcohol at the time of the accident and that under the influence of alcohol he exhibited greater risk taking by driving much faster than the speed limit.

Relying upon the standards set forth in *Padfield, supra*, the district court concluded that the decedent's death was accidental and therefore a covered event within the meaning of the policy. The district court reasoned that the decedent was familiar with the operation of motorcycles, had no history of driving while intoxicated, and had no moving traffic violations and that while his blood alcohol level was between .05% and .1% which represented a slight to moderate level of impairment all the evidence in the record would strongly support any subjective expectation of survival the decedent may have entertained. The court reached the same conclusion under a purely objective analysis reasoning that a reasonable person in the decedent's shoes would not have viewed the collision and subsequent death substantially certain to occur because death is not substantially certain to result in any particular case of driving a motorcycle at excessive speed (90 miles per hour) while impaired by an alcohol level between .05% and .1% and was not substantially certain to have befallen the decedent as he commenced operating the motorcycle.

Here Mr. Chong died as a result of an accident. There is no evidence that he subjectively expected either to die from an overdose or die from a fall and striking his head when he took the amount of methamphetamine found in his system at the time of his death and his expectation was reasonable. There is no evidence that he had ever previously almost died or had to be resuscitated because of taking that amount of methamphetamine.

### VII.    Methamphetamine is not a Prescription Drug, a Narcotic, or a Hallucinogen

The drug which was present in Mr. Chong's body does not fall within any of the categories listed in the exclusion in the certificate quoted from the policy provisions in your denial letter. Methamphetamine is not a prescription drug, is not a narcotic, and is not a hallucinogen according to any medical definition or categorization of the National Institute of Health.  According to the National Institute on Drug Abuse, it is chemically similar to amphetamine [a drug used to treat attention-deficit hyperactivity disorder (ADHD) and narcolepsy, a sleep disorder].  It is not in the same class of drugs as either of the categories of hallucinogens (such as LSD), or dissociative drugs (such as PCP).  The fact that some persons exhibit symptoms of psychosis including hallucinations after taking large doses of methamphetamine over a prolonged period of time does not mean that methamphetamine is a hallucinogen.  A prolonged period of sleep deprivation even from excessive use of legal stimulants such as coffee or caffeine pills sometimes cause hallucinations but that does not make them "hallucinogens."

### VIII.    Exhibits

1. A copy of the January 14, 2019 denial letter. (Exhibit 1)
2. A copy of Karen Mistelske's March 15, 2019 letter granting an extension to submit this appeal. (Exhibit 2)
3. Minnesota Life's Accidental Death and Dismemberment Certificate of Insurance (Exhibit 3)
4. Amended Certificate of Death
5. Autopsy Report
6. Pages 5 and 6 of SF Medical Examiner/Investigator's Report Case No. 2018-0110
7. Letter from Dr. Mass - no methamphetamine or Desoxyn prescribed to Mr. Sam Chong.

### IX.    Conclusion

Mr. Chong died due to an accident.  No exclusion applies to the claim for AD&D benefits submitted by Eva Marie Santos, Administrator of the Estate of Samuel V. Chong.  Therefore, Securian Financial/Minnesota Life Insurance Company owes Administrator Eva Marie Santos the $311,000.00 AD&D benefit under the policy plus interest from the date of death at the same rate paid on death proceeds left on deposit.  (California Insurance Code § 10172.5 (a) & (b).)

Very truly yours,

Paul H. Melbostad
Attorney for Eva Marie Santos, Administrator of the
Estate of Samuel V. Chong

Enclosures as stated.

cc:  VIA FAX: (972) 378-9905 & CERTIFIED MAIL:
Apple, Inc.
Employee Benefits Plan
2591 Dallas Parkway, Suite 203
Frisco, TX 75034

EXHIBIT 1

**Securian Financial Group, Inc.**
Minnesota Life Insurance Company
Benefit Services
P.O. Box 64114
St. Paul, MN 55164-0114

**REGARDING –** Apple Inc.



0000332



January 14, 2019

**For Claim Information**



www.securian.com/benefits



(651) 665-7106 fax
1-888-658-0193

ESTATE OF SAMUEL V CHONG
EVA MARIA SANTOS AS ADMINISTRATOR
3379 SPARROW HEIGHTS AVE
NORTH LAS VEGAS  NV  89033

RE: Claim number **1317583**   - Apple Inc.

To Estate of Samuel V Chong:

This letter is in regard to the claim filed on behalf of Samuel V Chong.  Again, please accept our Company's sincere condolences.

As you know, we have been reviewing this claim for accidental death benefits on the life of Samuel V. Chong.  We previously issued life insurance benefits to you on November 16, 2018 in the amount of $311,000.00 plus accrued interest.  Our investigation for accidental death has now been completed, and we must deny liability for these benefits.  Please allow me to explain.

The applicable policy provision states the following:

### What does accidental death or dismemberment by accidental injury mean?

*Accidental death or dismemberment by accidental injury means that an insured's death or dismemberment results, directly and independently of all other causes, from an accidental injury which is unintended, unexpected and unforeseen.*

*The injury must occur while the insured's coverage is in force.  The insured's death or dismemberment must occur within 365 days after the date of the injury.*

### What are the exclusions under this certificate?



*In no event will we pay the accidental death or dismemberment benefit where the insured's death or dismemberment results from or is caused directly or indirectly by any of the following:*

*(7) being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance of the prescribed dosage.*

According to the death certificate, the cause of death was blunt force head trauma with subdural hematoma; probable fall to the back of the head; methamphetamine present. Per the autopsy/toxicology report, his methamphetamine level was 2258 ng/mL, which is in the fatal range. Overdose adverse effects include confusion, anxiety, hallucinations, cardiac arrhythmias, hypertension, circulatory collapse, convulsions and coma. Per the information provided to us, Mr. Chong's death had contribution from the methamphetamine and the fall was not the sole cause of his death. Based on the information available to us, Mr. Chong's death is not covered under the terms of the accidental death policies. Although the manner is listed as accidental, there is a specific exclusion for this type of event, and therefore there are no accidental death benefits payable.

If you have any additional information that you would like us to review, please submit this to our office. We reserve the right to rely upon any other provisions during this review.

Please see the enclosed notice of ERISA Appeal Rights. Note that appeals must be submitted to our office in writing, along with any supporting documentation.

We are here to assist you. Please visit our website or call us at our toll free number. When calling, please have the claim number listed above available.

Sincerely,

Karen

Enclosure(s)

California regulations require that our company advise you that if you believe your claim has been wrongfully denied or rejected, you may have this matter reviewed by the California Department of Insurance. Their phone number is 1-800-927-4357 or 213-897-8921 and their address is Claims Services Bureau, 11th Floor, 300 Spring Street South, Los Angeles, California, 90013.

# EXHIBIT 2

**Securian Financial Group, Inc.**
Minnesota Life Insurance Company
Benefit Services
P.O. Box 64114
St. Paul, MN  55164-0114



March 15, 2019

**For Claim Information**



www.securian.com/benefits

GOLDSTEIN GELLMAN MELBOSTAD HARRIS & MCSPARRA
ATTN   PAUL H MELBOSTAD
1388 SUTTER ST  STE 1000
SAN FRANCISCO  CA  94109

(651) 665-7106 fax
1-888-658-0193



RE:  Claim number **1317583**

To Goldstein Gellman Melbostad Harris & McSparra:

This letter is in response to your correspondence dated March 13, 2019 with regard to the accidental death benefits on behalf of Samuel V Chong.

Per your request, I am enclosing copies of our claim file and a copy of the Accidental Death and Dismemberment Certificate of Insurance for policy number 33957.  Please note that some information labeled "Privileged and Confidential" as well as Social Security numbers have been redacted.

We are granting your request for an extension of the appeal time frame, however by granting this extension, Minnesota Life does not waive our defenses under ERISA Law.  The 60 days shall begin upon your receipt of this documentation.

If you and your client are still pursuing an appeal after you have reviewed the attached documents, please submit the reason for appealing in writing, along with any supporting documentation you would like us to review.  Once that is received in our office, our review period under ERISA will begin.

We are here to assist you.  Please visit our website or call us at our toll free number.  When calling, please have the claim number listed above available.

Sincerely,

Karen
[c:]  Apple Inc

**EXHIBIT 3**

## Accidental Death and Dismemberment Certificate of Insurance

**Minnesota Life Insurance Company** - A Securian Company
400 Robert Street North • St. Paul, Minnesota 55101-2098

Effective January 1, 2016 as revised on October 17, 2017

## Read Your Certificate Carefully

You are insured under the group policy shown on the certificate specifications page. This certificate summarizes the principal provisions of the group policy that affect you. The provisions summarized in this certificate are subject in every respect to the group policy. You may examine the group policy at the principal office of the policyholder during regular working hours.

## Legal Actions

No legal action may be brought to recover on this certificate within the first sixty days after written proof of loss has been given as required by this certificate. No such action may be brought after three years from the time written proof of loss is required to be given.

*Jay L. Austins*

Secretary

*Clyde M. Hfen*

President

## TABLE OF CONTENTS

Definitions........................................................................... 2
General Information ............................................................. 2
Premiums ............................................................................ 3
Accidental Death and Dismemberment Benefit................ 3
Exclusions ........................................................................... 5
Additional Benefits ............................................................. 6

Portability Benefit................................................................ 8
Termination.......................................................................... 9
Family Coverage ................................................................. 9
Family Coverage Additional Benefits ............................... 10
Dependents Benefit Termination...................................... 11
Additional Information........................................................ 12

## ACCIDENTAL DEATH AND DISMEMBERMENT CERTIFICATE OF INSURANCE

# AD&D INSURANCE CERTIFICATE SPECIFICATIONS PAGE

## GENERAL INFORMATION

**POLICYHOLDER:**            Apple Inc.                                   **POLICY NUMBER:** 33957-G

**ASSOCIATED COMPANIES:**     All subsidiaries and affiliates reported to Minnesota Life by the policyholder for inclusion in the policy.

**CERTIFICATE EFFECTIVE DATE:**     This specifications page represents the plan in effect on January 1, 2018.

This certificate and or certificate specifications page replaces any and all certificates and or certificate specifications pages previously issued to you under the group policy. Please replace any certificate and or certificate specifications page previously issued to you with this new certificate and or specifications page.

**GROUP:**                   The group is composed of all active employees of the policyholder and its associated companies as follows:

                           Class 1:   Corporate Employees paid from Apple or designated affiliates' W-2 payroll who do not work in a retail store and whose standard weekly hours as shown in Merlin are at least 20 hours per week and Full-time Retail Employees paid from Apple's W-2 payroll who work in a retail store and whose standard weekly hours as shown in Merlin are at least 30 hours per week.

                           Class 2:   Part-time Corporate Employees paid from Apple or designated affiliates' W-2 payroll who do not work in a retail store and whose standard weekly hours as shown in Merlin are between 15 and 19 hours per week and Part-time Retail Employees paid from Apple's W-2 payroll, who work in a retail store and whose standard hours as shown in Merlin are between 15 and 29 hours per week.

**ENROLLMENT PERIOD:**         30 days from the date the employee receives his or her eligibility enrollment email notification.

                           An insured must be living at the time enrollment is completed. Posthumous elections are not allowed for accidental death and dismemberment insurance.

**WAITING PERIOD:**             Class 1:  none.

                           Class 2*: the period beginning with the date of hire and ending with 90 days of continuous employment.

                           * There is no waiting period for part-time retail employees who work in retail stores in Hawaii and whose standard hours as shown in Merlin are between 20 and 29 hours per week.

## PLAN OF INSURANCE

### EMPLOYEE BENEFIT SCHEDULE

**EMPLOYEE ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) INSURANCE:**

| Eligible Class | Amount of Accidental Death and Dismemberment (AD&D) Insurance |
|---|---|
| Class 1 and 2 | An employee may elect from the following term life insurance options: |

Option 1: Two times annual earnings    Option 6: Seven times annual earnings
Option 2: Three times annual earnings    Option 7: Eight times annual earnings
Option 3: Four times annual earnings    Option 8: Nine times annual earnings
Option 4: Five times annual earnings    Option 9: Ten times annual earnings
Option 5: Six times annual earnings

The annual earnings will be multiplied and then rounded up to the next higher $1,000 if not already a multiple thereof, subject to a maximum of ten times annual earnings or $4,000,000.

If an election is not made by an employee, a default benefit amount will be assigned at two times annual earnings.

### GENERAL PROVISIONS FOR EMPLOYEE INSURANCE

**RETIREMENT REDUCTIONS:** AD&D insurance terminates upon retirement, except as provided for under the portability provision.

**CONTRIBUTORY/ NONCONTRIBUTORY:** The policyholder provides an amount of up to 2 times an employee's annual base earnings; this amount is considered noncontributory insurance. Any amount in excess of the amount provided by the policyholder will be deemed contributory insurance.

**INCREASES AND DECREASES:** Mid-year increases in earnings will not result in premium payment changes. Premiums will remain calculated based on the employee's frozen salary as of October 1 (effective the following January 1). A benefit will be paid based on the employee's current salary at the time of death.

Mid-year decreases in earnings will result in premium payment decreases. Premiums will be calculated based on the employee's current salary as of the date of the decrease in salary. A benefit will be paid based on the employee's current salary at the time of death.

For increases and decreases due to a change in eligible class, the change will become effective the date of the change. Requests for increases and decreases may be made only at annual enrollment or within 30 days of a qualified status change (as defined by the employer).

All increases are subject to the actively at work requirement.

**REINSTATEMENT:** Life insurance will be reinstated for employees who terminate employment and are rehired within 30 days of the termination. An employee who loses eligibility and later again becomes eligible beyond 30 days, shall be treated the same as an employee who is first eligible under the plan.

**MILITARY LEAVE** Employees who are on a military leave of absence will have AD&D insurance continued for up to 12 months.

**ANNUAL OPEN ENROLLMENTS:** An employee may add, drop, increase or decrease contributory AD&D insurance at annual enrollment. Evidence of insurability is not required for an increase in AD&D insurance. Coverage will be effective on January 1 following the annual enrollment, subject to the actively at work requirement.

**QUALIFIED STATUS CHANGES:** An employee who experiences a Qualified Status Change may make the following election changes to contributory coverages based on the status change:

| Life Event | Employee AD&D | Spouse/DP AD&D | Child AD&D |
|---|---|---|---|
| Marriage or creation of Domestic Partnership | Increase or Decrease | Add or Increase | Add, Drop, Increase or Decrease |
| Spouse/Domestic Partner gain coverage (gains employment or increases hours, or ends unpaid leave) | Decrease | Drop or Decrease | Drop or Decrease |
| Spouse/Domestic Partner lose coverage (ends employment, decreases hours, or begins unpaid leave) | Increase | Add or Increase | Add or Increase |
| Spouse/Domestic Partner's open enrollment | Add, Drop Increase or Decrease | Add, Drop, Increase or Decrease | Add, Drop, Increase or Decrease |
| Divorce, separation or dissolution of domestic partnership | Increase or Decrease | Drop | Add, Drop, or Increase |
| Adding a child (birth, adoption or gaining legal custody) | Increase | Add or Increase | Add or Increase |
| Loss of child custody/legal guardianship | Decrease | Drop or Decrease | Drop or Decrease |
| Death of a spouse/domestic partner | Increase or Decrease | Drop | Add, Increase or Drop |
| Death of a child | Decrease | Drop or Decrease | Drop or Decrease |
| Child gains employer coverage | Decrease | Drop or Decrease | Drop or decrease |
| Child losses employer coverage | Increase | Add or Increase | Add or Increase |
| Child loses state health insurance/Medicaid | Not applicable | Not applicable | Not applicable |
| Return from personal leave of absence after 30 days | Add | Add | Add |

The amount of employee and spouse/domestic partner insurance shall not exceed the plan maximum. Coverage will be effective on the date of the election.

All increases in insurance, including adding dependent AD&D coverage, are subject to the actively at work provision of the group policy, except for in the case of a newborn child or newly adopted child. AD&D insurance for a newborn or newly adopted child may go into effect prior to the employee returning to active work status.

## DEPENDENTS BENEFIT SCHEDULE

**DEPENDENTS AD&D INSURANCE:** applies to Classes 1 and 2

| "Insured Dependents" | Amount of AD&D Insurance |
|---|---|
| Spouse/Domestic Partner and Eligible Children | For spouse/domestic partner: 50% of employee's amount of insurance* |
| | For each child: 25% of employee's amount of insurance* |
| Spouse/Domestic Partner Only | For spouse/domestic partner: 60% of employee's amount of insurance* |
| Eligible Children Only | For each child:25% of employee's amount of insurance* |

\* The maximum benefit for spouse/domestic partner coverage is $2,400,000; the maximum benefit for child coverage is $150,000.

The maximum benefit for Child Double Dismemberment is $150,000 except for in the loss of a Thumb and Finger, in which case the maximum benefit is $125,000.

### GENERAL PROVISIONS FOR DEPENDENTS INSURANCE

**CONTRIBUTORY/ NONCONTRIBUTORY:**   All dependents insurance is contributory.

**INCREASES AND DECREASES:**   Dependents insurance shall automatically increase or decrease as the employee's amount of insurance increases or decreases.

This certificate is not in lieu of and does not affect any requirement for coverage by workmen's compensation insurance.

All new employees or members of the policyholder in the groups or classes eligible for such insurance will be added to such groups or classes for which they are respectively eligible.

# Definitions

### age

Attained age as of most recent birthday.

### annual earnings

Annual earnings refers to base pay and shift differential for non commissioned employees and base pay and shift differential plus On-Target Variable for commissioned employees. It does not include other types of compensation, such as overtime or bonuses.

### associated company

Any company which is a subsidiary or affiliate of the policyholder which is designated by the policyholder and agreed to by us to participate under the group policy.

### certificate effective date

The date your coverage under this certificate becomes effective.

### contributory insurance

Insurance for which the employee is required to make premium contributions.

### employee

An individual who is employed by the policyholder or by an associated company. A sole proprietor will be considered the employee of the proprietorship. A partner in a partnership will be considered an employee so long as the partner's principal work is the conduct of the partnership's business. The term employee does not include temporary employees, seasonal employees nor corporate directors who are not otherwise employees.

### employer

The policyholder or any designated associated company.

### insured

A person who is eligible for and becomes insured under the terms of this certificate.

### licensed physician

An individual who is licensed to practice medicine or treat illness in the state in which treatment is received. The physician cannot be you or your spouse, children, parents, grandparents, grandchildren, brothers or sisters, or the spouse of any such individuals.

### non-work day

A day on which the employee is not regularly scheduled to work, including scheduled time off for vacations, personal holidays, weekends and holidays, and approved leaves of absence for non-medical reasons.

Non-work day does not include time off for medical leave of absence, temporary layoff, employer suspension of operations in total or in part, strike, and any time off due to sickness or injury including sick days, short-term disability, or long-term disability.

### noncontributory insurance

Insurance for which the employee is not required to make premium contributions.

### policyholder

The owner of the group policy as shown on the specifications page attached to this certificate.

### specifications page

The outline which summarizes your coverage under the policyholder's plan of insurance.

### waiting period

The period, if any, of continuous employment with the employer that the employee must satisfy prior to becoming eligible for coverage under this certificate. Any such waiting period is shown on the specifications page attached to this certificate.

### we, our, us

Minnesota Life Insurance Company.

### you, your, certificate holder

An insured employee.

# General Information

### What is your agreement with us?

This certificate summarizes the principal provisions of your accidental death and dismemberment insurance provided by the group policy. The provisions summarized in this certificate are subject in every respect to the group policy. Your signed application is deemed a part of this certificate.

Any statements made in your application will, in the absence of fraud, be considered representations and not warranties. Also, any statement made will not be used to void your insurance nor defend against a claim unless the statement is contained in your signed application, and a copy containing the statement is furnished to you, the beneficiary, or your or the beneficiary's personal representative.

This certificate is issued in consideration of your application and the payment of the required premium.

In making any benefits determination under this certificate and the group policy, we shall have the discretionary authority both to determine an individual's eligibility for benefits and to construe the terms of this certificate and the group policy.

## Can this certificate be amended?

Yes. Your consent is not required to amend this certificate. Any amendment will be without prejudice to any claim for benefits incurred prior to the effective date of the amendment.

## Who is eligible for insurance?

An employee is eligible if he or she:

(1) is a member of the eligible group and of an eligible class identified in the group policy; and
(2) works for the employer for at least the number of hours per week shown as the minimum hours per week requirement on the specifications page attached to this certificate; and
(3) has satisfied the waiting period, if any; and
(4) meets the actively at work requirement described in the "What is the actively at work requirement?" provision of this section.

## Are retired employees eligible for insurance?

If the policyholder's plan of insurance, as shown on the specifications page attached to the group policy, does not specifically provide insurance for retired employees, a retired employee shall not be eligible to become insured, nor to have his or her insurance continued. If the policyholder's plan of insurance specifically provides insurance for retired employees, the minimum hours per week and actively at work requirements will not apply to such persons.

## What is the actively at work requirement?

To be eligible to become insured or to receive an increase in the amount of insurance, you must be actively at work, fully performing your customary duties for your regularly scheduled number of hours at the employer's normal place of business, or at other places the employer's business requires you to travel.

Employees not working due to illness or injury do not meet the actively at work requirement nor do employees receiving sick pay, short-term disability benefits or long-term disability benefits.

If the employee is not actively at work on the date coverage would otherwise begin, or on the date an increase in his or her amount of insurance would otherwise be effective, he or she will not be eligible for the coverage or increase until he or she returns to active work. However, if the absence is on a non-work day, coverage will not be delayed provided the employee was actively at work on the work day immediately preceding the non-work day.

Except as otherwise provided for in this certificate, an employee is eligible to continue to be insured only while he or she remains actively at work.

## When does your insurance become effective?

Your insurance becomes effective on the date that all of the following conditions have been met:

(1) you meet all eligibility requirements; and
(2) if required, you apply for the insurance on forms which are approved by us; and
(3) we receive the required premium.

## Can an insured's coverage be continued during the employee's sickness, injury, leave of absence or temporary layoff?

Yes. The employer may continue your noncontributory insurance or allow you to continue your contributory insurance when you are absent from work due to sickness, injury, leave of absence, or temporary layoff.

Continuation of your insurance is subject to certain time limits and conditions as stated in the group policy. If you stop active work for any reason, you should discuss with the employer what arrangements may be made to continue your insurance.

# Premiums

## When and how often are premiums due?

Unless the policyholder and we have agreed to some other premium payment procedure, any premium contributions you are required to make for contributory insurance are to be paid by you to the policyholder on a monthly basis. We apply premiums consecutively to keep the insurance in force.

## How is the premium determined?

The premium will be the premium rate multiplied by the number of $1,000 units of insurance in force on the date premiums are due. The premium may also be computed by any other method on which the policyholder and we agree.

We may change the premium rate:

(1) on any premium due date following the expiration of any rate guarantee; or
(2) irrespective of any rate guarantee, anytime, if the policy terms are amended or the total amount of insurance in force changes by 25% or more.

# Accidental Death and Dismemberment Benefit

## What does accidental death or dismemberment by accidental injury mean?

Accidental death or dismemberment by accidental injury means that an insured's death or dismemberment results, directly and independently of all other causes, from an accidental injury which is unintended, unexpected, and unforeseen.

The injury must occur while the insured's coverage is in force. The insured's death or dismemberment must occur within 365 days after the date of the injury.

### What is the amount of the accidental death and dismemberment benefit?

The amount of the benefit shall be a percentage of the amount of insurance shown on the specifications page attached to this certificate. The percentage is determined by the type of loss as shown in the following table:

| TYPE OF LOSS | PERCENT OF AMOUNT OF INSURANCE |
|---|---|
| Life | 100% |
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| Speech and Hearing | 100% |
| One Hand and One Foot | 100% |
| One Foot and Sight of One Eye | 100% |
| One Hand and Sight of One Eye | 100% |
| Loss of use of Four Limbs | 100% |
| Loss of use of Three Limbs | 100% |
| Loss of use of Two Limbs | 100% |
| Sight of One Eye | 50% |
| Speech or Hearing | 50% |
| One Hand or One Foot | 50% |
| Loss of One Limb | 50% |
| Thumb and Index Finger of One Hand | 25% |

Loss of hands or feet means complete severance at or above the wrist or ankle joints. Loss of sight, speech, or hearing means the total and permanent loss of sight, speech, or hearing which cannot be corrected by medical or surgical treatment or by artificial means. Loss of thumb and index finger means complete severance of both the thumb and the index finger at or above the metacarpophalangeal joints.

Loss of use means total paralysis of limb that is permanent, complete and irreversible. Limb means an arm or a leg.

A benefit is not payable for both loss of thumb and index finger of one hand and the loss of one hand for injury to the same hand as a result of any one accident. Under no circumstance will more than one payment be made for the loss or paralysis of the same limb, eye, finger, thumb, hand, foot, sight, speech, or hearing if one payment has already been made for that loss.

Benefits may be paid for more than one accidental loss but the total amount of AD&D insurance payable under this certificate for any one accident, not including any amount paid according to the terms of the Additional Benefits section of this certificate, will never exceed the full amount of the insured's AD&D insurance.

### Can you request a change in the amount of your contributory insurance?

You can request a change in your contributory insurance amount only during an annual open enrollment period, as determined by the employer, or within 30 days of a

Qualified Status Change. Qualified Status Change shall be as determined by the employer.

### When will changes in coverage amounts be effective?

Increases and decreases in amounts of contributory insurance will be effective as shown on the specifications page attached to this certificate. All increases in the amount of insurance are subject to the actively at work requirement.

### What are the notice of claim and proof of loss requirements?

Written notice and proof of loss due to an injury on which a claim may be based must be given to us within 90 days after the accident. However, failure to give such notice and proof within the time provided will not invalidate the claim if it is shown that notice and proof were given as soon as reasonably possible.

When we receive written notice of claim, we will send the claimant our claim forms if he or she needs them. If the claimant does not receive the forms within 15 days, we will accept his or her written description as proof of loss.

### When will the accidental death or dismemberment benefit be payable?

We will pay the accidental death or dismemberment benefit upon receipt at our home office of written proof satisfactory to us that you died or suffered a covered dismemberment as a result of a covered accidental injury. All payments by us are payable from our home office.

The benefit will be paid in a single sum. We will pay interest on the benefit from the date of your death or dismemberment until the date of payment. Interest will be at an annual rate determined by us, but never less than 0.1% per year or the minimum required by state law, whichever is greater.

### To whom will we pay the accidental death or dismemberment benefit?

In the case of your accidental death, we will pay the accidental death benefit to the beneficiary or beneficiaries. All other benefits will be payable to you, if living, otherwise to your estate.

A beneficiary is named by you to receive the accidental death benefit to be paid at your accidental death. You may name one or more beneficiaries. You cannot name the policyholder or an associated company as a beneficiary.

You may also choose to name a beneficiary that you cannot change without the beneficiary's consent. This is called an irrevocable beneficiary.

If there is more than one beneficiary, each will receive an equal share, unless you have requested another method in writing. To receive the accidental death benefit, a beneficiary must be living at the time of your accidental death. In the event a beneficiary is not living at the time of

your accidental death, that beneficiary's portion of the accidental death benefit shall be equally distributed to the remaining surviving beneficiaries. In the event of the simultaneous deaths of you and a beneficiary, the accidental death benefit will be paid as if you survived the beneficiary.

If there is no eligible beneficiary, or if you do not name one, we will pay the accidental death benefit to the beneficiary on file for your term life insurance. If there is no eligible beneficiary on file for your term life insurance, we will pay the benefit as follows:

(1) your lawful spouse, if living, otherwise;
(2) your natural or legally adopted child (children) in equal shares, if living, otherwise;
(3) your parents in equal shares, if living, otherwise;
(4) your siblings in equal shares, if living, otherwise;
(5) the personal representative of your estate.

**Can you add or change beneficiaries?**

Yes. You can add or change beneficiaries if all of the following are true:

(1) your coverage is in force; and
(2) we have written consent of all irrevocable beneficiaries; and
(3) you have not assigned the ownership of your insurance.

A request to add or change a beneficiary must be made in writing. All requests are subject to our approval. A change will take effect as of the date it is signed, but will not affect any payment we make or action we take before receiving your request.

# Exclusions

**What are the exclusions under this certificate?**

In no event will we pay the accidental death or dismemberment benefit where the insured's death or dismemberment results from or is caused directly or indirectly by any of the following:

(1) suicide or any attempt at suicide or intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury;
(2) war or any act of war, whether declared or undeclared;
(3) involvement in any type of active military service;
(4) illness or disease, regardless of how contracted, medical or surgical treatment of illness or disease; or complications following the surgical treatment of illness or disease; except for accidental ingestion of contaminated foods;
(5) participation in the commission or attempted commission of any felony;
(6) being intoxicated while operating a motor vehicle.
  (A) an insured will be conclusively presumed to be intoxicated if the level of alcohol in his or her blood exceeds the amount at which a

person is presumed, under the law of the locale in which the accident occurred, to be intoxicated, if operating a motor vehicle.
  (B) an autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of the insured's intoxication.
(7) being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage.

Air travel coverage is limited to a loss sustained during a trip, while the insured is a passenger, riding in or on, boarding or getting off:

(1) any civilian aircraft with a current and valid normal, transport, or commuter type standard airworthiness certificate as defined by the Federal Aviation Administration or its successor or its equivalent certificate from a foreign government. This aircraft must be operated by a pilot with a current and valid:
      (a) medical certificate; and
      (b) pilot certificate with a proper rating to pilot such aircraft.
(2) any aircraft which is not subject to a certificate of airworthiness; whose design and customary and regular purpose is for transporting passengers; and which is operated by the Armed Forces of the United States of America or the Armed Forces of any foreign government.

Air travel coverage is not provided:

(1) if the insured is the pilot, operator, member of the crew or cabin attendant of any aircraft.
(2) Unless we have previously consented in writing to the use, coverage is not provided for any loss, caused by, contributed to, resulting from riding in or on, boarding, or getting off:
      (a) any aircraft other than those expressly stated in this coverage;
      (b) any aircraft owned or controlled by, or under lease to the policyholder except the following aircraft, including Substitute Aircraft:

      *Aircraft on file with the policyholder provided such aircraft:*

      (i) has a current and valid normal, transport, or commuter type standard airworthiness certificate as defined by the Federal Aviation Administration or its successor;
      (ii) is being operated with the policyholder's consent;
      (iii) is not carrying persons for hire; and
      (iv) is being operated by a pilot with a current and valid medical certificate,

and pilot certificate with a proper rating to pilot such aircraft.
(c) any aircraft owned or controlled by , or under lease to an insured or member of an insured's family or household;
(d) any aircraft operated by the Policyholder except those indicated in (2)(b) above, including Substitute Aircraft or one of the policyholder's employees including members of an employee's family or household;
(e) any aircraft engaged in a Specialized Aviation Activity.

Substitute Aircraft means an aircraft, which is not owned by the policyholder, and:

(1) has a current and valid normal, commuter, or transport type standard airworthiness certificate as defined by the Federal Aviation Administration or its successor or an equivalent certification from a foreign government; and
(2) is the same class of aircraft as the specified aircraft; and
(3) is being used by the Policyholder because the specified aircraft is withdrawn form use due to breakdown, repair, servicing, loss or destruction.

Specialized Aviation Activity means an aircraft while it is being used for one or more of the following activities:

(1) test or experimental purpose; and.
(2) flight which requires a special permit or waiver from the authority having jurisdiction over civil aviation, even though granted.

# Additional Benefits

Unless stated otherwise, additional benefits are payable to the same person or persons who receive the accidental death and dismemberment benefits. Additional benefits are paid in addition to any accidental death and dismemberment benefits described in the Accidental Death and Dismemberment section, unless otherwise stated. All provisions of the certificate, including but not limited to the Exclusions section, shall apply to these additional benefits.

## Adaptive Home and Vehicle Benefit

### What is the adaptive home and vehicle benefit?

If an insured suffers a loss other than loss of life and a benefit is payable under the AD&D benefit, we will pay for an insured's principal residence to be made accessible and/or an insured's private automobile to be made drivable or rideable. These one-time alteration expenses must be incurred within two years from the date of the accident. An insured's benefit will be the lesser of:

(1) 10% of his or her amount of AD&D insurance; or
(2) $25,000; or
(3) the actual alteration expense.

The Adaptive Home and Vehicle Benefit will be payable only if:

(1) such home alterations are made by a person or persons with experience in such alterations and recommended by a recognized organization associated with the injury;
(2) such vehicle modifications are carried out by a person or persons with experience in such matters and approved by the Motor Vehicle Department.

## Coma Benefit

### What is the coma benefit?

If an insured lapses into a coma as a result of and within 365 days of a covered accidental injury, and such coma has lasted for a minimum of 31 days, we will pay a benefit equal to the lesser of:

(1) 1% of the insured's amount of insurance; or
(2) 1% of the difference between the insured's amount of insurance and the amount of any benefits paid under the loss schedule for the same accident.

This benefit will be paid monthly until the earliest of the following:

(1) the date the insured recovers such that he or she is no longer in a coma as defined herein; or
(2) the date of the insured's death. If an accidental death payment is due under this policy, the amount of such payment will be reduced by the amount of insurance paid under this coma provision; or
(3) 100 months following the date monthly benefits commenced.

Coma means a state of profound unconsciousness with no evidence of appropriate responses to stimulation. The insured must be confined in a medical facility and diagnosed as comatose by a licensed physician.

## Disappearance Benefit

### What is the disappearance benefit?

If an insured's body has not been found after 365 days from the date the conveyance in which he or she was traveling disappeared, exploded, sank, became stranded, made a forced landing or was wrecked, it shall be presumed, subject to all other terms of the policy, that the insured has died as a result of an accidental injury which was unintended, unexpected and unforeseen. Such death shall be considered a covered loss under this certificate.

## Exposure Benefit

### What is the exposure benefit?

If an insured is unavoidably exposed to the elements by reason of a covered accident and suffers a loss that is

included in the list of covered losses as a result of such exposure, such loss will be covered under the terms of this certificate.

## Safety Device Benefit

### What is the safety device benefit?

If an insured dies as a result of a covered accident, we will pay an additional accidental death and dismemberment benefit equal to the lesser of $50,000 or 25% of the insured's amount of insurance provided the insured was:

(1) operating or riding as a passenger in or on any private passenger automobile, motorcycle, scooter, moped, bicycle, boat or seagoing vessel, sailboard, personal watercraft, all-terrain vehicle, all-terrain cycle, snowmobile or while participating in downhill skiing, snowboarding, horseback riding, water skiing or other towed activities; and

(2) wearing or protected by, as per manufacturer's instructions, any of the following:

   (a) an original, equipped, factory installed or manufacturer authorized and unaltered seat belt, or lap and shoulder restraint at the time of the injury; or

   (b) a manufacturer equipped airbag, provided the insured's seat belt or lap and shoulder restraint was fastened at the time of the accident; or

   (c) an approved personal floatation device while the insured is swimming, engaging in water sports or legally operating or riding as a passenger in a boat, seagoing vessel, sailboard or personal watercraft; or

   (d) an approved motorcycle helmet while the insured is operating or riding as a passenger on a motorcycle, scooter, moped, all terrain vehicle (ATV), or all-terrain cycle (ATC) that is being operated legally per all local and state laws, rules and regulations; or

   (e) an approved snowmobile helmet while the insured is operating or riding as a passenger on a snowmobile that is being operated legally; or

   (f) an approved bicycle helmet, while the insured is legally operating a bicycle; or

   (g) an approved ski helmet while the insured is engaged in downhill skiing or snowboarding, after purchasing a valid life ticket and skiing/snowboarding during normal operating hours and on the marked premises of the facility selling the lift ticket; or

   (h) an approved equestrian helmet while the insured is engaged in horseback riding; or

   (i) an approved protective helmet while the insured is actively at work; or

   (j) approved body armor while the insured is actively at work.

Verification of the insured's actual use of the safety device is required as follows:

(1) by supplying the official law enforcement report of the accident, through certification by the investigating officers; or

(2) by other reasonable proof, acceptable to us.

A safety device benefit will not be paid if the insured was the driver or operator of any private passenger automobile, motorcycle, scooter, moped, bicycle, boat or seagoing vessel, sailboard, personal watercraft, all-terrain vehicle, all-terrain cycle, snowmobile or while participating in downhill skiing, snowboarding, horseback riding, water skiing or other towed activities, if at the time the insured was:

(1) under the influence of alcohol:

   (A) A driver/operator will be conclusively presumed to e under the influence of alcohol if the level of alcohol in his or her blood exceeds the amount at which a person is presumed, under the law of the locale in which the accident occurred, to be under the influence of alcohol if operating a motor vehicle.

   (B) An autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of the driver's intoxication; or

(2) under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage; or

(3) engaged in contests or competitions.

Approved safety device definitions are as follows:

(1) Approved personal flotation device (PFD) means a United States Coast Guard approved Type I, II, III or V PFD of appropriate size for the intended user. For water skiing, other towed activities or operation of a personal watercraft a PFD labeled for that activity must be used.

(2) Approved motorcycle helmet means a helmet meeting United States Department of Transportation Federal Motor Vehicle Safety Standard (FMVSS) 218 or subsequent standard(s).

(3) Approved snowmobile helmet means a helmet meeting the United States Department of Transportation FMVSS 218 or subsequent standard(s).

(4) Approved bicycle helmet means a helmet meeting American Society of Testing and Materials (ASTM) standard F1447 or subsequent standard(s).

(5) Approved ski helmet means a helmet conforming to Snell Memorial Foundation standards S-98 or RS-98 or ASTM standard F2040 or subsequent standard(s).

(6) Approved equestrian helmet means a helmet conforming to Snell Memorial Foundation standard E-2001 or ASTM standard F1163 or subsequent standard(s).

(7) Approved protective helmet means a helmet complying with American National Standards Institute (ANSI) standard Z89.1-2003 or subsequent standard(s).

## Portability Benefit

### What is the portability benefit?

The portability benefit provides for continuation of your group accidental death and dismemberment insurance if you no longer meet the eligibility requirements of this certificate, except as provided for herein.

To continue coverage under the provisions of this benefit, you must make a written request and make the first premium contribution within 90 days after insurance provided by the group policy would otherwise terminate. This date is considered to be your portability date and you are then considered to have portability status.

### Who is eligible to continue insurance under this benefit?

You are eligible to continue insurance under this benefit if you, except as provided by this benefit, no longer meet the eligibility requirements of this certificate due to any of the following:

(1) the employee terminates employment, including retirement; or
(2) the employee is no longer in a class eligible for insurance or is on a leave or layoff; or
(3) a class or group of employees insured under the certificate is no longer considered eligible and there is no successor plan for that class or group. Successor plan means an insurance policy or policies provided by us or another insurer that replaces insurance proved under this certificate.

You will not be eligible to request coverage under this benefit if you:

(1) have attained the age of 80; or
(2) were not actively at work due to sickness or injury on the day immediately preceding your portability date; or
(3) lose eligibility due to termination of the group policy.

### What insurance can be continued under this benefit?

Both noncontributory and contributory insurance may be continued under this benefit.

If you elect to continue your own coverage according to the provisions of this benefit, you may also elect to continue contributory insurance for any other individual insured under this certificate.

You may also continue coverage under all additional benefits to such certificate by which you were insured immediately preceding your portability date.

The amount of insurance continued under this benefit for any individual will be subject to any applicable state law or regulation relating to allowable amounts of insurance.

### What is the minimum amount of insurance that can be continued under this benefit?

The minimum amount of insurance that can be continued under this benefit is $10,000. The minimum does not apply to any other insureds covered under this benefit.

### What is the maximum amount of insurance that can be continued under this benefit?

The maximum amount of insurance that can be continued under this benefit is the amount of insurance that was in force on the insured's portability date, but not more than $2,000,000 for you or $150,000 for your spouse/domestic partner.

### Will the amount of insurance continued under this benefit change?

Yes. When an insured attains age 65, the amount of insurance continued under this benefit will reduce to 65% of the amount of insurance in force on the day prior to his or her attainment of age 65; at age 70, the amount of insurance will be reduced to 50%; and at age 75, the amount of insurance will be reduced to 25% of that amount. Insurance terminates at age 80.

### Can you request a change in your amount of insurance continued under this benefit?

Yes. You may elect to reduce the amount of insurance provided under your certificate. The remaining amount of insurance must be at least $10,000.

The amount of insurance continued under this benefit will never increase.

### How will premium contributions be paid?

Premium contributions will be paid directly to us on a monthly, quarterly, semi-annual, or annual basis and will be subject to an administrative charge per billing period. We may adjust the amount of the charge, but not more often than once per year.

### Can the premium rate change?

Yes. The premium rate may increase on the portability date. The premium rate may also increase in the future but will not change more often than once per year.

### What happens if you again become eligible under this certificate?

If you are continuing coverage under the provisions of this benefit and again meet the eligibility requirements of this certificate, not including the terms of this benefit, you shall no longer be considered to have portability status. Your insurance may be provided only under the terms of this certificate, not including this benefit, unless and until you no longer meet the eligibility requirements of this

certificate and again return to portability status as provided for herein. An insured cannot be covered under this certificate with both portability status and non-portability status.

### What happens to insurance provided under this benefit when the group policy terminates?

Notwithstanding anything in this certificate to the contrary, termination of the group policy will not terminate insurance then in force for any person with portability status. The group policy will be deemed to remain in force solely for the purpose of continuing such insurance, but without further obligation of the policyholder.

Any insurance continued under the terms of this benefit will remain in force until terminated by the provision entitled "When will insurance continued under this benefit terminate?"

No individual may elect coverage under this benefit on or after the date of termination of the group policy.

### When will insurance continued under this benefit terminate?

Insurance continued under this benefit will terminate on the earliest of the following:

(1) your 80th birthday; or
(2) the date the insured again meets the eligibility requirements of this certificate, not including the terms of this benefit; or
(3) in the case of a dependent child or a spouse who is insured under your coverage, the date your coverage is no longer being continued under this benefit or the date your spouse or child ceases to be eligible as defined under the terms of this certificate; or
(4) 31 days after the due date of any premium contribution which is not made.

## Termination

### When does your insurance end?

Your insurance ends on the earliest of the following:

(1) the date the group policy ends; or
(2) the date you no longer meet the eligibility requirements, unless the insurance can be continued under the portability provisions; or
(3) the date the group policy is amended so you are no longer eligible, unless the insurance can be continued under the portability provisions; or
(4) 31 days (the grace period) after the due date of any unpaid premium if the premium remains unpaid at that time; or
(5) the last day for which premium contributions have been paid following your written request to cease participation under this certificate.

If your insurance under this certificate terminates due to non-payment of premiums, your coverage may be reinstated if all premiums due are paid and received by us within 31 days of the date of termination and during your lifetime.

### Can your coverage be reinstated after termination?

Yes. When your coverage terminates because you are no longer eligible, and you subsequently becomes eligible again, the employer may reinstate such coverage under this certificate, according to its own rules and time frames, without the need to satisfy any waiting period.

### When does the group policy terminate?

The policyholder may terminate the group policy by giving us 31 days prior written notice. We reserve the right to terminate the group policy on the earliest of the following to occur:

(1) 31 days (the grace period) after the due date of any premiums which are not paid; or
(2) on any subsequent policy anniversary after the date the number of employees insured is less than any minimum established by us or as required by applicable state law; or
(3) 31 days after we provide the policyholder with notice of our intent to terminate the group policy.

## Family Coverage

If you have dependents, you may elect AD&D coverage for your eligible dependents as described below. All provisions of the certificate applicable to an "insured," including but not limited to references in the Exclusions and Additional Benefits sections, shall apply to a dependent insured hereunder.

### What members of your family are eligible for this benefit?

The following members of your family are eligible for this benefit:

(1) your spouse or domestic partner who is not legally separated from you and who is not eligible for insurance as an employee under this certificate; and
(2) your children, legally adopted children (from the time of placement), stepchildren or qualified domestic partner's children, foster children and children for whom you are the legal guardian. Children are eligible from live birth to the end of the month the child attains age 26. Children age 26 or older are also eligible if they are physically or mentally incapable of self-support, were incapable of self-support prior to age 26 and are unmarried and financially dependent on you for more than one-half of their support and maintenance.

A same or opposite sex domestic partnership is defined as a relationship where the partners:

(1) are registered as domestic partners or members of a civil union with a government agency or office where such registration is available; or

(2) have submitted a domestic partner declaration to the policyholder.

The Domestic Partner declaration must be signed by the employee and confirm that:

(1) each member is at least 18 years of age and both are mentally competent to enter into a contract; and

(2) neither person is married; and

(3) neither person has had another domestic partner within six months prior to the enrollment date for insurance for the domestic partner under the Group Policy except that this restriction will not apply to a prior domestic partnership which ended due to the domestic partner's death; and

(4) both persons share the same residence on the enrollment date for insurance for the domestic partner under the Group Policy; and

(5) they are not related by blood in a manner that would bar their marriage in the jurisdiction in which they reside; and

(6) they have an exclusive mutual commitment to share the responsibility for each other's welfare and financial obligations which commitment existed on the enrollment date for insurance for the domestic partner under the Group Policy , and such commitment is expected to last indefinitely; and

(7) they are financially interdependent and they have agreed to be responsible for the expenses and financial obligations of each other.

If both parents of a child qualify as eligible employees under the group policy, the child shall be considered a dependent of only one parent for purposes of this rider. If any child qualifies as an eligible employee under the group policy, he or she is not eligible to be insured as a dependent child.

Any dependent child who, subsequent to the effective date of the insured employee's child life insurance, meets the requirements of this provision will become insured on the date he or she so qualifies.

**When does insurance on a dependent become effective?**

Insurance on a dependent becomes effective on the date when all of the following conditions have been met:

(1) the dependent meets all eligibility requirements; and

(2) if required, you apply for dependents coverage on forms which are approved by us; and

(3) we receive the required premium.

Any dependent who, subsequent to the effective date of your dependents accidental death and dismemberment

insurance, meets the requirements of this provision will become insured on the date he or she so qualifies unless additional premium is required. If additional premium is required, the insurance of such later-acquired dependent shall be effective under the same conditions which apply if you were then first becoming eligible for dependents insurance under this certificate.

If a dependent is hospitalized or confined because of illness or disease on the date his or her insurance would otherwise become effective, his or her effective date shall be delayed until he or she is released from such hospitalization or confinement. However, in no event will insurance on a dependent be effective before your insurance under this certificate is effective.

**What is the amount of the accidental death and dismemberment benefit for each insured dependent?**

The amount of insurance for a dependent is shown on the specifications page. The Accidental Death and Dismemberment" section found earlier in this certificate describes the amount of benefits, which are based on the amount of insurance.

**When will the accidental death or dismemberment benefit be payable?**

We will pay the accidental death or dismemberment benefit upon receipt at our home office of written proof satisfactory to us that an insured dependent died or suffered dismemberment as a result of an accidental injury. All payments by us are payable from our home office.

The benefit will be paid in a single sum. We will pay interest on the benefit from the date of the insured dependent's death or dismemberment until the date of payment. Interest will be at an annual rate determined by us, but never less than 0.1% per year or the minimum required by state law, whichever is greater.

**To whom will we pay a dependents accidental death or dismemberment benefit?**

A dependents accidental death or dismemberment benefit will be paid to you, if living, otherwise to your estate.

# Family Coverage Additional Benefits

The following benefits apply to those insureds who are insured for dependents insurance. Unless stated otherwise, additional benefits are payable to the same person or persons who receive the accidental death and dismemberment benefits.

Additional benefits are paid in addition to any accidental death and dismemberment benefits described in the Accidental Death and Dismemberment section, unless otherwise stated.

All provisions of this certificate, including but not limited to the Exclusions section, shall apply to these additional benefits.

## Child Care Benefit

### What is the child care benefit?

If you or your spouse/domestic partner dies as a result of a covered accident and you or your spouse/domestic partner are survived by one or more dependent children under age 13, we will pay additional benefits to reimburse for child care expenses incurred by your dependent children provided the dependent child was under age 13 and enrolled in an accredited child care facility, or enrolls in such facility within ninety days from the date of loss.

The benefit for each child per year will be the lesser of:

(1)  5% of your amount of insurance; or
(2)  $15,000; or
(3)  incurred child care expenses.

Child care expenses are those expenses which are for a service or supply furnished by a licensed child care provider or facility for a dependent child's care.  No payment will be made for expenses incurred more than four years after the date of your death.  Proof of incurred child care expenses shall be required before any benefit payment is made.

The child care benefit will be paid to the surviving parent, to the child's guardian, the custodian under the Uniform Transfers to minors Act or to an adult caretaker when permitted under state law.

## Child Dismemberment Double Benefit

### What is the child dismemberment double benefit?

If a dependent child suffers a covered loss, other than loss of life, the amount payable shall be twice the amount listed in the table found in the "What is the amount of the accidental death and dismemberment benefit?" section of this certificate, subject to a maximum amount of $150,000, except for thumb and finger which is $125,000.

## Dependent Child Education Benefit

### What is the dependent child education benefit?

We will pay an education benefit on behalf of your dependent children if you die as a result of a covered accident and you are survived by one or more insured dependent children, provided that:

(1)  he or she is enrolled as a full-time student in an accredited college, university or trade school; or
(2)  he or she is at the 12th grade level and enrolls in an accredited college, university or trade school within one year from the date of the accident.

The benefit payable will be the lesser of:

(1)  $25,000; or
(2)  5% of the insured employee's amount of insurance; or

(3)  the actual tuition charged, exclusive of room and board.

The benefit will be payable at the beginning of each school year for a maximum of four consecutive years, but not beyond the date the child attains age 25.  The benefit will be paid to the insured dependent child if he or she is of legal age.

If the insured dependent child is not of legal age the benefit will be paid to the person who provides proof they have paid or will pay the tuition bill for that school year.  Proof of enrollment and tuition costs are required for each school year.

## Spouse/Domestic Partner Training Benefit

### What is the spouse/domestic partner training benefit?

If you die as a result of a covered accident and you are survived by your dependent spouse/domestic partner, we will pay a training benefit to the surviving spouse/domestic partner provided:

(1)  the purpose of the training program is to obtain an independent source of support and maintenance; and
(2)  the actual cost is incurred within thirty months from the death of the insured; and
(3)  the professional or trade training program is licensed by the state.

The maximum amount payable under this benefit will be $10,000 and proof of such costs will be required before benefits are paid.

# Dependents Benefit Termination

### When does an insured dependent's coverage terminate?

An insured dependent's coverage terminates on the earliest of the following:

(1)  the date the dependent no longer meets the eligibility requirements; or
(2)  31 days (the grace period) after the due date of any unpaid premium if the premium remains unpaid at that time; or
(3)  the last day for which premium contributions have been made following an insured employee's written request that insurance on his or her dependents be terminated; or
(4)  the date the employee is no longer covered under the group policy.

The insured employee must notify us or the employer when a dependent is no longer eligible for coverage under this benefit so that premiums may be discontinued.

All premiums paid for dependents who are no longer eligible for coverage under this benefit will be refunded without any payment of claim.

## Additional Information

### Do we have the right to obtain independent medical verification?

Yes. We retain the right to have an insured medically examined at our expense whenever a claim is pending and, where not forbidden by law, we reserve the right to have an autopsy performed in the case of death.

### What if an insured's age has been misstated?

If an insured's age has been misstated, the accidental death or dismemberment benefit payable will be that amount to which the insured is entitled based on his or her correct age. A premium adjustment will be made to the premium you pay for the insured's noncontributory insurance and to the premium an insured pays for contributory insurance, if any, so that the actual premium required at the insured's correct age is paid.

### When does an insured's insurance become incontestable?

Except for fraud or the non-payment of premiums, after the insured's insurance has been in force during his or her lifetime for three years from the effective date of his or her coverage, we cannot contest the insured's coverage. However, if there has been an increase in the amount of insurance for which the insured was required to apply, then, to the extent of the increase, any loss which occurs within two years of the effective date of the increase will be contestable.

Any statements the insured makes in his or her application will, in the absence of fraud, be considered representations and not warranties. Also, any statement an insured makes will not be used to void his or her insurance, or defend against a claim, unless the statement is contained in the application.

### Can your insurance be assigned?

Yes. However, we will not be bound by an assignment of the certificate or of any interest in it unless it is made as a written instrument, you file the original instrument or a certified copy with us at our home office, and we send you an acknowledged copy.

We are not responsible for the validity of any assignment. You are responsible for ensuring that the assignment is legal in your state and that it accomplishes your intended goals. If a claim is based on an assignment, we may require proof of interest of the claimant. A valid assignment will take precedence over any claim of a beneficiary.

### Will the provisions of this certificate conform with state law?

Yes. If any provision in this certificate or in the group policy is in conflict with the laws of the state governing the group policy or the certificates, the provision will be deemed to be amended to conform to such laws.

## California Contact Notice

**Minnesota Life Insurance Company** - A Securian Company
400 Robert Street North • St. Paul, Minnesota 55101-2098

IT IS IMPORTANT TO US THAT YOU ARE SATISFIED WITH THIS POLICY AND THE
SERVICE YOU RECEIVE FROM US.

IF YOU HAVE AN UNRESOLVED COMPLAINT, THE CALIFORNIA INSURANCE
DEPARTMENT SUGGESTS THAT YOU NOTIFY THEIR CONSUMER AFFAIRS OFFICE.
CONTACT SHOULD BE MADE ONLY AFTER COMMUNICATIONS BETWEEN YOU AND
US (THE AGENT OR OTHER REPRESENTATIVE) HAVE FAILED TO PRODUCE A
SATISFACTORY SOLUTION TO THE PROBLEM.

CONTACT :   YOUR AGENT
          OR
    MINNESOTA LIFE INSURANCE COMPANY
    400 ROBERT STREET NORTH
    ST. PAUL, MN 55101-2098
    651-665-3500

QUESTIONS ABOUT THIS NOTICE OR ANY UNRESOLVED COMPLAINT MAY BE
DIRECTED TO:

    DEPARTMENT OF INSURANCE
    CONSUMER AFFAIRS DEPARTMENT
    300 SOUTH SPRING STREET
    LOS ANGELES, CA  90013
    213-897-8921

    TOLL FREE TELEPHONE FOR CALIFORNIA ONLY:
    800-927-4357

    OFFICE  HOURS:  9 A.M. TO 5 P.M.

THIS NOTICE PROVIDES CONTACT INFORMATION ONLY AND IS NOT A CONDITION OF
THE POLICY.

## Important Notice

**Minnesota Life Insurance Company** - A Securian Company
400 Robert Street North • St. Paul, Minnesota 55101-2098

### NOTICE OF PROTECTION PROVIDED BY
### CALIFORNIA LIFE AND HEALTH INSURANCE GUARANTEE ASSOCIATION

This notice provides a brief summary regarding the protections provided to policyholders by the California Life and Health Insurance Guarantee Association ("Association"). The purpose of the Association is to assure that policyholders will be protected, within certain limits, in the unlikely event that a member insurer of the Association becomes financially unable to meet its obligations. Insurance companies licensed in California to sell life insurance, health insurance, annuities and structured settlement annuities are members of the Association. The protection provided by the Association is not unlimited and is not a substitute for consumers' care in selecting insurers. This protection was created under California law, which determines who and what is covered and the amounts of coverage.

Below is a brief summary of the coverage, exclusions and limits provided by the Association. This summary does not cover all provisions of the law; nor does it in any way change anyone's right or obligations or the rights or obligations of the Association.

### COVERAGE

#### Persons Covered

Generally, an individual is covered by the Association if the insurer was a member of the Association **and** the individual lives in California at the time the insurer is determines by a court to be insolvent. Coverage is also provided to policy beneficiaries, payees or assignees, whether or not they live in California.

#### Amounts of Coverage

The basic coverage protections provided by the Association are as follows:

- **Life Insurance, Annuities and Structured Settlement Annuities**

  For life insurance policies, annuities and structured settlement annuities, the Association will provide the following:

  - **Life Insurance**

    80% of death benefits but not to exceed $300,000
    80% of cash surrender or withdrawal values but not to exceed $100,000

  - **Annuities and Structured Settlement Annuities**

    80% of the present value of annuity benefits, including net cash withdrawal and net cash surrender values but not to exceed $250,000

The maximum amount of protection provided by the Association to an individual, for **all** life insurance, annuities and structured settlement annuities is $300,000, regardless of the number of policies or contracts covering the individual.

- **Health Insurance**

The maximum amount of protection provided by the Association to an individual, as of April 1, 2011, is $470,125. This amount will increase or decrease based upon changes in the health care cost component of the consumer price index to the date on which an insurer becomes an insolvent insurer.

## COVERAGE LIMITATIONS AND EXCLUSIONS FROM COVERAGE

The Association may not provide coverage for this policy. Coverage by the Association generally requires residency in California. You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance policy.

The following policies and persons are among those that are excluded from Association coverage:

- A policy or contract issued by an insurer that was not authorized to do business in California when it issued the policy or contract.
- A policy issued by a health care service plan (HMO), a hospital or medical service organization, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society.
- If a person is provided coverage by the guaranty association of another state.
- Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which do not guaranty annuity benefits to an individual.
- Employer and association plans, to the extent they are self-funded or uninsured;
- A policy or contract providing any health care benefits under Medicate Part C or part D.
- An annuity issued by an organization that is only licensed to issue charitable gift annuities.
- Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as certain investment elements of a variable life insurance policy or a variable annuity contract.
- Any policy of reinsurance unless an assumption certificate was issued;
- Interest rate yields (including implied yields) that exceed limits that are specified in Insurance Code Section 1607.02(b)(2)(C).

## NOTICES

Insurance companies or their agents are required by law to give or send you this notice. Policyholders with additional questions should first contact their insurer or agent. To learn more about coverage provided by the Association, please visit the Association's website at www.califega.org, or contact either of the following:

**California Life and Health Insurance
Guarantee Association**
P.O. Box 16860
Beverly Hills, CA 90209-3319
(323) 782-0182

**California Department of Insurance
Consumer Communications Bureau**
300 South Spring Street
Los Angeles, CA 90013
(800) 927-4357

**Insurance companies and agents are not allowed by California law to use the existence of the Association or its coverage to solicit, induce or encourage you to purchase any form of insurance. When selecting an insurance company, you should not rely on Association coverage. If there is any inconsistency between this notice and California law, then California law will control.**

400 Robert Street North • St Paul, Minnesota 55101-2098

**ACCIDENTAL DEATH AND DISMEMBERMENT CERTIFICATE OF INSURANCE**

# EXHIBIT 4

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# CITY AND COUNTY OF
# SAN FRANCISCO

CERTIFICATE OF DEATH

3052018028463 — STATE FILE NUMBER

3201838000624 — LOCAL REGISTRATION NUMBER

STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11-REV 3/05

**DECEDENT'S PERSONAL DATA**

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| SAMUEL | VILLAREAL | CHONG |

| AKA, ALSO KNOWN AS — Include full AKA (FIRST, MIDDLE, LAST) | 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR Months/Days | IF UNDER 24 HOURS Hours/Minutes | 6. SEX |
|---|---|---|---|---|---|
| PI | | 55 | | | M |

| 9. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS/SRDP (at time of death) | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
|---|---|---|---|---|---|
| PI | UNKNOWN | ☐ YES ☒ NO ☐ UNK | NEVER MARRIED | 02/02/2018 | 1856 |

| 13. EDUCATION – Highest Level/Degree (see worksheet on back) | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? (If yes, see worksheet on back) | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| BACHELOR | ☐ YES ☒ NO | FILIPINO |

| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| ENGINEER | TECHNOLOGY | 3 |

**USUAL RESIDENCE**

| 20. DECEDENT'S RESIDENCE (Street and number, or location) |
|---|
| 1316 A SANCHEZ STREET |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN CITY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| SAN FRANCISCO | SAN FRANCISCO | 94131 | 3 | CA |

**INFORMANT**

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip) |
|---|---|
| EVA MARIE SANTOS, COUSIN | |

**SPOUSE/SRDP AND PARENT INFORMATION**

| 29. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| - | | - |

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| ARTHUR | - | CHONG | HI |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| TERESITA | - | VILLAREAL | PI |

**FUNERAL DIRECTOR / LOCAL REGISTRAR**

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 02/08/2018 | RES. ROUMELA JOSEPHINE S. RIEGO, BLK 9 LOT 25 DINAR LANE ECOTREND VILLAS. ZAPOTE, LAS PINAS CITY, PI 1742 |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| CR/TR/RES | ▶ NOT EMBALMED | |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| BAY AREA CREMATION SOCIETY INC | FD1775 | ▶ TOMAS ARAGON, MD, DR.P.H. | 02/08/2018 |

**PLACE OF DEATH**

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| RESIDENCE | ☐ IP ☐ ER/OP ☐ DOA | ☐ Hospice ☐ Nursing Home/LTC ☒ Decedent's Home ☐ Other |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 106. CITY |
|---|---|---|
| SAN FRANCISCO | 1316A SANCHEZ STREET | SAN FRANCISCO |

**CAUSE OF DEATH**

| 107. CAUSE OF DEATH Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A) | PENDING | (A) UNK | ☒ YES ☐ NO |
| Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST (B) | | (B) | 109. BIOPSY PERFORMED? |
| (C) | | (C) | ☐ YES ☒ NO |
| (D) | | (D) | 110. AUTOPSY PERFORMED? ☒ YES ☐ NO |
| | | | 111. USED IN DETERMINING CAUSE? ☒ YES ☐ NO |

2018-0110 (ADDITIONAL NUMBER)

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| -- |

**PHYSICIAN'S CERTIFICATION**

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) | 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| | ☐ YES ☐ NO ☐ UNK |

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since (A) mm/dd/ccyy / Decedent Last Seen Alive (B) mm/dd/ccyy | ▶ | | |

| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE |
|---|
| |

**CORONER'S USE ONLY**

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|
| MANNER OF DEATH ☐ Natural ☐ Accident ☐ Homicide ☐ Suicide ☒ Pending Investigation ☐ Could not be determined | ☐ YES ☐ NO ☐ UNK | | |

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|
| |

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|
| |

| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) |
|---|
| |

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| ▶ MICHAEL HUNTER M.D. | 02/06/2018 | MICHAEL HUNTER M.D., CHIEF MED EXAMINER |

**STATE REGISTRAR**

| A | B | C | D | E | FAX AUTH# | CENSUS TRACT |
|---|---|---|---|---|---|---|
| | | | | | | |

*310001003793504*

CASANFRAC1

STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

This is to certify that the image reproduced hereupon is a true copy of the record on file in the San Francisco Department of Public Health as of the date issued.

DATE ISSUED: APR 22 2019

003675657

Tomás Aragón
TOMÁS ARAGÓN, MD, DrPH
COUNTY HEALTH OFFICER

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the City and County Health Officer.

# CERTIFICATION OF VITAL RECORD

# CITY AND COUNTY OF
# SAN FRANCISCO

PHYSICIAN/CORONER'S AMENDMENT
NO ERASURES, WHITEOUTS, PHOTOCOPIES,
OR ALTERATIONS

3052018028463
**STATE FILE NUMBER**

3201838000624
**LOCAL REGISTRATION NUMBER**

1.1

☐ BIRTH   ☒ DEATH   ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

## PART I    INFORMATION TO LOCATE RECORD

| INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 1A. NAME—FIRST<br>SAMUEL | 1B. MIDDLE<br>VILLAREAL | 1C. LAST<br>CHONG | 2. SEX<br>M |
|---|---|---|---|---|
| | 3. DATE OF EVENT—MM/DD/CCYY<br>02/02/2018 | 4. CITY OF EVENT<br>SAN FRANCISCO | 5. COUNTY OF EVENT<br>SAN FRANCISCO | |

## PART II    STATEMENT OF CORRECTIONS

| | 6. CERTIFICATE ITEM NUMBER | 7. INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 8. INFORMATION AS IT SHOULD APPEAR |
|---|---|---|---|
| LIST ONE ITEM PER LINE | 107A | PENDING | BLUNT FORCE HEAD TRAUMA WITH SUBDURAL HEMATOMA |
| | 107B | | PROBABLE FALL TO THE BACK OF THE HEAD |
| | 107BT | | UNK |
| | 112 | -- | METHAMPHETAMINE PRESENT |
| | 113 | -- | NO |
| | 119 | PENDING INVESTIGATION | ACCIDENT |
| | 120 | | NO |
| | 121 | | UNK |
| | 122 | | UNK |
| | 123 | | UNKNOWN |
| | 124 | | DRUG RELATED |
| | 125 | | UNKNOWN, |

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

| DECLARATION OF CERTIFYING PHYSICIAN OR CORONER | 9. SIGNATURE OF CERTIFYING PHYSICIAN OR CORONER<br>► MICHAEL HUNTER M.D. | 10. DATE SIGNED—MM/DD/CCYY<br>08/30/2018 | 11. TYPED OR PRINTED NAME AND TITLE/DEGREE OF CERTIFIER<br>CHIEF MED EXAMINER | |
|---|---|---|---|---|
| | 12. ADDRESS—STREET and NUMBER<br>1 NEWHALL STREET | 13. CITY<br>SAN FRANCISCO | 14. STATE<br>CA | 15. ZIP CODE<br>94124 |
| STATE/LOCAL REGISTRAR USE ONLY | 16. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR<br>► STATE REGISTRAR - OFFICE OF VITAL RECORDS | 17. DATE ACCEPTED FOR REGISTRATION—MM/DD/CCYY<br>08/30/2018 | | |

CASANFRA01



STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

This is to certify that the image reproduced hereupon is a true copy of the record on file in the San Francisco Department of Public Health as of the date issued.

DATE ISSUED   APR 22 2019




TOMÁS ARAGÓN, MD, DrPH
COUNTY HEALTH OFFICER

003670705

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the City and County Health Officer.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# CITY AND COUNTY OF
# SAN FRANCISCO

### AFFIDAVIT TO AMEND A RECORD
NO ERASURES, WHITEOUTS, PHOTOCOPIES, OR ALTERATIONS

3052018028463
STATE FILE NUMBER

3201838000624
LOCAL REGISTRATION NUMBER

2.1

☐ BIRTH   ☒ DEATH   ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

## PART I — INFORMATION TO LOCATE RECORD

INFORMATION AS IT APPEARS ON ORIGINAL RECORD

| 1A. NAME—FIRST | 1B. MIDDLE | 1C. LAST |
|---|---|---|
| SAMUEL | VILLAREAL | CHONG |

| 2. SEX | 3. DATE OF EVENT—MM/DD/CCYY | 4. CITY OF EVENT | 5. COUNTY OF EVENT |
|---|---|---|---|
| M | 02/02/2018 | SAN FRANCISCO | SAN FRANCISCO |

| 6. FULL NAME OF FATHER/PARENT AS STATED ON ORIGINAL RECORD | 7. FULL NAME OF MOTHER/PARENT AS STATED ON ORIGINAL RECORD |
|---|---|
| ARTHUR - CHONG | TERESITA - VILLAREAL |

## PART II — STATEMENT OF CORRECTIONS TO BIRTH, DEATH, OR FETAL DEATH RECORD

LIST ONE ITEM PER LINE

| 8. ITEM NUMBER TO BE CORRECTED | 9. INCORRECT INFORMATION THAT APPEARS ON ORIGINAL RECORD | 10. CORRECTED INFORMATION AS IT SHOULD APPEAR |
|---|---|---|
| 10 | UNKNOWN | ▮▮▮▮▮ |

REASON FOR CORRECTION

11. CORRECT SSN

We, the undersigned, hereby certify under penalty of perjury that we have personal knowledge of the above facts and that the information given above is true and correct.

AFFIDAVITS AND SIGNATURES

TWO PERSONS MUST SIGN THIS FORM TO CORRECT A BIRTH, DEATH, OR FETAL DEATH RECORD

| 12A. SIGNATURE OF FIRST PERSON | 12B. PRINTED NAME | 12C. TITLE/RELATIONSHIP TO PERSON IN PART I |
|---|---|---|
| ▶ SV | DANIELLE LOVE | FUNERAL HOME |

| 12D. ADDRESS (STREET and NUMBER, CITY, STATE, ZIP) | 12E. DATE SIGNED—MM/DD/CCYY |
|---|---|
| 2449 STATION DRIVE, STOCKTON, CA 95215 | 04/02/2019 |

| 13A. SIGNATURE OF SECOND PERSON | 13B. PRINTED NAME | 13C. TITLE/RELATIONSHIP TO PERSON IN PART I |
|---|---|---|
| ▶ SV | NADINE MILLER | FUNERAL HOME |

| 13D. ADDRESS (STREET and NUMBER, CITY, STATE, ZIP) | 13E. DATE SIGNED—MM/DD/CCYY |
|---|---|
| 2449 STATION DRIVE, STOCKTON, CA 95215 | 04/02/2019 |

STATE/LOCAL REGISTRAR USE ONLY

| 14. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR | 15. DATE ACCEPTED FOR REGISTRATION |
|---|---|
| ▶ STATE REGISTRAR - OFFICE OF VITAL RECORDS | 04/11/2019 |

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS          FORM VS 24e (REV. 1/08)

CASANFRA01



STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

This is to certify that the image reproduced hereupon is a true copy of the record on file in the San Francisco Department of Public Health as of the date issued.

DATE ISSUED          APR 2 2 2019

003675660



TOMÁS ARAGÓN, MD, DrPH
COUNTY HEALTH OFFICER

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the City and County Health Officer.

**EXHIBIT 5**

Case: 2018-0110                                        Status: CLOSED          Restricted

Name: CHONG                                  Alias:
SAMUEL

Manner of Death: Accident                              DC Date: 02/05/2018
Motion: Fall                                           Am Date: 08/30/2018
Rpt Type: AUTOPSY
Doctor: HUNTER
Report Date: 08/08/2018
Summary:

CAUSE OF DEATH: BLUNT FORCE HEAD TRAUMA WITH SUBDURAL HEMATOMA

DUE TO: PROBABLE FALL TO THE BACK OF THE HEAD

OTHER CONDITIONS: METHAMPHETAMINE PRESENT

**Detail Report**

**Attach Picture**   **View Photo**   Report Type:              **View Report**   **Print Report**

**EXHIBIT 6**

## CITY AND COUNTY OF SAN FRANCISCO
Office of the Chief Medical Examiner
Medical Division

### Case No. 2018-0110

Name: **CHONG, SAMUEL**          Date & Time of Necropsy: **February 5, 2018; 1102 Hours**

### PATHOLOGIC DIAGNOSES:

   I.   BLUNT HEAD TRAUMA CONSISTENT WITH A FALL TO THE BACK OF
        THE HEAD
        A. ABRADED CONTUSION, POSTERIOR PARIETAL SCALP
        B. BILATERAL CEREBRAL CONTUSIONS WITH SUBARACHNOID AND
           PATCHY SUBDURAL HEMORRHAGE, BILATERAL FRONTAL AND
           TEMPORAL POLES (CONTRECOUP INJURY)
        C. RIGHT SUBDURAL HEMATOMA WITH MASS EFFECT.
   II.  ABRADED LACERATION, LEFT LATERAL
   III. STATUS POST REMOTE RIGHT CRANIOTOMY
   IV.  BLOOD TOXICOLOGY POSITIVE FOR METHAMPHETAMINE (2258 NG/ML)


**CAUSE OF DEATH:**      **BLUNT FORCE HEAD TRAUMA WITH SUBDURAL
                          HEMATOMA**

**DUE TO:**              **PROBABLE FALL TO THE BACK OF THE HEAD**

**CONTRIBUTING:**        **METHAMPHETAMINE PRESENT**

**MANNER:**              **ACCIDENT**

**Comment:** The autopsy findings are most consistent with a mechanism of injury from a fall
to the back of the head in an individual under the influence of methamphetamine. There are
no additional injuries that would suggest the involvement of a second party.


| | |
|---|---|
| **Spec. to Pathology:** | Heart, lung, spleen, liver, kidney, brain. |
| **Spec. to Histology:** | Heart, lung, liver, kidney, right temporalis muscle (#4), right posterior parietal scalp (#5), and right temporal scalp (#6), left back (#8), left shoulder (#7). Brain (x1 pons, x2 right frontal, x3 CC) |
| **Spec. to Microbiology:** | None. |
| **Spec. to Toxicology:** | Iliac vein, central heart, and subdural blood, vitreous humor, stomach contents, and urine are retained. A toxicology report will be issued separately. |
| **Radiographs:** | Full body A-P Lodox. |

# CITY AND COUNTY OF SAN FRANCISCO
### Office of the Chief Medical Examiner
### Medical Division

### Case No.  2018-0110

Name:   **CHONG, SAMUEL**          Date & Time of Necropsy: **February 5, 2018; 1102 Hours**

**Physicians Present:**          A.P. Hart, M.D.

**Forensic Techs:**          R. Sehmar, A. Marchini

**Photographer:**          Michael D. Hunter, MD, Chief Medical Examiner.

**Evidence:**          Bloodspot on filter paper.

8-8-18

Michael D. Hunter, MD
Chief Medical Examiner

18 AUG -8 PM 4:38

MEDICAL EXAMINER
SAN FRANCISCO

EXHIBIT 7

# ∴ one medical

580 Valencia Street · San Francisco, CA 94110
ph: 415-593-1136 · fax: 415-291-0489

To Whom It May Concern;

I did not ever prescribe methamphetamine or its FDA approved brand-name medication Desoxyn to Mr. Sam Chong.

Yours truly,

*Martin M. Mass MD*

Martin Mass, MD
NPI: 1922013382

**Minnesota Life Insurance Company**
A Securian Financial company
Benefit Services
P.O. Box 64114
St. Paul, MN  55164-0114





0000505



GOLDSTEIN GELLMAN MELBOSTAD HARRIS & MCSPARRA
ATTN   PAUL H MELBOSTAD
1388 SUTTER ST  STE 1000
SAN FRANCISCO  CA  94109

RE:  Claim number **1317583**

**Letter attached**



Securian Financial is the marketing name for Minnesota Life Insurance Company. Insurance products are issued by Minnesota Life Insurance Company.

F81834-1  Rev 5-2019

**PLAINTIFF SANTOS / ESTATES'
COMPLAINT FOR DAMAGES
UNDER ERISA**

# EXHIBIT 5

**Minnesota Life Insurance Company**
A Securian Financial company
Benefit Services
P.O. Box 64114
St. Paul, MN  55164-0114



July 10, 2019

GOLDSTEIN GELLMAN MELBOSTAD HARRIS & MCSPARRA
ATTN  PAUL H MELBOSTAD
1388 SUTTER ST  STE 1000
SAN FRANCISCO  CA  94109

**For Claim Information**



www.securian.com/benefits



1-888-658-0193
(651) 665-7106 fax

RE:  Claim number **1317583**

To Goldstein Gellman Melbostad Harris & McSparra:

We have completed our review of this claim and your appeal due to our denial of the Voluntary Accidental Death benefits on behalf of Samuel V. Chong.  Based on the terms of the policy, we must affirm our denial of these benefits.  The following will explain this decision.

As you are aware, this policy contains the following provision:

*What does accidental death or dismemberment by accidental injury mean?*

*Accidental death or dismemberment by accidental injury means that an insured's death or dismemberment results, directly and independently of all other causes, from an accidental injury which is unintended, unexpected, and unforeseen.*

As you've stated in your appeal, the death certificate indicates the cause of death as blunt force head trauma with subdural hematoma, secondary to probable fall to the back of the head, with other conditions contributing: "Methamphetamine present. " Item Number 124 on the death certificate asks "Describe how injury occurred" and "Drug related" was entered. The Medical Examiner's report includes the following statement in relation to the cause and manner of death: "Comment:  The autopsy findings are most consistent with a mechanism of injury from a fall to the back of the head in an individual under the influence of methamphetamine. ..."  This report also indicates Mr. Chong's medical history includes a history of methamphetamine abuse with past rehabilitation attempts and many years of psychotherapy. The report also indicates he was observed in the kitchen near the table and blood was noted near his head, along with dried vomitus on the floor near his head.

According to the reviews from both of our Associate Medical Directors of the autopsy and toxicology reports received, Mr. Chong was clearly under the influence of a drug that was not prescribed for him by his physician.  Per the toxicology results, his methamphetamine level was 2258 ng/ml at the time of his death, which is 70.6 times higher than expected for the usual and customary dose and within the fatal range.  Adverse effects include dizziness, restlessness, headache and tremor.  Overdosage can cause confusion, anxiety, hallucinations, cardiac arrhythmias, hypertension, circulatory collapse, convulsions and coma.  All the available evidence supports that Mr. Chong's significantly elevated level of methamphetamine led to toxic effects such as cardiac arrhythmias, hypertension, circulatory collapse, and convulsions, which then led to his fall and head injury.

Additionally, our Associate Medical's Director has advised that according to the DEA website information, methamphetamine has DEA number 1105, and is a schedule II drug.  Schedule II drugs, substances, or



Securian Financial is the marketing name for Minnesota Life Insurance Company. Insurance products are issued by Minnesota Life Insurance Company.

chemicals are defined as drugs with a high potential for abuse, with use potentially leading to severe psychological or physical dependence. These drugs are also considered dangerous. Methamphetamine is noted as an example.

The Medical Examiner's report and death certificate clearly shows that methamphetamine was present, that it is a significant condition contributing to Mr. Chong's fall and death, and that the injury was drug related. Reiterating from the ME's autopsy findings and comments, the ".....mechanism of injury from a fall to the back of the head *in an individual under the influence of methamphetamine. ...*"

While the Medical Examiner ruled the manner of death as 'accident' under their criteria, the Apple, Inc. Voluntary Accidental Death policy contains specific criteria defining what an accidental death is, as indicated above. Additionally, this policy specifically excludes any payment of benefits when death results from or is caused directly or indirectly by any of the following:

*... (7) being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage.*

As you and Mr. Chong's doctor have attested, he was not prescribed methamphetamine. Even if he had been prescribed methamphetamine, the significantly high level in his body at the time of death (70.6 times higher than expected for the usual and customary dose) demonstrates that he was not taking a usual and customary dose. Furthermore, it is not *unexpected and unforeseen* that a person with this extremely high level of methamphetamine in their system, would have toxic effects, leading to a fall, resulting in a head injury and death.

Therefore, the above policy exclusion precludes payment of the Accidental Death benefits and no benefit is payable.


**ERISA Notice - Level 2:**

This decision completes the mandatory administrative review procedures. You now have a right to bring a lawsuit under Section 502(a) of the Employee Retirement Income Security Act of 1974, if your claim is governed by that Act. Your policy may include a section that limits the time period you have to file any lawsuit. Please review your policy carefully and consult an attorney if you have any question about your rights under the policy.

You also have a right to request copies of all documents relevant to your claim.

We offer another level of review in addition to the one that you just completed. This second level is voluntary, not mandatory. If you disagree with this decision and wish to request the voluntary review, please submit a written statement indicating why you believe this decision was incorrect. Any such statement must be received by us within 60 days after you receive this letter. Along with that written statement, please provide any evidence you would like us to consider.

We reserve the right to rely upon any other provisions during this review.

Any request for voluntary review received after 60 days will not be considered.

You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency.


Sincerely,

Terri

California regulations require that our company advise you that if you believe your claim has been wrongfully denied or rejected, you may have this matter reviewed by the California Department of Insurance. Their phone number is 1-800-927-4357 or 213-897-8921 and their address is Claims Services Bureau, 11th Floor, 300 Spring Street South, Los Angeles, California, 90013.

# PLAINTIFF SANTOS / ESTATES' COMPLAINT FOR DAMAGES UNDER ERISA

# EXHIBIT 6



ATTORNEYS AT LAW

GOLDSTEIN, GELLMAN, MELBOSTAD, HARRIS & McSPARRAN LLP

1388 SUTTER STREET
SUITE 1000
SAN FRANCISCO
CALIFORNIA 94109
(415) 673-5600 TEL
(415) 673-5606 FAX

www.g3mh.com

February 24, 2020

**VIA CERTIFIED MAIL AND FAX:**
Apple, Inc.
Employee Benefits Plan
2591 Dallas Parkway, Suite 203
Frisco, TX 75034
Fax: (972) 378-9905
Tracking: 7018 1830 0001 5860 2925

Re:     Request for Apple, Inc. Benefit Plan Documents on behalf of Plan Mr. Sam Chong
        Claim No. 1317583 – Apple Inc. | Policy No. 33957-G AD&D Certification of Insurance

Dear Sir or Madam:

Pursuant to the Employee Retirement Income Security Act (ERISA), United States Code 29 U.S.C. § 1001-1461, specifically including 29 U.S.C. 1024, I am writing to request a complete copy of all Plan Documents including the entire Summary Plan Description (SPD) and including any and all accidental death benefit plan documents relating to insurance coverage to: Samuel V. Chong, aka Samuel Chong, aka Sam Chong ("Decedent").

Please make sure that your production in response to this request, includes the following:

1. A copy of each governing plan document of the Plan, which has been in effect at any time from January 2015 through the present, and all amendments thereto;
2. A copy of each summary plan description of the Plan in effect at any time from
3. January 2015 through the present, and all statements of material modification thereto;
4. A copy of the most recent Form 5500 for the plan and all schedules and attachments thereto;
5. Any and all documents, including the contents of any case file, relating to the request for accidental death benefits following the death of Decedent.

Please send the documents to me by no later than thirty (30) days from the date of this request, pursuant to Section 502(c) of ERISA.  I am aware that under ERISA § 502, the Plan administrator can be fined $110.00 for each day over 30 days that it does not produce the documents under 29 U.S.C. § 1132(c).  In compliance with good faith obligations, I would request you provide these documents well prior to 30 days if at all possible.

Your assistance in this matter is greatly appreciated.  I look forward to receipt of the above documents and information.

Very truly yours,

Lee S. Harris, Esq.



GOLDSTEIN, GELLMAN, MELBOSTAD, HARRIS & McSPARRAN LLP

ATTORNEYS AT LAW

1388 SUTTER STREET
SUITE 1000
SAN FRANCISCO
CALIFORNIA 94109
(415) 673-5600 TEL
(415) 673-5606 FAX

**www.g3mh.com**

# FAX

| Date: | **January 24, 2020** |
|---|---|
| Number of pages including cover sheet: | **2** |

| To: | **Apple, Inc** |
|---|---|
| Ref No. 1317583 33957 | Employee Benefits Plan |
| Our File No.: | **9584-01** |
| Re: | |
| Fax phone: | **(972) 378-9905** |
| CC: | |

| From: | **Jason Milleman–Paralegal** |
|---|---|
| Phone: | (415) 673-5600 |
| Fax phone: | **(415) 673-5606** |

**REMARKS:** ☐ Urgent   ☒ For your review   ☐ Reply ASAP   ☐ Please comment

### PLEASE FIND THE ATTACHED DOCUMENT:

**Letter from Lee Harris dated 2/24/20 Re:** Request for Apple, Inc. Benefit Plan Documents on behalf of Plan Mr. Sam Chong Claim No. 1317583 – Apple Inc. | Policy No. 33957-G AD&D Certification of Insurance

This telecopy is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by collect telephone call and return the original telecopy to us at the above address by U.S. mail.  We will reimburse you for postage.

TRANSMISSION VERIFICATION REPORT

```
TIME    : 02/24/2020 15:07
NAME    : G3MH
FAX     : 4156735606
TEL     : 4156735600
SER.#   : U63274F7J448793
```

```
DATE,TIME              02/24  15:06
FAX NO./NAME           9723789905
DURATION               00:00:45
PAGE(S)                02
RESULT                 OK
MODE                   STANDARD
                       ECM
```



ATTORNEYS AT LAW

GOLDSTEIN, GELLMAN, MELBOSTAD, HARRIS & McSPARRAN LLP

1388 SUTTER STREET
SUITE 1000
SAN FRANCISCO
CALIFORNIA 94109
(415) 673-5600 TEL
(415) 673-5606 FAX

www.g3mh.com

# FAX

| Date: | **January 24, 2020** | |
|---|---|---|
| Number of pages including cover sheet: | | **2** |

| To: | | From: | |
|---|---|---|---|
| | **Apple, Inc** | | **Jason Milleman-Paralegal** |
| Ref No. 1317583 33957 | Employee Benefits Plan | | |
| Our File No.: | **9584-01** | Phone: | (415) 673-5600 |
| Re: | | Fax phone: | (415) 673-5606 |
| Fax phone: | **(972) 378-9905** | | |
| CC: | | | |

**REMARKS:**  ☐ Urgent   ☒ For your review   ☐ Reply ASAP   ☐ Please comment

## PLEASE FIND THE ATTACHED DOCUMENT:

**Letter from Lee Harris dated 2/24/20 Re:** Request for Apple, Inc. Benefit Plan Documents on behalf of Plan Mr. Sam Chong Claim No. 1317583 – Apple Inc. | Policy No. 33957-G AD&D Certification of Insurance